IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| EL PASO DISPOSAL, LP, WASTE CONNECTIONS OF TEXAS, LLC, and WASTE CONNECTIONS LONE STAR, INC., | § § § § § | |
| Plaintiffs, | § § | Cause No. EP-3:24-CV-97 |
| v. | § § | |
| ECUBE LABS CO. d/b/a HAULLA SERVICES, | § § § | |
| Defendant. | § § | |

## COMPLAINT

Plaintiffs El Paso Disposal, LP, Waste Connections of Texas, LLC, and Waste Connections Lone Star, Inc. (jointly, "**Plaintiffs**" or "**Waste Connections**") bring this action against Defendant Ecube Labs Co. d/b/a Haulla Services ("**Haulla**" or "**Defendant**") and state as follows:

### I.      NATURE OF THE CASE

1.      The parties in this case are competitors in the waste collection business. This case concerns Defendant Haulla's malicious and illegal scheme to tortiously interfere with and steal Plaintiffs' customers through a network of international and domestic agents, employing corporate espionage, misrepresentations, fraud, and unauthorized access of Plaintiffs' web-based customer portal.

2.      Plaintiffs bring this lawsuit to recover damages caused by Haulla's conduct and to prevent such conduct from occurring in the future.

### II.      THE PARTIES, JURISDICTION AND VENUE

3.      Plaintiff El Paso Disposal, LP is a Texas limited partnership.

4.      Plaintiff Waste Connections of Texas, LLC is a Delaware limited liability company.

5.      Plaintiff Waste Connections Lone Star, Inc. is a Texas corporation.

6.      Upon information and belief, Defendant Ecube Labs Co., Ltd. was founded in and operates in South Korea. In the United States, Ecube Labs Co. d/b/a Haulla Services is a Delaware corporation with its principal place of business at 2550 W. Main Street, Suite 202, Alhambra, California 91801. It is registered to do business in Texas, with its registered agent at Registered Agent Solutions, Inc., Corporate Center One, 5301 Southwest Parkway, Suite 400, Austin, Texas 78735.

7.      This Court has jurisdiction under 28 U.S.C. § 1331 because this action presents federal questions under the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836 *et seq.*), the Computer Fraud and Abuse Act of 1986 (18 U.S.C. § 1030), and the Electronic Communications Privacy Act/Stored Communications Act (18 U.S.C. §§ 2701 *et seq.*), as set forth herein. Under 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over the Texas state law claims because the state law claims are so related to the federal question claims that they form part of the same case and controversy.

8.      This Court has personal jurisdiction over Defendant under Texas's long-arm statute, TEX. CIV. PRAC. & REM. CODE § 17.042(2), because non-resident Defendant is registered and conducts regular business in Texas, and further, has committed and continues to commit torts in whole or in part in Texas. Defendant has intentionally availed itself of the Texas market and the laws of Texas.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial portion of the misconduct giving rise to the claims alleged herein occurred in this judicial district. Specifically, Defendant has tortiously interfered with Plaintiffs' contracts with customers located in, and which transact business in, the Western District of Texas, in particular in and around El

Paso, Texas, and hundreds of the more than 2,500 fake customer profiles created by Haulla have impacted Plaintiffs' customers located in, and which transact business in, the Western District of Texas, in particular in and around El Paso, Texas.

## III.    FACTS RELEVANT TO ALL COUNTS

### A.    SUMMARY OF HAULLA'S MALICIOUS AND ILLEGAL SCHEME

10.    Through substantial investment of money and time, and the use of technology and binding service agreements with customers, Plaintiffs provide waste collection, recycling, and disposal services to thousands of customers.

11.    As part of their business operations, Plaintiffs utilize proprietary, confidential information and data in contracting with and servicing their customers. In a shameless plot to unfairly compete with Plaintiffs, Haulla is perpetrating an illegal scheme involving fraudulently obtaining Plaintiffs' proprietary data, including by illegally accessing Plaintiffs' web-based customer portal, and impersonating Plaintiffs' customers on phone calls and in electronic communications.

12.    Haulla is a waste broker, meaning it acts purely as an intermediary between a consumer and its designated waste hauler. That is, Haulla does not own any trucks or waste bins and does not physically collect or haul away waste. Instead, it acts as a middleman between a customer and waste collection companies (such as Rio Grande Waste and Frontier Waste in Texas), taking a percentage of its customers' service contract fees for itself.

13.    Haulla's business model is specifically designed to disrupt relationships between commercial customers and waste collection companies with which they contract. Even a simple online job posting for a Haulla sales representative role underscores its "cold calling" poaching approach, seeking "[g]o-getters who likes [sic] to find and win customers." It touts that "[w]e are

very excited to introduce a new waste brokerage business (Haulla) in North America" and "[a]s a Sales Representative, you will be calling small business owners in US cities such as Baltimore, Houston, or Dallas. You will be introducing our company and services to potential customers with the end goal of signing a contract with them."

14.     In fact, armed with Plaintiffs' confidential and proprietary customer information that it steals from Plaintiffs, Haulla induces Plaintiffs' customers to breach their contracts and sign contracts with Haulla instead. Haulla does so to generate profits for itself at Plaintiffs' expense, and even at the expense of customers, disregarding the potential liability it foists on those customers for breaching their contracts with Plaintiffs. Although Haulla claims it will pay liquidated damages owed by a customer who terminates its existing contract, Haulla's actual customer contract provides that it "*may*" pay such damages, and it reserves the right to decline to do so or to increase a customer's monthly rate to reflect an increase in cost resulting from paying liquidated damages.

