**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **EL PASO DISPOSAL, LP,** | § | |
| **WASTE CONNECTIONS OF** | § | |
| **TEXAS, LLC, and WASTE** | § | |
| **CONNECTIONS LONE STAR, INC.,** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **Case No. 3:24-CV-00097-KC** |
| | § | |
| **ECUBE LABS CO. d/b/a HAULLA** | § | |
| **SERVICES,** | § | |
| | § | |
| *Defendant.* | § | |

## DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .......................................................................................................... ii

STATEMENT OF ISSUES ........................................................................................................... v

I.   INTRODUCTION ................................................................................................................. 1

II.   FACTUAL BACKGROUND .............................................................................................. 1

III.   SUMMARY OF ARGUMENT .......................................................................................... 3

IV.   ARGUMENT ....................................................................................................................... 4

    A.   Legal Standard ......................................................................................................... 4

    B.   Plaintiffs' causes of action fail as a matter of law because each cause of action hinges on an alleged fraudulent scheme that was not pled with particularity. ...................... 5

    C.   Plaintiffs fail to state a claim under the DTSA and TUTSA. ................................. 8

        1.   Plaintiffs fail to state a claim under the DTSA because Plaintiffs' purported trade secrets are not related to a product or service used in interstate or foreign commerce. ................................................................................................... 9

        2.   Plaintiffs failed to state a claim under the DTSA and TUTSA because Plaintiffs did not identify any recognized trade secret, show steps taken to keep information secret, and establish the supposed trade secrets were independently valuable. ................................................................................................... 10

            a.   Plaintiff failed to identify any recognized trade secret. ......................... 11

            b.   Plaintiffs failed to show reasonable steps taken to keep any alleged misappropriated information secret. ...................................................... 12

            c.   Plaintiffs failed to establish its purported trade secrets were independently valuable. ................................................................................................... 13

    D.   Plaintiffs failed to state a claim under the SCA because Plaintiffs' customer portal is not a facility and Plaintiffs' data is not electronic storage. ....................................... 14

        1.   Plaintiffs' customer portal is not a facility under the SCA. ........................... 15

        2.   Plaintiffs' data is not electronic storage under the SCA. ............................... 17

    E.   Besides Plaintiffs' TUTSA claim, Plaintiffs' state-law causes of action must be dismissed because they are preempted. ...................................................................... 18

    F.   Plaintiffs should not be afforded leave to amend their Complaint. ......................... 20

V.   CONCLUSION ................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      **Page(s)**

*Allen v. Walmart Stores, LLC*,
　　907 F.3d 170 (5th Cir. 2018) ...............................................................................4, 5

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009) .............................................................................................4, 5

*Assoc'd Prof. Eds. of La. v. EDU20/20 LLC*,
　　No. 1:22-CV-05720, 2023 WL 6290081 (W.D. La. Sept. 11, 2023) .......................9

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544 (2007)...............................................................................................4, 5

*Brand Servs., LLC v. Irex Corp.*,
　　909 F.3d 151 (5th Cir. 2018) ...................................................................................11

*Brewster v. Dretke*,
　　587 F.3d 764 (5th Cir. 2009) ..................................................................................19

*Calogero v. Shows, Cali & Walsh, LLP*,
　　970 F.3d 576 (5th Cir. 2020) .....................................................................................4

*Central Bank & Tr. v. Smith*,
　　215 F. Supp. 3d 1226 (D. Wy. 2016)................................................................16, 17

*Clean v. Trillium Trans. Fuels, LLC*,
　　No. H-19-244, 2022 WL 4451865 (S.D. Tex. Aug. 24, 2022) ...............................12

*Dark v. Potter*,
　　293 F. App'x 254 (5th Cir. 2008) ............................................................................20

*DBG Grp. Invs., LLC v. Puradigm, LLC*,
　　No. 3:21-CV-678-S, 2022 WL 313435 (N.D. Tex. Feb. 2, 2022)..............................8

*DHI Grp., Inc. v. Kent*,
　　397 F. Supp. 3d 904 (S.D. Tex. 2019) .....................................................................18

*Edgenet, Inc. v. GS1 AISBL*,
　　742 F. Supp. 2d 997 (E.D. Wis. 2010).....................................................................12

*Embarcadero Techs., Inc. v. Redgate Software, Inc.*,
　　No. 1:17-CV-444-RP, 2018 WL 315753 (W.D. Tex. Jan. 5, 2018).........................18

*EthosEnergy Field Servs., LLC v. Axis Mech. Grp., Inc.*,
　　No. H-21-3954, 2022 WL 2707734 (S.D. Tex. June 10, 2022)..........................8, 18

*Frith v. Guardian Life Ins. Co. of Am.*,
  9 F. Supp. 2d 734 (S.D. Tex. 1998) ....................................................................6

*Garcia v. City of Laredo*,
  702 F.3d 788 (5th Cir. 2012) ...............................................................14, 15, 16, 17

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
  806 F.3d 125 (3d Cir. 2015)...............................................................................15

*H&E Equip. Servs. v. St. Germain*,
  No. 19-134-SDD-EWD, 2020 WL 1678327 (M.D. La. Apr. 6, 2020)...................11

*Hart v. Bayer Corp.*,
  199 F.3d 239 (5th Cir. 2000) ................................................................................5

*Hilderman v. Enea TekSci, Inc.*,
  551 F. Supp. 2d 1183 (S.D. Cal. 2008)...........................................................17, 18

*Howard v. Sun Oil Co.*,
  404 F.2d 596 (5th Cir. 1968) ................................................................................5

*Jones v. Greninger*,
  188 F.3d 322 (5th Cir. 1999) ................................................................................4