15.     Haulla perpetrates its illegal scheme with the aim of tortiously interfering with and financially damaging Plaintiffs' business, their reputations, and relationships with their customers, while unfairly profiting at Plaintiffs' expense and potentially harming thousands of customers in the process.

16.     Haulla's fraudulent scheme is multi-faceted. Through a network of agents, including in the Philippines and elsewhere, Haulla surreptitiously gains access to Plaintiffs' online customer portal and creates "fake" customer profiles. For example, Haulla's agents pose as Plaintiffs' customers, or as authorized agents acting on behalf of Plaintiffs' customers, in online chats, emails, and phone calls to Plaintiffs' offices, where they request customer information such

as invoices, which are then used to access the customer portal. With access to the portal, Haulla is able to learn Plaintiffs' proprietary and confidential pricing information and other terms of service.

17.     Demonstrating Haulla's audaciousness, Plaintiffs uncovered more than 2,500 instances where Haulla unlawfully accessed the online portal and created fake customer profiles using fraudulent IDs and email addresses.

18.     After fraudulently and illegally gaining access to Plaintiffs' proprietary and confidential customer information, Haulla contacts Plaintiffs' customers, often telling them exactly how much they are paying for waste collection, and offering to undercut Plaintiffs' prices if customers breach their contracts and enter into contracts with Haulla. In other words, Haulla unlawfully misappropriates Plaintiffs' proprietary data (including pricing information), uses that data to unfairly compete with Plaintiffs, and then steals Plaintiffs' customers, including by way of deceitful statements.

19.     Plaintiffs uncovered Haulla's illegal, fraudulent scheme after conducting a wide-ranging investigation, including through third-party expert forensic analysis. The results of the investigation point directly to Haulla and its web of agents, including in the Philippines, and several waste hauling companies acting as Haulla's designees, such as Rio Grande Waste and Frontier Waste. While the full extent of Haulla's fraudulent activity is not yet known, and will require discovery through this lawsuit, the facts and evidence uncovered to date unequivocally demonstrate that Haulla has and continues to engage in a brazen, illegal scheme to harm Plaintiffs and their customers that must be stopped.

20.     In fact, Plaintiffs' investigation shows that, in numerous cases where a fake customer profile was created, or where an imposter contacted Plaintiffs posing as a customer, it

was *only* Haulla that had solicited those customers to induce them to breach their contracts with Plaintiffs, and it was *only* Haulla that had knowledge of pricing data and other terms of service.

21.     Haulla's actions erode Plaintiffs' reputations and relationships with their customers, especially where customers learn that Haulla possesses Plaintiffs' confidential data, in some cases resulting in complete loss of customer relationships. Even in those instances where a customer relationship is not lost, the customer's trust in Plaintiffs is compromised. Furthermore, Haulla's actions damage Plaintiffs by increasing the cost of trying to retain a customer who is illegally poached and manipulated by Haulla's fraudulent scheme, including by renegotiating and reducing customers' rates.

22.     Haulla's illegal activity also causes additional economic damage sustained as a result of Plaintiffs' efforts to investigate and identify specific instances of unauthorized access to the customer portal and other fraudulent conduct, block Haulla's access to customer accounts, implement additional layers of security, and otherwise respond as necessary to protect the security of Plaintiffs' confidential and proprietary information.

23.     Plaintiffs, therefore, seek relief from this Court to protect their proprietary and confidential customer information, as well as to protect their business, goodwill, and reputation, and to ensure that Plaintiffs' relationships with their customers remain secure and free from unlawful interference by Haulla.

24.     Among the damages Plaintiffs seek to recover are lost profits, the loss of goodwill and harm to their reputations as a result of Haulla's fraud, deceit, and misrepresentations, exemplary damages, the cost of their investigation, and the recovery of their attorneys' fees. Plaintiffs also seek an order to prevent Haulla's tortious conduct from occurring in the future.

**B.**     **PLAINTIFFS' PRIVATE CUSTOMER PORTAL**

25.     Plaintiffs operate a website which allows customers online access to view and pay

bills and review service information through a "MyAccount Portal" (hereinafter the "Portal"),

accessible at the URL: https://myaccount.wcicustomer.com/, shown here:



26.     From the home page above, customers can log into their account with a User ID

and Password. Alternatively, a customer can create an additional profile to access the account by

selecting "Register Now." This takes the customer to a separate page, where they can register their

account by inputting the Account Number and Invoice Number, as shown below:



27.     If customers do not have this information, which is not publicly available, they can select the "Need Help" option. They will then be directed to another page, where they can look up their account by using the associated Address or Account Number, and then verify their identity through a series of personalized security questions, as shown below:

 

28.     After verifying their identity through the personalized security questions, and entering their contact information on the following page, presumed customers are directed to a final page where they can create a new User ID and Password to access the customer account

though the Portal. Importantly, before a new profile can be created, users check a box to explicitly agree to Waste Connections' Terms of Use, which are conspicuously linked at the bottom of every page on the website.



29.     Access to a customer account through the Portal provides the user with access to confidential data such as historical and current billing information, pricing terms, waste container size, and frequency of pick up, among other terms of service.

30.     The Portal is Plaintiffs' proprietary website that requires equipment to maintain, such as a privately-owned computer system with supporting servers, routers, networks, bandwidth, computer capacity, and firewalls. Plaintiffs have invested substantial time and resources into developing and maintaining the Portal. It is critical to Plaintiffs and their business that the Portal is used only by customers.

31.     To protect the security of its Portal, ensure normal operations and assure the integrity of Portal communications, Plaintiffs' website and Portal are subject to the Terms of Use. As noted above, a link to the Terms of Use is accessible at the bottom of each page of wasteconnections.com and the Portal.