*K.F. Jacobsen & Co., Inc. v. Gaylor*,
  947 F. Supp. 2d 1120 (D. Or. 2013) ...............................................................16, 17

*Kem Constr., Ltd. v. Colossal Cont'g, LLC*,
  No. SA-23-CV-01038-XR, 2024 WL 1747651 (W.D. Tex. Apr. 23, 2024) .......5, 8

*Noel v. Hall*,
  No. 99-649-AC, 2012 WL 3241858 (D. Or. Apr. 27, 2012) ...............................16

*Providence Title Co. v. Truly Title, Inc.*,
  547 F. Supp. 3d 585 (E.D. Tex. 2021) ......................................................11, 13, 14

*Providence Title Co. v. Truly Title, Inc.*,
  No. 4:21-CV-147-SDJ, 2024 WL 1939286 (E.D. Tex. May 2, 2024)........14, 15, 17

*ScaleFactor, Inc. v. Process Pro Consulting, LLC*,
  394 F. Supp. 3d 680 (W.D. Tex. 2019)................................................................18

*Schnurr v. Preston*,
  No. 5:17–CV–512–DAE, 2018 WL 8584292 (W.D. Tex. May 29, 2018)..............5

*Sewell v. Monroe City Sch. Bd.*,
  974 F.3d 577 (5th Cir. 2020) ................................................................................4

*Snowhite Textile & Furnishings, Inc. v. Innvision Hosp., Inc.*,
No. 05-18-01447-CV, 2020 WL 7332677 (Tex. App.—Dallas 2020, no pet.) ........................9

*St. Clair v. Nellcor Puritan Bennett LLC*,
No. CV-10-1275-PHX-LOA, 2011 WL 5335559 (D. Ariz. Nov. 7, 2011) ...........................11

*StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*,
426 F. Supp. 3d 311 (E.D. Tex. 2019) .........................................................................18

*Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*,
531 S.W.3d 829 (Tex. App.—Corpus Christi 2017, no pet.) .................................18

*Sw. Whey, Inc. v. Nutrition 101, Inc.*,
117 F. Supp. 2d 770 (N.D. Ill. 2000) .........................................................................11

*Theofel v. Farey–Jones*,
359 F.3d 1066 (9th Cir. 2004) .........................................................................17

*Williams v. VMX Techs., Inc.*,
112 F.3d 175 (5th Cir. 1997) .........................................................................5

## Statutes

18 U.S.C. § 1836 .........................................................................8

18 U.S.C. § 1839 .........................................................................8, 9, 11

18 U.S.C. § 2510 .........................................................................15, 17

18 U.S.C. § 2701 .........................................................................14

18 U.S.C. § 2711 .........................................................................15

Tex. Civ. Prac. & Rem. Code § 134A.002 .........................................9, 11

Tex. Civ. Prac. & Rem. Code § 134A.004 .........................................8

Tex. Civ. Prac. & Rem. Code § 134A.007 .........................................18

## Other Authorities

Fed. R. Civ. P. 9 .........................................................................1, 5, 8, 20

Fed. R. Civ. P. 12 .........................................................................1, 4, 20

## STATEMENT OF ISSUES

1.      Whether Plaintiffs' causes of action (Counts 1–7) are pled with particularity under Fed. R. Civ. P. 9(b) when the gravamen of Plaintiffs' causes of action is alleged fraudulent conduct.

2.      Whether Plaintiffs' causes of action under the Defense of Trade Secrets Act (Count 1), 18 U.S.C. § 1836 et seq., and the Texas Uniform Trades Secrets Act (Count 2), Tex. Civ. Prac. & Rem. Code §§ 134A.002 & 134A.004, fail as a matter of law when Plaintiffs fail to allege any relation of any purported trade secret to interstate or foreign commerce, fail to identify a recognized trade secret, fail to show steps taken to keep secret Plaintiffs' purported trade secrets, and fail to establish Plaintiffs' purported trade secrets were independently valuable.

3.      Whether Plaintiffs' cause of action under the Stored Communications Act (Count 4), 18 U.S.C. § 2701 et seq., fails as a matter of law when Plaintiffs' customer portal is not a "facility" and Plaintiffs' data is not considered "electronic storage" under the statute.

4.      Whether Plaintiffs' state-law causes of action for violations of the Texas Harmful Access by Computer Act (Count 5), tortious interference with contract (Count 6) and fraud (Count 7) fail as a matter of law when these state-law causes of action rely on the same misappropriation-of-trade-secrets conduct alleged in Plaintiffs' TUTSA cause of action and TUTSA preempts other state-law claims for the same conduct?

5.      Whether Plaintiffs should be afforded an opportunity to amend their Complaint because Plaintiffs can cure a discovered deficiency.

## I.    INTRODUCTION

Defendant Ecube Labs Co. d/b/a Haulla Services ("Haulla") files this Motion to Dismiss for Failure to State a Claim under Federal Rules of Civil Procedure 9(b) and 12(b)(6), and Haulla asks the Court to dismiss Plaintiffs El Paso Disposal, LP, Waste Connections of Texas, LLC, and Waste Connections Lone Star, Inc.'s Complaint, ECF No. 1, in its entirety without leave to amend.