32.     The Terms of Use limit Portal access to authorized users *only* who have provided "true, accurate, current, and complete information about yourself as prompted by the Site's enrollment form."[1] The Terms of Use expressly provide that "[t]hird parties (e.g. brokers, agents, competitors, etc.) are not authorized to use the Site for any purpose" without Waste Connections' express written consent. The section entitled "Authorization" specifically states that unauthorized access may constitute a violation of federal statutes such as the Computer Fraud and Abuse Act, and the Electronic Communications Privacy Act, among other federal and state laws.

**2. AUTHORIZATION**

WCI customers and their respective employees (each, an "Authorized User") are authorized to use the Site solely for purposes relating to their own respective account(s). WCI customers and their respective employees are not authorized to use or access any portion of the Site that relates to another customer's account. Third parties (e.g. brokers, agents, competitors, etc.) are not authorized to use the Site for any purpose, including without limitation accessing or changing any customer information (e.g. billing information, etc.), unless the third party first obtains WCI's express written consent. Third parties may not acquire any authorization to use the Site (including for billing purposes) from a customer via letters of authority or otherwise. Any such letters of authority or similar attempts to grant authority to a third party shall be void.

Unauthorized commercial use, access, or attempts to change information on the Site are strictly prohibited and subject to prosecution under all applicable state and federal laws, including but not limited to, the Computer Fraud and Abuse Act of 1986, 18 U.S.C. § 1030, the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701 et seq., and Chapter 143 of the Texas Civil Practice and Remedies Code.

33.     The Terms of Use further forbid users from "impersonating any other person" or "harvesting . . . any information concerning other users of the Site."[2]

---

[1]     Exhibit A, Waste Connections Terms of Use, § 5 (available at: https://www.wasteconnections.com/terms-of-use/) (last updated: July 24, 2023).
[2] Exhibit A, Waste Connections Terms of Use, § 4.

## C.   DISCOVERY OF HAULLA'S UNLAWFUL ACCESS AND ILLEGAL USE OF THE PORTAL

34.     Beginning in 2023, Plaintiffs began noticing suspicious and coordinated activity involving customer accounts in the Portal, particularly with Texas-based customers. New or duplicate customer profiles were being created on behalf of long-standing customers, sometimes using usernames similar to the customer's existing username, and other times repeatedly using similar or identical "boilerplate" usernames across multiple, unrelated accounts. Further, customer phone numbers or email addresses in the new profiles were not those of the actual customer. Instead, they were replaced by an email address or phone number containing one varied letter or digit from that used by the customer in its original profile. As with the usernames, some of the replacement email addresses were similar to existing emails associated with the account; others were boilerplate email addresses used across multiple unrelated accounts.

35.     In fact, Plaintiffs' information technology personnel identified the creation of ***more than 2,500 fake profiles*** on the customer Portal. Many of these accounts were deleted within hours (and often within minutes) of their creation once Defendant had successfully extracted the targeted customer information from the Portal.

36.     Plaintiffs' investigation revealed that actors were accessing the accounts and creating new fake profiles while downloading and expropriating Plaintiffs' confidential and proprietary customer information, such as pricing data, frequency of service, invoice numbers, customer names, and contact information, before deleting the profiles.

37.     Plaintiffs' investigation revealed that actors were gaining access to protected customer information via the Portal in two primary ways. In one tactic, Haulla's agents repeatedly guessed answers to personalized security questions in the Portal during online sessions often

11

lasting over an hour. Upon guessing the correct answers, the agents created fake profiles associated with customer accounts, and then stole Plaintiffs' confidential customer information.

38.     In a second tactic, Haulla's agents communicated with Plaintiffs via an online chat feature on Plaintiffs' website, through emails, and in telephone calls to Plaintiffs' offices, with the agents posing as existing customers and requesting account numbers or copies of invoices. With such information in hand, they were able to illegally access the Portal and gain access to Plaintiffs' confidential customer data. Plaintiffs' investigation revealed that the creation of the fake profiles coincided with an uptick in communications sent to Plaintiffs seeking customer information.

39.     In many cases where contact was made via email, requests were made for invoices to be sent to an "updated" email address for the customer. Plaintiffs' investigation revealed that many of these "updated" email addresses were designed to appear related to the customer, despite the fact they were not. Plaintiffs' investigation also revealed that, in other cases, the email addresses were boilerplate and used interchangeably to request invoices for scores of unrelated customers.

40.     On multiple occasions in response to telephonic requests for customer data made to Plaintiffs, customer service representatives ("CSR") placed the caller on hold and contacted the customer using the phone number provided when the customer initially signed up for service. Without exception, the real customers confirmed they did not contact Plaintiffs or authorize anyone else to contact Plaintiffs. Moreover, the real customers also confirmed that *only* Haulla had recently solicited their business and sought to induce them to breach their existing contracts.

41.     After discovery of the fake profiles and increased frequency of callers or Portal users requesting account numbers and invoices, Plaintiffs implemented additional security measures to prevent unauthorized access to the Portal, including notification to existing customers

when a new profile is created. Nonetheless, Haulla kept adapting their tactics to keep pace with Plaintiffs' security measures. In numerous instances where new profiles were created, customers alerted Plaintiffs that they had not created the profile. These customers also informed Plaintiffs that they had been solicited by Haulla, and in many instances Haulla knew specific details of their terms of service, such as price, frequency and container size, and other proprietary and confidential information known only to Plaintiffs and their customers.

42.     On many occasions, customers expressed surprise and concern that Haulla was able to intrude on their business relationships with Plaintiffs and questioned Plaintiffs' ability to securely maintain customer information about their business. These concerns have and will continue to negatively impact Plaintiffs' goodwill and reputation with their customers.