## II.   FACTUAL BACKGROUND

Haulla and Plaintiffs sell competitive services. *See* Compl. 1. Haulla offers waste-management services by finding waste-collection jobs for waste haulers. *See id.* 3. Plaintiffs allege Haulla finds these jobs through sales representatives.  *See id.*

The sole allegation in Plaintiffs' Complaint contending Haulla attempts to win business from its competitors, like Plaintiffs, is a sales representative job posting, Compl. 45–47. And Plaintiffs use this job posting, in which Haulla sought "go-getters who like to find and win customers" to "cold call . . . small business owners . . . and introduce Haulla's company and services" to prospective clients, as evidence of a fraudulent scheme. *See id.* at 3–4. In other words, Plaintiffs premise their salacious tale of fraud and misdeeds on a public job posting in which Haulla sought motivated sales representatives. *See id.*

Plaintiffs contend Haulla's "fraudulent scheme is multi-faceted" because unknown people in the "Philippines and elsewhere . . . gain access to Plaintiffs' online customer portal and create[] 'fake' customer profiles." *Id.* at 4. Without any further explanation or factual support, Plaintffs summarily plead these unknown people in the "Philippines and elsewhere" throughout the world are "Haulla's agents" ("Purported Agents"). *Id.* Indeed, Plaintiffs' entire Complaint relies on Plaintiffs' allegation these Purported Agents committed causes of action for Haulla. *See id.* at 4–5, 11–13.

Specifically, Plaintiffs plead the Purported Agents gained access to Plaintiffs' "private customer portal." *See id.* at 7. "The Portal is **Plaintiffs' proprietary website that requires equipment to maintain**, such as a **privately-owned computer system**." *Id.* at 9 (emphasis added). To gain access to the customer portal, Plaintiffs claim the Purported Agents entered customer information—including Plaintiffs' customers' associated account addresses or account numbers— into Plaintiffs' "Need Help" page. *See id.* at 8. "The Portal is **Plaintiffs' proprietary website that requires equipment to maintain**, such as a **privately-owned computer system**." *Id.* at 9 (emphasis added). To gain access to the customer portal, the Purported Agents entered customer information—including Plaintiffs' customers' associated account addresses or account numbers— into Plaintiffs' "Need Help" page. *See id.* at 8. This allowed the Purported Agents to then verify the customer's identity through a series of personalized-by-Plaintiffs'-customers security questions. *See id.* Only then, the Purported Agents could create accounts on Plaintiffs' customer portal. *See id.* at 8.

Then, once the Purported Agents created accounts, the Purported Agents would have access to allegedly "confidential data such as historical and current billing information, pricing terms, waste container size, and frequency of pick up." *Id.* at 9. All of this information would be available to the customer when the customer created a contract with Plaintiffs and when the customer logged into the customer portal. *See id.* at 7–9. While this information may be considered confidential by Plaintiffs, Plaintiffs never alleged any reason this information may be confidential or kept secret by the customer who has carte blanche access to this information at any time at the click of a button. *See generally* Compl. For example, Plaintiffs never alleged customers sign a nondisclosure agreement or an agreement to limit who has access to this information at the customer's location. *See, e.g.*, *id.* at 10.

Lastly, the Purported Agents allegedly would use this information to help "Haulla designated waste collection company[ies]" or help Haulla sales representatives solicit Plaintiffs' customers. *See id.* at 17–18. According to Plaintiffs, this is how Haulla's sales representatives "already know[] how much [Plaintiffs'] customer was paying for waste services." *See id.*

Based on these allegations, Plaintiffs filed suit against Haulla. In their Complaint, Plaintiffs allege Haulla violated the (1) Defend Trade Secrets Act ("DTSA"), (2) the Texas Uniform Trade Secrets Act ("TUTSA"), (3) the Computer Fraud and Abuse Act ("CFAA"), (4) the Stored Communications Act ("SCA"), and (5) the Texas Harmful Access by Computer Act ("THACA"), and Plaintiffs allege Haulla committed (6) tortious interference with Plaintiffs' contracts and (7) fraud. *Id.* at 271–28. The gravamen of Plaintiffs' causes of action are the alleged scheme to steal "Plaintiffs' confidential and proprietary customer information" to "induce[] Plaintiffs' customers to breach their contracts and sign contracts with Haulla instead." *Id.* at 4. Plaintiffs' action should not survive dismissal.

## III.   SUMMARY OF ARGUMENT

Plaintiffs' causes of action cannot survive because Plaintiffs failed to plead with particularity the alleged fraudulent scheme that is the gravamen of Plaintiffs' causes of action.

Additionally, Plaintiffs factual allegations do not support Plaintiffs' causes of action under the DTSA (Count 1), TUTSA (Count 2), SCA (Count 4), THACA (Count 5), tortious interference (Count 6), and fraud (Count 7). Plaintiffs fail to state a claim under the DTSA because Plaintiffs do not allege their purportedly misappropriated trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce. Moreover, Plaintiffs fail to state a claim under the DTSA and TUTSA because Plaintiffs did not identify any trade secret recognized under the law, did not identify any reasonable measures taken by Plaintiffs to keep any such

information secret, and cannot show the information allegedly taken by Haulla was independently valuable. Plaintiffs also failed to state a claim under the SCA because Plaintiffs' private customer portal is not a "facility" nor is Plaintiffs' data considered "electronic storage" under the statute. Plaintiffs' state-law causes of action—for violation of THACA, tortious interference, and fraud— are preempted under TUTSA because the basis of Plaintiffs' causes of action is the allegation Haulla used a fraudulent scheme to gain access to and misappropriate Plaintiffs' trade secrets to win Plaintiffs' customers—the same tortious conduct to prove Plaintiffs' TUTSA cause of action.

Because the deficiencies in their Complaint cannot be cured, Plaintiffs should not be afforded an opportunity to amend their Complaint.

## IV.    ARGUMENT

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) "is not meant to resolve disputed facts or test the merits of a lawsuit." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

To survive a motion to dismiss, the plaintiff must have pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Calogero v. Shows, Cali & Walsh, LLP*, 970 F.3d 576, 580 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Twombly*, 550 U.S. at 556.