43.     The creation of fake profiles and increase in requests seeking customer information also coincided with an unusual increase in customer contract cancellations. In fact, of more than 2,500 fake profiles identified, hundreds are associated with customer accounts that were later terminated, suspended, or are in collection. In many instances, customers who terminated their contracts later signed contracts with Haulla. Even where Plaintiffs were able to retain customers, they did so in many instances only after negotiations and reductions in rates, further damaging Plaintiffs.

**D.     PORTAL ACTIVITY TRACED TO HAULLA IN THE PHILIPPINES**

44.     Plaintiffs' investigation did not end at the discovery of the creation of fake customer profiles. The investigation traced many of the IP addresses used to unlawfully access the Portal to the Philippines, where Haulla has a base of operations.

45.     For example, hundreds of unrelated customer accounts were accessed via the Portal by actors utilizing the following User IDs:

ALK1

Asdfg23@
Asdfg213
Asdfg233
Asdfg23232
Asdfg1231

The User ID Asdfg1231 is similarly associated with the email address hralex247@gmail.com, which was used hundreds of times across unrelated customer accounts. These USER IDs and email address were traced to an IP Geolocation in the Philippines and to a Filipino telecommunications provider.

46.     Haulla's agents operate in the Philippines. In fact, Haulla actively recruits sales representatives and other employees in the Philippines specifically for the unlawful scheme described herein. More than 80 LinkedIn profiles connect Haulla's agents to operations in the Philippines, and Haulla's own LinkedIn page (copied below) confirms its presence in the Philippines and connection to a large number of workers there.



47.     Below is a sampling of Haulla's interference with Plaintiffs' business relationships with their customers, and instances where Haulla's agents have impersonated Plaintiffs' customers, including examples that trace to the Philippines. These are just a handful of examples of heightened activity concerning fraudulent requests for customer information or other fraudulent communications, and Portal access and creation of fake profiles by Haulla, amid other fraudulent conduct.

i.    **Examples of Haulla Impersonating Existing Customers on Telephone Calls.**

48.     In early May 2023, a CSR received a call from a person claiming to be "Michele," the owner of a customer under contract with Plaintiff Waste Connections Lone Star, Inc. The caller requested information concerning the account, including copies of recent invoices, and requested that a copy be emailed to avriellepedroza@gmail.com. When the CSR refused to send the invoice to an email address that was not on file, the fake "Michele" was transferred to a manager. The manager then placed the fake "Michele" on hold and on a separate line called the business owner (*i.e.*, the "real" Michele) using the phone number on file. The "real" Michele advised that she had not contacted customer service and that the "fake" Michele was not calling on the customer's behalf. Moreover, the customer advised that she had recently been contacted by a representative from Haulla who attempted to induce her to breach her existing contract and sign a new contract, with a claimed savings of 20% off her current rate.

49.     Plaintiffs'    forensic    investigators    identified    the    email    address avriellepedroza@gmail.com as being associated with Haulla and its unlawful scheme described herein. Specifically, Plaintiffs' investigation identified advertising by Haulla looking to hire sales

representatives in the Philippines. (Exhibit B[3]). The job description shows that Haulla was looking for contract employees for "cold calling . . . small business owners in US cities such as Baltimore, Houston or Dallas. You will be introducing our company and services to potential customers with the end goal of signing a contract with them." The Desired Candidate Profile preferred experience with HubSpot, a free Customer Relationship Management ("CRM") software platform. Plaintiffs' forensic investigators searched open-source channels and identified information related to a HubSpot CRM portal, where a person named Domingo Jose De Guzman had uploaded a large number of email addresses to the platform. (Exhibit C). Significantly, one of the email addresses that Mr. Guzman uploaded was avriellepedroza@gmail.com. The investigators also identified Mr. Guzman as a recruiter of "talented virtual assistants" located in the Philippines. (Exhibit D).

50.     The "fake" Michele's call to the CSR described in Paragraph 48 above, using the email address avriellepedroza@gmail.com, was a direct outgrowth of Haulla's recruiting activities in the Philippines.

51.     In another example, an agent on behalf of Haulla contacted a CSR claiming to be "Ron," an assistant to the owner of an existing customer of Plaintiff Waste Connections Lone Star, Inc. The caller sought to cancel its waste services contract. When the CSR contacted the real account owner to confirm this information, the owner stated that he did not have an assistant, or any other employee named "Ron." The call to the CSR coincided with Haulla contacting the customer to solicit his business and induce him to breach his existing contract.

---

[3] Note the reference in Exhibit B to the compensation offer designated in PHP, which is the abbreviation for the Philippine peso.

**ii. Examples of Haulla Contacting Customers with Knowledge of Confidential and Proprietary Information after Accessing the Customer Portal.**

52.     Plaintiffs also received numerous calls and e-mails from customers describing instances where Haulla's agents solicited their business already knowing how much the customer was paying for waste services, despite the customer never having provided that information to the agent. Haulla obtained that information after unlawfully accessing the Portal.

53.     For example, in September 2023, an existing customer of Plaintiff El Paso Disposal, LP contacted a CSR to report that he had received a call from a representative of Rio Grande Waste, a Haulla designated waste collection company, who knew what he was paying per month for waste disposal services and the length of time he had been paying that amount. A month later, the same representative contacted the customer again to say that he was aware that El Paso Disposal had not reduced his monthly rate.

54.     The foregoing solicitation coincided with the creation of a fake customer profile in September 2023, with the user changing both the username and password. The fake profile was used to view the customer's account information multiple times in September, October and December 2023. The IP address associated with these activities was traced by Plaintiffs to the Philippines. In view of this activity all tracing back to Haulla, Plaintiffs' investigation concluded that Haulla exported Plaintiffs' confidential and proprietary information about this customer after it unlawfully gained access to the customer's account via the Portal and used that information to attempt to steal this customer's business.