Courts accept "all well-pleaded facts as true" and "view[ ] them in the light most favorable to the plaintiff." *Allen v. Walmart Stores, LLC*, 907 F.3d 170, 177 (5th Cir. 2018) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Allen*, 907 F.3d at 177 (quoting *Twombly*, 550 U.S. at 555).

### B.   Plaintiffs' causes of action fail as a matter of law because each cause of action hinges on an alleged fraudulent scheme not pled with particularity.

"Claims alleging fraud and fraudulent inducement are subject to the requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *Kem Constr., Ltd. v. Colossal Cont'g, LLC*, No. SA-23-CV-01038-XR, 2024 WL 1747651, at *2 (W.D. Tex. Apr. 23, 2024) (quoting *Schnurr v. Preston*, No. 5:17–CV–512–DAE, 2018 WL 8584292, at *3 (W.D. Tex. May 29, 2018)). Rule 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* (citing Fed. R. Civ. P. 9(b)).

"Articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* (quoting *Williams v. VMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). "Directly put, the who, what, when, and where must be laid out." *Id.* (quoting *Williams*, 112 F.3d at 178). "Facts and circumstances constituting charged fraud must be specifically demonstrated and cannot be presumed from vague allegations." *Id.* (quoting *Howard v. Sun Oil Co.*, 404 F.2d 596, 601 (5th Cir. 1968)). "Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim." *Id.* (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000)).

"Although the language of Rule 9(b) confines its requirements to claims of fraud, **the requirements of the rule apply to all cases where the gravamen of the claim is fraud** even though the theory supporting the claim is not technically termed fraud." *Id.* (emphasis added) (quoting *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998) (cleaned up)).

Plaintiffs' entire Complaint relies on Plaintiffs' allegation Purported Agents committed a multi-faceted fraudulent scheme for Haulla that supposedly included the Purported Agents knowingly misrepresenting their true identities for the express purpose of gaining access to Plaintiffs' customer portal. *See generally* Compl. 1–28. This alleged fraudulent conduct led to Plaintiffs' causes of action against Haulla. *See* Compl. 21 ("Count 1: Violation of [DTSA] . . . Haulla employed its fraudulent scheme to access Plaintiffs' confidential and proprietary information . . . [that] constitutes 'trade secrets."), at 22–23 ("Count 2: Violation of [TUTSA] . . . Among the improper means Haulla utilized to gain unauthorized access to the Portal and thereby obtain Plaintiffs' trade secrets are impersonation of Plaintiffs' customers and theft, fraud, and misrepresentations as described herein."), at 24 ("Count 3: Violation of [CFAA] . . . Haulla knowingly and with intent to defraud accessed Plaintiffs' protected computers and servers without authorization, and by means of this access furthered the intended fraud and obtained valuable information from Plaintiffs' Portal."), at 25 ("Count 4: Violation of [SCA] . . . Haulla violated [SCA] by intentionally and fraudulently accessing Plaintiffs' Portal and obtaining customer information stored on that facility."), at 25–26 ("Count 5: Violation of [THACA] . . . Haulla did so with the intent to use Plaintiffs' proprietary and confidential information to harm and defraud Plaintiffs."), at 27 ("Count 6: Tortious Interference . . . [Purported Agents] posing as existing customers in emails and phone calls to obtain Plaintiffs' confidential customer information and to

terminate contracts."), at 27–28 ("Count 7: Fraud . . . Haulla illegally accessed Plaintiffs' Portal and created fake customer profiles, and its [Purported Agents] contacted Plaintiffs' CSRs falsely representing themselves to be Plaintiffs' customers or acting on behalf of Plaintiffs' customers, all in effort to illegally obtain Plaintiffs' proprietary and confidential customer information . . . Haulla and its [Purported Agents] knowingly misrepresent their true identities for the express purpose of gaining access to the Portal.").

But the Purported Agents of Haulla were coined "Haulla's agents" by Plaintiffs without explaining or adding any allegation connecting the unknown people in the "Philippines and elsewhere" to Haulla." *See id.* at 3–5, 11–15. For example, Plaintiffs attempt to manufacture a connection between these Purported Agents and Haulla because the Purported Agents are in the Philippines (and elsewhere) and Haulla's LinkedIn page confirms a presence of workers in the Philippines. *See id.* at 14. Yet, Plaintiffs do not allege what those workers in the Philippines do, whether these workers are actively employed by Haulla, what the workers relationship with Haulla is, or how the workers became "agents" of Haulla. *See generally* Compl. In sum, Plaintiffs believe bad actors are in the Philippines and Haulla had at one point some workers in the Philippines.

Plaintiffs also claim Domingo Jose De Guzman, a recruiter in the Philippines, entered the email address "avriellepedroza@gmail.com" into HubSpot, and the same email address was apparently used to make a fake account in Plaintiffs' customer portal. *See id.* at 15–16, 51, 54. Plaintiffs also note a Haulla job posting prefers job candidates to have experience with HubSpot— a free sales tool. *See id.* at 15–16, 52. Yet, Plaintiffs never allege—nor draw any type of connection—between Domingo Jose De Guzman and Haulla. *See generally id.*

Plaintiffs allege Purported Agents committed fraudulent conduct as the basis for every cause of action, but Plaintiffs never allege facts to support any connection between the Purported

Agents and Haulla. More importantly, even if Plaintiffs included allegations that created a connection between Haulla and the Purported Agents, Plaintiffs do not include any allegations that would create an agency relationship between Haulla and the Purported Agents to then impute the Purported Agents' purported fraudulent activity to Haulla.