55.     Similarly, in December 2023, a representative of Haulla contacted another customer of Plaintiff El Paso Disposal. The caller urged the customer to breach its existing contract with a promise of a lower rate if the customer signed a contract with Haulla. The caller was aware

of how much the customer was paying per month and the size of the container it was using. The Haulla representative emailed the customer again on February 14, 2024, with the same offer.

56.     This activity coincided with a fake profile created for this customer on the Portal on or about November 19, 2023, with the user changing the username and password.

57.     On February 13, 2024, Plaintiffs discovered the fake customer profile as a result of their investigation and intentionally changed the account password. One day later, on February 14, 2024, the user attempted to again access the customer's account, but was denied access because Plaintiffs had changed the password. One minute later, Haulla emailed the customer with the above-described offer. The IP address used to access the account traces back to the same long distance carrier information associated with hundreds of instances where fake customer profiles were created, and to multiple instances of unauthorized access to the Portal. Geolocation information for the IP address confirms that the country of origin was the Philippines.

58.     Even as recent as March 2024, Plaintiffs received customer complaints regarding Haulla employees soliciting their business in improper ways. In one example, a customer of Plaintiff El Paso Disposal complained that Haulla sent her an email on March 13, 2024, soliciting her business and referencing her El Paso Disposal billing rates - information she had never shared with Haulla. Upon further investigation, Plaintiffs discovered that a fake profile was created on this customer's account back on September 29, 2023, and the account was accessed twice that day. The customer's email address was changed by adding one digit to the actual email address. Using the fake profile, the user logged into the account again on February 27, 2024. The user again logged into the account on March 13, 2024, just *three minutes* before the customer received the email from Haulla containing her actual billing rates. This was no mere coincidence and demonstrates Haulla's fraudulent scheme in action.

### iii. Additional Examples of Haulla Interfering with Plaintiffs' Customers.

59.     Haulla also uses deceit and misrepresentations in other ways to interfere with Plaintiffs' relationships with their customers. For example, in December 2023, a customer of Plaintiff El Paso Disposal contacted a CSR to report that he received an email purportedly from "El Paso Disposal" stating that his account had been closed due to a rejected payment. This was false. El Paso Disposal had never sent the customer such an email. Furthermore, this incident coincided with illegal access of this customer's online account on the Portal and the creation of a fake profile with the user changing the billing email address for the account. The "new" email address was B.Covey24@welch.com, a "boilerplate" address used for new customer profiles across multiple unrelated accounts. Upon further investigation, Plaintiffs discovered that the customer profiles associated with B.Covey24@welch.com had been accessed by IP addresses based in the Philippines.

60.     In another instance, Plaintiff Waste Connections of Texas, LLC received a customer contract termination notice via a power of attorney executed by Haulla, purportedly on behalf of a customer. Haulla also paid the liquidated damages associated with the termination, as required by the contract. Upon contacting the affected customer, Waste Connections of Texas, LLC learned that the customer had not given Haulla power of attorney and had not authorized Haulla to pay liquidated damages on its behalf.

### E.     DESPITE PROTECTIVE MEASURES BY PLAINTIFFS, HAULLA'S ILLEGAL INTERFERENCES ADAPT AND CONTINUE

61.     Haulla knows exactly what it is doing and why its conduct is illegal. The Terms of Use on Plaintiffs' website and customer Portal make clear that third party brokers (like Haulla) are **not** authorized to use the site to access customer information without Plaintiffs' written consent. The Terms of Use also state that unauthorized commercial use or access is strictly prohibited under

applicable state and federal laws including, *inter alia*, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Electronic Communications Privacy Act, 18 U.S.C. § 2701, *et seq*., and Chapter 143 of the Texas Civil Practice and Remedies Code.

62.     Haulla knows its access to the Portal and related extraction of Plaintiffs' confidential and proprietary pricing and other account information is improper and not authorized by Plaintiffs, but Haulla's unlawful and unauthorized actions continue. In response, Plaintiffs have taken measures to assure that the Portal can only be accessed by customers, in order to prevent further unauthorized access. Despite these efforts, dozens of customers have notified Plaintiffs of attempts to create unauthorized customer profiles via the Portal or otherwise surreptitiously obtain Plaintiffs' proprietary and confidential customer information.

63.     Likewise, Plaintiffs continue to receive numerous communications via their online chat features, and in emails and phone calls, from Haulla's agents impersonating existing customers requesting that invoices and other account information be sent to "updated" email addresses.

64.     In addition to undertaking a detailed investigation into Haulla's unlawful activity and bolstering its security measures to prevent unauthorized use of its Portal, Plaintiffs have spent hundreds of hours communicating with customers, assuring them that information about their accounts is secure, and negotiating new rates, often at substantial losses, to retain customers and re-establish goodwill.

**V. CAUSES OF ACTION**

**COUNT 1: VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016
(18 U.S.C. § 1836, *et seq.*)**

65.     Plaintiffs reallege and incorporate by reference the allegations set forth above.

66.     Plaintiffs are entitled to damages under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.*, based on Haulla's misappropriation of trade secrets, which through Plaintiffs' Portal and otherwise are used in interstate commerce.

67.     Haulla employed its fraudulent scheme in order to access Plaintiffs' confidential and proprietary customer information, including without limitation, pricing and other terms of service. This information constitutes "trade secrets" per 18 U.S.C. § 1839(3).