Without these allegations, the Purported Agents' conduct cannot be imputed to Haulla. Therefore, Plaintiffs failed to allege "who" committed fraudulent conduct Haulla or others—a requirement to plead fraudulent activity. *See Kem Constr*, 2024 WL 1747651, at *2. Accordingly, Plaintiffs' causes of action fail as a matter of law pursuant to Rule 9(b).

### C.      Plaintiffs fail to state a claim under the DTSA and TUTSA.

A claim of trade-secret misappropriation may be brought under DTSA and TUTSA. *EthosEnergy Field Servs., LLC v. Axis Mech. Grp., Inc.*, No. H-21-3954, 2022 WL 2707734, at *3 (S.D. Tex. June 10, 2022) (first citing 18 U.S.C. § 1836(b)(1); and then citing Tex. Civ. Prac. & Rem. Code § 134A.004). Because both the federal and state statute are based on the Uniform Trade Secrets Act, the elements are similar but not identical. *Id.* (citing *DBG Grp. Invs., LLC v. Puradigm, LLC*, No. 3:21-CV-678-S, 2022 WL 313435, at *3 (N.D. Tex. Feb. 2, 2022)).

"To state a claim under DTSA, a plaintiff must allege facts showing: (1) a trade secret; (2) misappropriation; and (3) that 'the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.'" *Id.* (citing 18 U.S.C. § 1836(b)(1)). "DTSA's definition of 'misappropriation' includes acquisition of trade secrets with the knowledge that they were acquired by improper means or disclosure or use of trade secrets without consent." *Id.* (citing 18 U.S.C. § 1839(5)). "The definition of 'improper means' includes theft and 'breach of a duty to maintain secrecy.'" *Id.* (citing 18 U.S.C. § 1839(6)(A)).

"To state a claim under TUTSA, a plaintiff must allege facts showing: (1) a trade secret; (2) acquisition "through a breach of a confidential relationship or discovered by improper means; (3) the trade secret was used without authorization; and (4) the trade secret owner suffered damages as a result." *Id.* (cleaned up) (citing *Snowhite Textile & Furnishings, Inc. v. Innvision Hosp., Inc.*, No. 05-18-01447-CV, 2020 WL 7332677, at *4 (Tex. App.—Dallas 2020, no pet.)). "Trade secret" is defined by TUTSA to mean:

> all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if . . . the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret[] and . . . the information derives independent economic value ... from not being generally known to[] and not being readily ascertainable through proper means by[] another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code § 134A.002(6); *see also* 18 U.S.C. § 1839(3) (using similar language in the DTSA to define "trade secret").

### 1. Plaintiffs fail to state a claim under the DTSA because Plaintiffs' purported trade secrets are not related to a product or service used in interstate or foreign commerce.

Plaintiffs must adequately allege its purported trade secrets are used or intended for use in interstate or foreign commerce. *Assoc'd Prof. Eds. of La. v. EDU20/20 LLC*, No. 1:22-CV-05720, 2023 WL 6290081, at *8 (W.D. La. Sept. 11, 2023) (citations omitted). "In considering this element of a DTSA claim, two initial points bear emphasis." *Id.* "First, the disputed trade secret must relate to a product or service *used* or *intended to be used* in interstate commerce." *Id.* (emphasis in original). "Merely *affecting* interstate commerce, would not suffice." *Id.* (emphasis

in original) (citations omitted). "Second, the *product or service* must be used in interstate commerce—not the *trade secret* itself." *Id.* (emphasis in original) (citations omitted).

Here, Plaintiffs are all companies operating solely in Texas—**El Paso** Disposal, L.P., Waste Connections of **Texas**, LLC, and Waste Connections **Lone Star**, Inc. *See* Compl. 1–2. The purported trade secrets are customer information of Texas customers for waste-management services in Texas. *See id.* at 7–9, 15–19. Therefore, the disputed trade secrets relate exclusively to Texas waste-management services and do not relate to a service used in interstate or foreign commerce, especially since Plaintiffs only service Texas. *See id.* Indeed, while Plaintiffs have a single conclusory statement that Plaintiffs' trade secrets "are used in interstate commerce" through "Plaintiffs' [p]ortal or otherwise," Plaintiffs never allege any purported trade secrets are used outside of Texas or Plaintiffs' waste-management services occur outside Texas. *Compare id.* at 21, *with id.* at 3–6, 17–20. Thus, Plaintiffs fail to state a claim under the DTSA because Plaintiffs' purported trade secrets are not related to a product or service used in interstate or foreign commerce. Accordingly, the Court should dismiss Plaintiffs' DTSA cause of action.

> **2.     Plaintiffs failed to state a claim under the DTSA and TUTSA because Plaintiffs did not identify any recognized trade secret, show steps taken to keep information secret, and establish the supposed trade secrets were independently valuable.**

Plaintiffs allege Haulla misappropriated Plaintiffs' confidential and proprietary customer information. *See* Compl. 21–22. Plaintiffs define confidential and proprietary customer information differently throughout their Complaint. *See id.* at 5, 9, 11, 21, 22. At different times, Plaintiffs assert confidential and proprietary customer information includes pricing, billing rates, historical and current billing information, waste container size, frequency of pick up, invoice numbers, customer contact information, and other terms of service. *Id.* But Plaintiffs expressly state pricing, billing rates, and other terms of service are their trade secrets. *See id.* at 21–22.

"Business information constitutes a trade secret under the DTSA and TUTSA if (1) the owner of the information has taken reasonable measures to keep such information secret; and (2) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 609 & n.6 (E.D. Tex. 2021) (cleaned up) (first citing 18 U.S.C. § 1839(3)(A)–(B); and then citing Tex. Civ. Prac. & Rem. Code § 134A.002(6)(A)–(B)).