68.     Haulla's creation and use of fake profiles to access the Portal and other improper means to acquire customer information violate Plaintiffs' Terms of Use, and Haulla knows or has reason to know that it is using improper means to acquire Plaintiffs' customer information. *See* 18 U.S.C. § 1839(5).

69.     Plaintiffs have taken reasonable measures to keep customer information secret— therefore, Haulla had to use its improper means to access it, per 18 U.S.C. § 1839(6).

70.     For example, Plaintiffs' trade secrets could only be accessed by Haulla by impersonating Plaintiffs' customers and/or illegally accessing the Portal. Haulla illicitly obtains information unique to each customer and uses this information to access customer accounts containing Plaintiffs' proprietary and confidential information. In doing so, Haulla's agents misrepresent their identity and flout Plaintiffs' Terms of Use.

71.     Further, the Terms of Use governing Plaintiffs' Portal make clear that third party brokers (like Haulla) are ***not*** authorized to use the site to access customer information without

Plaintiffs' written consent. The Terms of Use also state that unauthorized commercial use or access is strictly prohibited under applicable state and federal laws.

72.    The information misappropriated by Haulla derives independent economic value from not being generally known or readily ascertainable through proper means by Haulla, and Haulla obtained economic value from the unauthorized access to and use of the information.

73.    As a waste broker, Haulla competes for customers with Plaintiffs. Haulla improperly uses the misappropriated trade secrets to induce existing customers to breach their contracts with Plaintiffs and instead sign contracts with Haulla.

74.    Haulla has used and disclosed, and continues using and disclosing, these trade secrets without Plaintiffs' express or implied consent.

75.    Plaintiffs are entitled to an award of damages for actual loss caused by the misappropriation of trade secrets, damages for any unjust enrichment derived from the misappropriation of trade secrets, costs associated with Plaintiffs' response to Haulla's unlawful access and collection of data, and exemplary damages.

## COUNT 2: VIOLATION OF TEXAS UNIFORM TRADE SECRETS ACT

76.    Plaintiffs reallege and incorporate by reference the allegations set forth above.

77.    Plaintiffs are the owners of trade secrets as that term is defined in TEX. CIV. PRAC. & REM. CODE § 134A.002(6), including customer pricing information and billing rates.

78.    Plaintiffs took reasonable measures under the circumstances to keep the information secret per TEX. CIV. PRAC. & REM. CODE § 134A.002(6)(A), and Haulla used improper means to access the data. For example, the Portal containing Plaintiffs' trade secrets could only be accessed with non-public information specific to each customer, which Haulla obtained through improper means.

79.     Among the improper means Haulla utilized to gain unauthorized access to the Portal and thereby obtain Plaintiffs' trade secrets are impersonation of Plaintiffs' customers and theft, fraud, and misrepresentations as described herein.

80.     Further, the Terms of Use governing Plaintiffs' Portal make clear that third party brokers (like Haulla) are **not** authorized to use the site to access customer information without written consent. The Terms of Use also state that unauthorized commercial use or access is strictly prohibited under applicable state and federal laws.

81.     The information illegally accessed by Haulla derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. TEX. CIV. PRAC. & REM. CODE § 134A.002(6)(B). Haulla derives value from this information by using it to induce Plaintiffs' customers to breach their contracts, terminate services with Plaintiffs, and switch their business to Haulla.

82.     Haulla's actions constitute misappropriation because Haulla used Plaintiffs' trade secrets without Plaintiffs' express or implied consent and in violation of the applicable Terms of Use.

83.     Haulla acquired these trade secrets through improper means under TEX. CIV. PRAC. & REM. CODE § 134A.002(3)(B)(i).

84.     Plaintiffs are entitled to recover damages for misappropriation, including actual loss caused by the misappropriation, unjust enrichment derived from the misappropriation, and exemplary damages because Haulla's misappropriation was and is willful and malicious. TEX. CIV. PRAC. & REM. CODE § 134A.004. Further, Plaintiffs are entitled to reasonable attorneys' fees,

interest, and costs based on the existence of willful and malicious misappropriation. *See* Tex. Civ. Prac. & Rem. Code § 134A.005(3).

## COUNT 3: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT<br>(18 U.S.C. § 1030, *et seq.*)

85.     Plaintiffs reallege and incorporate by reference the allegations set forth above.

86.     Plaintiffs' computers and servers supporting its website and Portal, including devices connected to the Internet, are used in or affect interstate commerce and communication, and are therefore protected computers under 18 U.S.C. § 1030(e)(2).

87.     Haulla intentionally accessed and continues accessing Plaintiffs' protected computers or servers without authorization as defined by the Terms of Use, and Haulla obtained and continues obtaining information from protected computers in violation of 18 U.S.C. § 1030(a)(2)(C).

88.     Haulla knowingly and with intent to defraud accessed Plaintiffs' protected computers and servers without authorization, and by means of this access furthered the intended fraud and obtained valuable information from Plaintiffs' Portal in violation of 18 U.S.C. § 1030(a)(4).

89.     Plaintiffs' proprietary and confidential customer information that is the subject of this lawsuit is not publicly available and are only accessible by using an account number or invoice number to access the customers' accounts or answering personalized security questions, all of which information is known only to Plaintiffs and its customers.

90.     Haulla's scheme increases the burden and costs to run and maintain the Portal, and to otherwise maintain Plaintiffs' business and relationships with their customers.

91.     Plaintiffs incurred and continue incurring damages as a result of these violations, including expenses incurred from being forced to investigate the unauthorized access and abuse of

their computers and servers, with other losses and damages in an amount to be proven at trial, but well in excess of the minimum statutory damages of $5,000 aggregated over a one-year period for each improperly accessed computer and/or server. Further, Plaintiffs are entitled to compensatory damages and injunctive relief, and other equitable relief, as a result of Haulla's unauthorized access under 18 U.S.C. § 1030(g).