"Notably, business information is not necessarily a trade secret simply because it is confidential." *Id.* (first citing *Brand Servs., LLC v. Irex Corp.*, 909 F.3d 151, 158 (5th Cir. 2018) (acknowledging not all confidential business information qualifies as a trade secret); then citing *H&E Equip. Servs. v. St. Germain*, No. 19-134-SDD-EWD, 2020 WL 1678327, at *6 (M.D. La. Apr. 6, 2020) ("Confidential information and trade secrets are not the same."); then citing *St. Clair v. Nellcor Puritan Bennett LLC*, No. CV-10-1275-PHX-LOA, 2011 WL 5335559, at *2 (D. Ariz. Nov. 7, 2011) ("[C]onfidentiality alone does not transform business information into a trade secret."); and then citing *Sw. Whey, Inc. v. Nutrition 101, Inc.*, 117 F. Supp. 2d 770, 777 (N.D. Ill. 2000) ("[G]eneralized confidential business information does not constitute a protectable trade secret." (quotation omitted))). "The DTSA and TUTSA make plain that, in addition to being confidential, business information alleged to be a trade secret must have independent economic value and that value must be derived from the fact that the information is secret." *Id.*

### a. Plaintiff failed to identify any recognized trade secret.

Plaintiffs failed to identify any recognized trade secret. On one hand, Plaintiffs allege Haulla misappropriated Plaintiffs' confidential and proprietary customer information. *See* Compl.

21–22. But none of the identified information qualifies as a trade secret under the DTSA and TUTSA because, on the other hand, Haulla had to have Plaintiffs' customer information to target Plaintiffs' customers in Plaintiffs' customer portal. Based on Plaintiffs' allegations, Haulla had to know the customer name, customer contacts, and the customer's address or account number before communicating with Plaintiffs. Without this knowledge, Haulla could not pass as Plaintiffs' customers to get access to Plaintiffs' customer portal. Therefore, the only remaining supposed trade secrets are pricing, billing rates, and other terms of service.

Pricing, billing rates, and other terms of service are shared with Plaintiffs' prospective, current, and former customers via contracts and invoices. While Plaintiffs may consider this information confidential, Plaintiffs provide this information to third parties. When the ultimate price is available to third parties, it is not a trade secret. *See, e.g.*, *Clean v. Trillium Trans. Fuels, LLC*, No. H-19-244, 2022 WL 4451865, at *3–4 (S.D. Tex. Aug. 24, 2022). Accordingly, the Court should dismiss Plaintiffs' DTSA and TUTSA causes of action.

### b. Plaintiffs failed to show reasonable steps taken to keep any alleged misappropriated information secret.

All of the information Plaintiffs allege was misappropriated was shared with their customers. Indeed, the information was easily and always available to Plaintiffs' customers through Plaintiffs' customer portal. A service contract and invoices would include Plaintiffs' customers' pricing, billing rates, historical and current billing information, waste container size, frequency of pick up, invoice numbers, customer contact information, and other terms of service. In effect, the only way Haulla could allegedly get access to the purported trade secrets was by entering the customer portal—available to Plaintiffs' customers. And Plaintiffs failed to allege their customers were required to sign confidentiality or non-disclosure agreements or their customers were only permitted limited access to such information. *See, e.g.*, *Edgenet, Inc. v. GS1*

*AISBL*, 742 F. Supp. 2d 997, 1028 (E.D. Wis. 2010) ("Clients were required to sign confidentiality and non-disclosure agreements and were only permitted limited access. This raises a plausible inference that the retailers and suppliers are in fact the clients required to keep the information in question secret." (cleaned up)). Therefore, Plaintiffs purported trade secrets could be shared with the world by Plaintiffs' customers. Accordingly, Plaintiffs did not take reasonable steps to keep secret their purported trade secrets, and thus the Court should dismiss Plaintiffs' DTSA and TUTSA causes of action.

<blockquote>c. <b>Plaintiffs failed to establish its purported trade secrets were independently valuable.</b></blockquote>

"A trade secret must have *independent* economic value." *Providence Title*, 547 F. Supp. 3d at 611. "[A] business might have good reason to keep certain information confidential with the separate requirement that the information have independent economic value that is derived from its confidentiality." *Id.* at 610. "In a general sense, there is 'value' to a business in keeping all confidential business information secret; that's the motivation for classifying such information as confidential." *Id.* "But just because a business benefits from keeping certain information confidential does not necessarily mean that the information has independent economic value derived from its confidentiality." *Id.* at 610–11. "Otherwise, all confidential business information would constitute a trade secret and the additional statutory requirement that the information have independent economic value would be rendered meaningless." *Id.* at 611. "Information that depends entirely on other factors for its economic value cannot be said to have independent economic value." *Id.*

In the present case, confidential and proprietary customer information, such as pricing, billing rates, historical and current billing information, waste container size, frequency of pick up, invoice numbers, customer contact information and other terms of service, lack independent value.

*See, e.g.*, *id.* at 610–11. If a competitor used Plaintiffs' confidential information to solicit Plaintiffs' customer whose service usage is reduced and whom the competitor ended up servicing at a loss or deep discount based on Plaintiffs' information, then the competitor would have gained no economic value from the Plaintiffs' confidential information. Likewise, if a competitor with access to Plaintiffs' information nonetheless failed in its sales efforts, then the information would not have any economic value to the competitor. In sum, whether the information Haulla allegedly took from Plaintiffs has any economic value at all is wholly contingent on the relative economic value and performance of Haulla employees and whether the use of the information results in the successful solicitation of Plaintiffs' customers. Because the value of Plaintiffs' information depends entirely on other factors, Plaintiffs' confidential information cannot be said to have independent economic value. *See, e.g.*, *id.* Accordingly, Plaintiffs failed to state a claim for relief under the DTSA and TUTSA, and the Court should dismiss Plaintiffs' DTSA and TUTSA causes of action.