### COUNT 4: VIOLATION OF ELECTRONIC COMMUNICATIONS PRIVACY ACT / STORED COMMUNICATIONS ACT (18 U.S.C. § 2701, *et seq.*)

92.     Plaintiffs reallege and incorporate by reference the allegations set forth above.

93.     Haulla violated 18 U.S.C. § 2701 by intentionally and fraudulently accessing Plaintiffs' Portal and obtaining customer information stored on that facility. Further, this Court has jurisdiction over this claim under 18 U.S.C. § 2511 (1)(a) or §§ 2511 (1)(b)(i), (iii) or (iv).

94.     The Portal is a facility through which an electronic communication service is provided.

95.     Haulla's access to and misappropriation of Plaintiffs' customer information was not authorized under the applicable Terms of Use, nor did Haulla receive authorization or consent directly from Plaintiffs before accessing the information.

96.     By accessing and obtaining such information, Haulla has caused Plaintiffs to suffer economic losses. Plaintiffs are entitled to recover actual damages and profits made by Haulla as a result of its violation of 18 U.S.C. § 2707(c), as well as reasonable attorneys' fees and costs.

97.     Additionally, due to Haulla's willful and intentional conduct, Plaintiffs are entitled to punitive damages under 18 U.S.C § 2707(c).

### COUNT 5: VIOLATION OF TEXAS HARMFUL ACCESS BY COMPUTER ACT

98.     Plaintiffs reallege and incorporate by reference the allegations set forth above.

99.     TEXAS PENAL CODE § 33.02 provides that a person commits an offense if the person "knowingly accesses a computer, computer network, or computer system without the effective consent of the owner." A "computer" is defined to include "all input, output, processing, storage, or communication facilities that are connected or related to the device." *Id*. § 33.01(4). A person additionally commits an offense under this subsection if, with the intent to defraud or harm another, the person knowingly accesses a computer that is owned by a business in violation of a clear and conspicuous prohibition by the owner of the computer. *Id*. § 33.02(b-1)(2).

100.    In turn, TEX. CIV. PRAC. & REM. CODE § 143.001 provides that "[a] person who is injured . . . as a result of a violation under Chapter 33, Penal Code, has a civil cause of action if the conduct constituting the violation was committed knowingly or intentionally." Such person is entitled to actual damages and reasonable attorney's fees and costs. *Id*. § 143.002.

101.    Haulla has violated TEXAS PENAL CODE § 33.02. Among other things, Plaintiffs' Terms of Use (i) prohibit third party brokers from accessing the website and Portal without Plaintiffs' consent, (ii) prohibit users from impersonating any other person or harvesting customer information, and (iii) require users to provide true, accurate, current, and complete information to create a Profile.

102.    Haulla knowingly and intentionally accessed Plaintiffs' Portal without consent, seeking to extract Plaintiffs' proprietary and confidential customer information. Haulla did so with the intent to use Plaintiffs' proprietary and confidential information to harm and defraud Plaintiffs. Haulla's access of this proprietary and confidential information is a clear violation of Plaintiffs' prohibition against access by non-customers.

103.    Plaintiffs have suffered, and continue to suffer, damages resulting from Haulla's acts, including but not limited to loss of existing and future business, damage to goodwill, and the

costs of Plaintiffs' investigation. Plaintiffs are entitled to actual damages, as well as reasonable attorney's fees and costs. *See* TEX. CIV. PRAC. & REM. CODE §§ 143.001, 143.002.

### COUNT 6: TORTIOUS INTERFERENCE WITH CONTRACT

104.     Plaintiffs reallege and incorporate by reference the allegations set forth above.

105.     Haulla interfered, and continues to interfere, with Plaintiffs' existing customer contracts. This interference has directly caused the premature termination of Plaintiffs' customer contracts, and otherwise hindered, precluded, lessened the benefits, or increased the burdens of Plaintiffs' maintaining such contracts, all without legal justification or excuse.

106.     Haulla's interferences include but are not limited to: (1) the improper use and access of Plaintiffs' confidential and proprietary information for the purpose of inducing customers to breach their contracts and otherwise terminate business relationships with Plaintiffs; (2) misrepresentations made by Haulla to existing customers regarding Plaintiffs' business for the purpose of inducing customers to breach their contracts and otherwise terminate business relationships with Plaintiffs; and (3) Haulla's agents posing as existing customers in emails and phone calls to obtain Plaintiffs' confidential customer information and to terminate contracts.

107.     This conduct demonstrates an intent on the part of Haulla to induce customers to breach their contracts with Plaintiffs.

108.     Plaintiffs are entitled to an award of damages for actual loss caused by Haulla's tortious interference, together with exemplary damages, interest, and costs.

### COUNT 7: FRAUD

109.     Plaintiffs reallege and incorporate by reference the allegations set forth above.

110.     As stated, Haulla illegally accessed Plaintiffs' Portal and created fake customer profiles, and its agents contacted Plaintiffs' CSRs falsely representing themselves to be Plaintiffs'

customers or acting on behalf of Plaintiffs' customers, all in effort to illegally obtain Plaintiffs' proprietary and confidential customer information. Haulla then used and continues to use that information to unfairly compete with Plaintiffs and steal their customers and otherwise interfere with Plaintiffs' business relationships with their customers.

111.    Haulla and its agents knowingly misrepresent their true identities for the express purpose of gaining access to the Portal, thus allowing them to obtain Plaintiffs' proprietary and confidential information.