### D. Plaintiffs failed to state a claim under the SCA because Plaintiffs' customer portal is not a facility and Plaintiffs' data is not electronic storage.

The SCA prohibits unauthorized access to wire and electronic communications in temporary and back-up storage and provides in relevant part:

Whoever—

(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or

(2) intentionally exceeds an authorization to access that facility;

and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished.

*Providence Title Co. v. Truly Title, Inc.*, No. 4:21-CV-147-SDJ, 2024 WL 1939286, at *2–3 (E.D. Tex. May 2, 2024) (quoting *Garcia v. City of Laredo*, 702 F.3d 788, 791 (5th Cir. 2012) (quoting

18 U.S.C. § 2701(a)). "Thus, to establish liability under the SCA, a plaintiff must show that the defendant (1) 'gained unauthorized access to a facility through which electronic communication services are provided (or the access must have exceeded the scope of authority given)' and that it thereby (2) 'accessed electronic communications while in storage.'" *Id.* at *3 (citations omitted). Section 2707(a) grants a private right of action for "any . . . person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind."

"Electronic communication service" means "any service which provides to users thereof the ability to send or receive wire or electronic communications." *Providence Title*, 2024 WL 1939286, at *3 (citing 18 U.S.C. § 2510(15) (incorporated by reference in 18 U.S.C. § 2711(1) of the SCA)).

Generally, "the SCA has been applied to 'providers of a communication service such as telephone companies, Internet or e-mail service providers, and bulletin board services.'" *Id.* (citing *Garcia*, 702 F.3d at 792). The "relevant 'facilities' that the SCA is designed to protect are not computers that *enable* the use of an electronic communication service, but instead are facilities that are *operated by* electronic communication service providers and used to store and maintain electronic storage." *Id.* (emphasis in original) (quoting *Garcia*, 702 F.3d at 792 (cleaned up)). "The statute envisions a provider (the ISP or other network service provider) and a user (the individual with an account with the provider), with the *user's communications in the possession of the provider*." *Id.* (emphasis in original) (quoting *Garcia*, 702 F.3d at 792).

### 1.     Plaintiffs' customer portal is not a facility under the SCA.

Although the SCA did not define "facility," the SCA's definitions of "electronic communication service" and "electronic storage" indicate the SCA was aimed at third-party

service providers, and a broad, plain language definition of "facility" was inappropriate given the SCA and its legislative history showed "specific Congressional intent to deal with the particular problem of private communications in network service providers' possession." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 146–48 (3d Cir. 2015) (citing *Garcia*, 702 F.3d at 792) (agreeing with the Fifth Circuit); *see Central Bank & Tr. v. Smith*, 215 F. Supp. 3d 1226, 1235 (D. Wy. 2016) (citing to *Garcia*, 702 F.3d at 792–93) (noting, after former employees access the bank's network to download alleged trade secrets, "Central Bank & Trust is not a facility under the statute . . . Central Bank & Trust is not an internet service provider or analogous to one. Under these alleged facts, the statute does not apply"); *see also K.F. Jacobsen & Co., Inc. v. Gaylor*, 947 F. Supp. 2d 1120, 1125–26 (D. Or. 2013) (holding a company's computer system was not a facility under the SCA because the SCA "governs only the privacy of stored Internet communications, it serves to protect only information held by the third-party providers that facilitate those communications, not information stored by the customers of those providers that either initiate or receive the communications"); *accord Noel v. Hall*, No. 99-649-AC, 2012 WL 3241858, at *8 (D. Or. Apr. 27, 2012) (finding a plaintiff was not a provider of "electronic communications service" but a user of that service when the plaintiff "provided telephone, computer, and fax services to three businesses and routinely tape-recorded calls made to the businesses as back-ups of the original calls" because the provider would be the plaintiff's "telephone carrier").

Like the bank's computer system in *Central Bank & Trust* and the company's computer system in *K.F. Jacobsen*, Plaintiffs' customer portal is not a facility under the SCA. *See* 215 F. Supp. 3d at 1235; *see also* 947 F. Supp. 2d at 1125–26. With the exception of a single conclusive statement "the Portal is a facility," Plaintiffs do not allege any facts that would make Plaintiffs'

customer portal a facility—a provider of a communication service such as a telephone company, Internet or e-mail service provider, or bulletin board service. *Compare* Compl. 25, *with generally id.* at 1–27. Indeed, Plaintiff alleges the "Portal is Plaintiffs' proprietary website that requires equipment to maintain, such as **a privately-owned computer system**," like the systems in *Central Bank & Trust* and *K.F. Jacobsen*. *Id.* at 9 (emphasis added); *see* 215 F. Supp. 3d at 1235; *see also* 947 F. Supp. 2d at 1125–26. Accordingly, Plaintiffs fail to state a claim for relief under the SCA, and the Court should dismiss Plaintiffs' cause of action under the SCA.

### 2. Plaintiffs' data is not electronic storage under the SCA.

Plaintiffs' Complaint is silent to whether Haulla obtained, altered, or prevented authorized access to a wire or electronic communication while it is in **electronic storage**. *See generally* Compl. 1–25.

"Electronic Storage" means "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17). "Electronic storage" as defined

> encompasses only the information that has been stored by an electronic communication service provider. Thus, information that an Internet provider stores to its servers or information stored with a telephone company—if such information is stored temporarily pending delivery or for purposes of backup protection—are examples of protected electronic storage under the statute. But information that an individual stores to his hard drive . . . is not in electronic storage under the statute.

*Providence Title*, 2024 WL 1939286, at *3 (quoting *Garcia*, 702 F.3d at 793).