112.    Plaintiffs have reasonably relied on Haulla's false representations, to their detriment.

113.    Haulla's material misrepresentations are the catalyst for all of Haulla's subsequent unlawful conduct, and thus have proximately caused harm to Plaintiffs.

114.    Plaintiffs bring this action to recover actual as well as exemplary damages resulting from Haulla's fraudulent misrepresentations, together with interest and costs.

## VI.    APPLICATION FOR PERMANENT INJUNCTION

115.    Plaintiffs reallege and incorporate by reference the allegations set forth above.

116.    In addition to damages caused by Haulla's past unlawful conduct, Plaintiffs are entitled to injunctive relief under Texas Civil Practice & Remedies Code § 134A.003 and Federal Rule of Civil Procedure 65, to permanently stop Haulla's continuing and future conduct in seeking to improperly steal their customers by (1) using Plaintiffs' Portal (for any reason), (2) impersonating Plaintiffs' current or potential customers, (3) contacting Plaintiffs' customers in any way that does not clearly communicate Haulla's true identity, (4) accessing, attempting to access, using or otherwise misappropriating Plaintiffs' proprietary and confidential customer information for any purpose, including to induce or encourage Plaintiffs' customers to terminate their contracts

with Plaintiffs or terminate Plaintiffs' services or enter into contracts with Haulla or any of Haulla's designated waste haulers, (5) defaming Plaintiffs, or (6) making false statements and/or misrepresentations about Plaintiffs.

117.    As set forth above, Plaintiffs have demonstrated a substantial likelihood of success on the merits as to all of their alleged claims because Plaintiffs have identified numerous instances where Haulla knowingly and intentionally gained unlawful access to and misappropriated Plaintiffs' proprietary and confidential information. Haulla intentionally engaged in its illegal scheme to interfere with Plaintiffs' existing relationships and steal their customers, thereby causing actual damages, as well as reputational damage and damage to their goodwill.

118.    Plaintiffs are entitled to permanent injunctive relief because Haulla's continuing unlawful conduct has caused and continues causing Plaintiffs to suffer irreparable injury if Haulla is not enjoined as requested.

119.    Regarding Haulla's continuing and future illegal conduct, the remedies available to Plaintiffs at law, such as monetary damages, are inadequate to compensate for the injury.

120.    The equitable remedy of a permanent injunction is warranted upon consideration of the balance of hardships between Plaintiffs and Haulla, and preventing Haulla from doing what it is not permitted to do in the first instance causes no harm to Haulla.

121.    The permanent injunction being sought would not hurt public interest. In fact, a permanent injunction serves the public interest because it will bolster public confidence in knowing that when the public, including Plaintiffs' customers, access similar portals, confidential and proprietary information, including that constituting trade secrets, will remain protected.

## VII.    ATTORNEYS' FEES AND COSTS

122.    Plaintiffs reallege and incorporate by reference the allegations set forth above.

123.    Plaintiffs are entitled to recover their attorneys' fees and costs in connection with this lawsuit pursuant to, without limitation, TEX. CIV. PRAC. & REM. CODE §§ 143.001, 143.002, 134A.005(3) and 18 U.S.C. § 2702(c).

124.    Further, expert witness fees are taxable as costs of federal litigation under FED. R. CIV. P. 54 and 28 U.S.C. § 1920.

## VIII.   JURY DEMAND

125.    Plaintiffs demand a trial by jury on all issues triable to a jury.

## IX.      PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in their favor and grant the following relief:

a.      Judgment awarding Plaintiffs actual and exemplary damages resulting from Haulla's wrongdoing, in an amount to be proven at a trial on the merits;

b.      An injunction to permanently stop Haulla's continuing and future conduct in seeking to improperly steal their customers by (1) using Plaintiffs' Portal (for any reason), (2) impersonating Plaintiffs' current or potential customers, (3) contacting Plaintiffs' customers in any way that does not clearly communicate Haulla's true identity, (4) accessing, attempting to access, using or otherwise misappropriating Plaintiffs' proprietary and confidential customer information for any purpose, including to induce or encourage Plaintiffs' customers to terminate their contracts with Plaintiffs or terminate Plaintiffs' services or enter into contracts with Haulla or any of Haulla's designated waste haulers, (5) defaming Plaintiffs, or (6) making false statements and/or misrepresentations about Plaintiffs.

c.      Judgment awarding Plaintiffs attorneys' fees, expert witness fees, and all other costs associated with this litigation, including costs associated with Plaintiffs' investigation;

d.      Pre- and post-judgment interest at the highest rate allowable by law; and

e.      All other relief, legal or equitable, to which Plaintiffs may be justly entitled.

Respectfully submitted,

**Kemp Smith LLP**
221 N. Kansas, Suite 1700
El Paso, Texas 79901
Telephone: (915) 533-4424
Facsimile: (915) 546-5360

By: */s/ Ken Slavin*

KEN SLAVIN
State Bar No. 18496100
ken.slavin@kempsmith.com
VALERIE R. AUGER
State Bar No. 24076251
valerie.auger@kempsmith.com

**OF COUNSEL:**

**Baker & Hostetler LLP**
Daniel J. Buzzetta
dbuzzetta@bakerlaw.com
45 Rockefeller Plaza
New York, New York 10111
Phone: (212) 589-4200
*Pro hac vice* admission pending

John P. Hutchins
jhutchins@bakerlaw.com
1170 Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 459-0040
*Pro hac vice* motion to be filed

Alexandra L. Trujillo
Texas Bar No. 24110452
atrujillo@bakerlaw.com
Aidan K. Slavin
Texas Bar No. 24121129
aslavin@bakerlaw.com
811 Main Street, Suite 1100
Houston, Texas 77002
Phone: (713) 751-1600

***Counsel for Plaintiffs***