"Because subsection (A) applies only to messages in 'temporary, intermediate storage,' courts have construed subsection (A) as applying to e-mail messages stored on an ISP's server pending delivery to the recipient, but not e-mail messages remaining on an ISP's server after delivery." *Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1205 (S.D. Cal. 2008) (citing

*Theofel v. Farey–Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004)). E-mails stored on private computer systems are not in "temporary, intermediate storage." *Id.* Furthermore, the e-mails on private computer systems are not stored "by an electronic communication service for purposes of backup protection" as required by subsection (B). *Id.* Accordingly, the e-mails or wire communications stored on Plaintiffs' private computer system, which is what makes up Plaintiffs' portal, are not in "electronic storage" as defined by the SCA. *See, e.g.*, *id.*

Because Plaintiffs' failed to allege any facts to support Haulla obtained, altered, or prevented authorized access to a wire or electronic communication while it is in electronic storage, Plaintiff failed to state a claim for relief under the SCA. Moreover, the alleged confidential information accessible in Plaintiffs' customer portal could not be in electronic storage under the SCA. Accordingly, the Court should dismiss Plaintiffs' SCA cause of action.

### E.  Besides Plaintiffs' TUTSA claim, Plaintiffs' state-law causes of action must be dismissed because they are preempted.

TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." *EthosEnergy*, 2022 WL 2707734, at *7 (citing Tex. Civ. Prac. & Rem. Code § 134A.007(a)); *ScaleFactor, Inc. v. Process Pro Consulting, LLC*, 394 F. Supp. 3d 680, 683 (W.D. Tex. 2019); *StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 333 (E.D. Tex. 2019) (citations omitted).

"Where a claim is based on a misappropriation of a trade secret, then it is preempted by TUTSA." *StoneCoat*, 426 F. Supp. 3d at 333 (quoting *DHI Grp., Inc. v. Kent*, 397 F. Supp. 3d 904, 922 (S.D. Tex. 2019) (quoting *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App.—Corpus Christi 2017, no pet.) (citing Tex. Civ. Prac. & Rem. Code § 134A.007(a)))); *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-CV-444-RP, 2018 WL 315753, at *3 (W.D. Tex. Jan. 5, 2018) (cases collected) (holding the "TUTSA's

preemption provision encompasses all claims based on the alleged improper taking of confidential business information" and, *inter alia*, dismissing plaintiffs' tortious interference and THACA claims that appeared "to be based upon the same facts as their misappropriation of trade secrets claims").

In this case, other than TUTSA, Plaintiffs' state-law causes of action—violations of THACA (Count 5), tortious interference (Count 6), and fraud (Count 7)—are premised on the same allegations as Plaintiffs' TUTSA claim. *Compare* Compl. 25–27 ("Count 5: Violations of [THACA] . . . Haulla knowingly and intentionally accessed Plaintiffs' Portal without consent, seeking to extract Plaintiffs' proprietary and confidential customer information. Haulla did so with the intent to use Plaintiffs' proprietary and confidential information to harm . . . Plaintiffs."), at 27 ("Count 6: Tortious Interference . . . Haulla's interferences include . . . the improper use and access of Plaintiffs' confidential and proprietary information for the purpose of inducing customers to breach their contracts and otherwise terminate business relationships with Plaintiffs."), at 27–28 ("Count 7: Fraud . . . Haulla and its [Purported Agents] knowingly misrepresent their true identities for the express purpose of gaining access to the Portal, thus allowing them to obtain Plaintiffs' proprietary and confidential information."), *with id.* at 22–23 ("Count 2: Violation of [TUTSA] . . . Haulla used improper means to access the data. For example, the Portal containing Plaintiffs' trade secrets could only be accessed with non-public information specific to each customer, which Haulla obtained through improper means" including Haulla's "impersonation of Plaintiffs' customers and theft, fraud, and misrepresentations."). Therefore, Plaintiffs' non-TUTSA state-law claims are preempted by Plaintiffs' TUFTA claim, and thus Plaintiffs cannot state a claim under THACA, tortious interference, and fraud. Accordingly, the Court should

dismiss Plaintiffs' state-law claims—under violations of THACA (Count 5), tortious interference (Count 6), and fraud (Count 7).

**F.      Plaintiffs should not be afforded leave to amend their Complaint.**

Although leave to amend should be freely granted, leave is not required where a plaintiff "has already pleaded his 'best case.'" *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). A plaintiff has pleaded his or her best case after being "apprised of the insufficiency" of the complaint or if the deficiencies in the complaint cannot be cured. *Dark v. Potter*, 293 F. App'x 254, 257 (5th Cir. 2008) (citation omitted).

The deficiencies identified herein cannot be cured. Accordingly, leave to amend should be denied as futile.

**V.      CONCLUSION**

For the foregoing reasons, Haulla respectfully asks the Court to grant this Motion to Dismiss for Failure to State a Claim under Federal Rules of Civil Procedure 9(b) and 12(b)(6), and asks the Court to dismiss Plaintiffs' Complaint, ECF No. 1, in its entirety without leave to amend.

Date: May 10, 2024.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ J. Blake Glatstein*
Winston Huff
Texas Bar No. 24068745
whuff@munsch.com
J. Blake Glatstein
Texas Bar No. 24123295
bglatstein@munsch.com
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

Casey Minnes Carter
Texas Bar No. 24098116
ccarter@munsch.com
700 Milam Street, Suite 800
Houston, Texas 77002

**ATTORNEYS FOR DEFENDANT**

### CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and the Local Rules, I certify on May 10, 2024, counsel of record who have appeared in this case on behalf of the Parties will be immediately served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ J. Blake Glatstein*
J. Blake Glatstein