UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **EL PASO DISPOSAL, LP**, **WASTE CONNECTIONS OF TEXAS, LLC,** *and* **WASTE CONNECTIONS LONE STAR, INC.**, | § § § § § |
| *Plaintiffs*, | §    EP-24-CV-00097-KC |
| v. | § § |
| **ECUBE LABS CO. d/b/a HAULLA SERVICES,** | § § § |
| *Defendant.* | § § |

## MEMORANDUM OPINION AND ORDER
## REGARDING AGREED PROTECTIVE ORDER

Presently before the Court is the parties' "Joint Motion for a Protective Order" (ECF No. 28). The Honorable District Judge Kathleen Cardone (Referring Court) referred the motion to the undersigned Magistrate Judge. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.[1]

### I. BACKGROUND

Plaintiffs El Paso Disposal, LP; Waste Connections of Texas, LLC; and Waste Connections Lone Star, Inc. (collectively, Waste Connections) are related companies;[2] they

---

[1] This motion, being a discovery motion, is a nondispositive matter, and therefore, this Court, as a magistrate court, has the authority to determine and decide the motion in an order. *See* 28 U.S.C. § 636(b)(1)(A) (A district "judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court," except certain listed motions not relevant here.); Fed. R. Civ. P. 72(a) ("When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must . . . , when appropriate, issue a written order stating the decision."); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016–18 (5th Cir. Unit A 1981) ("[D]iscovery issues are by definition pretrial matters," and a magistrate judge has "the authority under 28 U.S.C. § 636(b)(1)(A) to enter non-dispositive discovery orders.").

[2] Pls.' Disclosure Statement, ECF No. 7.

provide waste collection (or hauling), recycling, and disposal services to their customers.[3] According to Waste Connections, Defendant Ecube Labs Co. d/b/a/ Haulla Services (Haulla) is a "waste broker" in that it acts as a middleman between a customer and its designated waste haulers, *i.e.*, waste collection companies.[4]

On March 27, 2024, Waste Connections brought this lawsuit against Haulla. Waste Connections alleges that Haulla, through a network of foreign and domestic agents, illegally accessed Waste Connections' web-based customer portal, by creating fake profiles and by impersonating its customers, and obtained Waste Connections' confidential customer information, such as "pricing data, frequency of service, invoice numbers, customer names, and contact information."[5] Using the so-obtained information, Waste Connections avers, Haulla contacted Waste Connections' customers, offered them prices below what they were paying for waste collection to Waste Connections, and induced them to breach their contracts with Waste Connections and sign contracts with Haulla instead.[6] West Connections asserts federal and Texas state law claims for fraud, tortious interference with contract, hacking its computers and customer portal, obtaining, without authorization or consent, its customer information, and misappropriation of its trade secrets.

On or about June 24, 2024, pursuant to Federal Rule of Civil Procedure 45, Waste Connections served subpoenas duces tecum on three non-parties, namely, Rio Grande Waste Services, Inc.; Frontier Access, LLC; and Texas Pride Disposal Solutions, LLC, and Texas Pride

---

[3] Compl. at ¶¶ 10, 12, ECF No. 1.

[4] *Id.* at ¶ 12.

[5] *Id.* at ¶¶ 1, 16, 36–38, 47.

[6] *Id.* at ¶¶ 14, 20, 40.

Disposal Solutions Management, LLC, seeking certain documents.[7]  On July 8, 2024, Haulla filed a Motion to Quash, Modify, or for Protection from Plaintiffs' Subpoenas to Nonparties (ECF No. 23).  In connection with the subpoenas and the motion to quash, on July 30, 2024, the parties filed the instant joint motion for protective order.[8]  On August 1, 2024, the Referring Court referred the joint motion to the undersigned judge.  The Court will address the motion to quash in a separate order; here, it rules on the joint motion.

## II.   DISCUSSION

The parties agree that a confidentiality and protective order is necessary for this case because they are competitors and given the nature of West Connections' claims, such as trade-secret misappropriation, discovery would necessitate the exchange of confidential and highly sensitive company information, including information pertaining to customers and pricing of services.  Joint. Mot. at 4.  Each party submitted a proposed, agreed protective order (PPO) that, if the Court approves, would govern discovery in this matter.  *Id.*, Ex. 1 [hereinafter Def.'s PPO], ECF No. 28-1; *id.*, Ex. 2 [hereinafter, Pls.' PPO], ECF No. 28-2.  Whereas they agree on a vast majority of the provisions in the PPOs, they ask the Court to resolve their disagreement over some provisions.

A district court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including, *inter alia,* "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(G).  "Protective orders are often entered by stipulation when discovery commences."  *Bond v.*

---

[7] *See* Subpoenas, ECF Nos. 20, 20-1, 20-2.

[8] Joint Mot. for a Protective Order [hereinafter, Joint Mot.], ECF No. 28.

*Utreras*, 585 F.3d 1061, 1067 (7th Cir. 2009).  Frequently, at the beginning of the litigation, the parties stipulate to an "umbrella" protective order that "authorize[s] any person producing information to designate that which is confidential as protected under the order."  8A C. Wright & A. Miller, Federal Practice and Procedure § 2035 (3d ed. June 2024 update) [hereinafter Wright & Miller]; *see also id.* § 2044.1.  A stipulated umbrella protective order can "expedite production, reduce costs, and avoid the burden on the court."  Manual for Complex Litigation § 11.432 (4th ed. May 2023 update).  Typically, such an order is made "without a particularized showing to support the claim for protection" and thereby, postpones "the need for close scrutiny of discovery material" until the confidential designation under the order is subsequently challenged.  *Id.*

"Stipulated protective orders place the district court in an unusual position," in that "'the court is faced with an essentially non-adversarial situation'"; so, "[n]ormally, the court is quick to ratify (and rightly so) any area of agreement between opposing parties."  *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) (quoting A. Miller, *Confidentiality, Protective Orders and Public Access to the Courts*, 105 Harv. L. Rev. 427, 492 n.322 (1991)).  But Rule 26(c)(1) demands that "the district court must independently determine if 'good cause' exists" to issue a stipulated protective order: if good cause is lacking, "the discovery materials in question should not receive judicial protection."  *Id.* (internal quotes omitted); *see also* Local Court Rules CV-26(c) (W.D. Tex.) ("Upon motion by any party demonstrating good cause, the court may enter a protective order.").  The determination of whether "good cause" exists requires the court to "balance the party's interest in obtaining access against the other party's interest in keeping the information confidential."  *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36

(1984) (Rule 26(c) requires the court to "weigh fairly the competing needs and interests of parties."). Rule 26(c) confers "broad discretion" on the court to decide "what degree of protection is required." *Seattle Times*, 467 U.S. at 36.

Here, the parties' PPOs are based on, and for the most part, identical to, the standard protective order (SPO) set out in Appendix H-2 to the Local Rules. *See* Local Court Rules CV-26(c) ("In cases where the parties agree to a protective order, the forms set out in Appendix H-1 and Appendix H-2 are approved."). As relevant here, the SPO provides a two-tiered designation for "Qualified Persons" only to whom confidential information may be disclosed or made available by a receiving party. *See* Local Court Rules, App. H-2, §§ 2(a)–(b), 7 [hereinafter L.R. App. H-2]. Under the SPO, Qualified Persons include, for purposes of "Counsel or Attorneys' Eyes Only" (AEO) information, *inter alia*, "retained counsel" and if certain conditions are met, "actual or potential independent experts or consultants," *id.* §§ 2(a)(i)–(ii), and for purposes of Confidential information, *inter alia*, the categories of persons listed in § 2(a) plus a party (if the party is a natural person) and, if certain conditions are met, a party's officers or employees (if the party is an entity), *id.* §§ 2(b)(i)–(iii).

In some respects, the parties' PPOs differ from the SPO and further differ from each other's. Both PPOs provide, and the parties thereby agree, that Qualified Persons further include: (A) for AEO information, up to two in-house counsel of a party (if certain conditions are met), *e.g.*, Pls.' PPO § 2(a)(ii), and (B) for Confidential information, any potential or actual witnesses (if certain conditions are met), *e.g.*, *id.* § 2(b)(vi). But Haulla proposes, and West Connections does not agree, to expand the categories of Qualified Persons for AEO information to include potential or actual witnesses. Def.'s PPO § 2(a)(iv).

In addition, Haulla proposes certain modifications to two other provisions in the SPO: one relates to Haulla's proposal for the inclusion of potential or actual witnesses for AEO information, *id.* § 11(b)(ii) (adding this new subsection to the SPO's § 11(b)), and the other relates to the parties' agreed-upon inclusion of in-house counsel for AEO information, *id.* § 7(b) (adding new language to the SPO's § 7(b)). West Connections, whose PPO tracks verbatim the SPO's § 7(b) and § 11(b), says that because it disagrees with Haulla's inclusion of potential or actual witnesses for AEO information, Haulla's modifications to § 11(b)(ii) are moot, Joint Mot. at 6, and that to the extent the Court does not approve §§ 2(a)(iv) and 11(b)(ii) in Haulla's PPO, West Connections does not object to the new language that Haulla added in § 7(b), *id.* at 9.

So, the parties' disputes center on Haulla's proposal for the inclusion of potential or actual witnesses in the definition of "Qualified Persons" for AEO information. As proposed by Haulla, that provision states:

> any person whom a named party intends, in good faith, to call as a witness in any deposition, hearing, or at trial in this case, and that person's attorneys to the extent reasonably necessary to prepare for and provide his or her testimony; provided that (a) such person, and that person's attorney, if any, have signed the acknowledgement form annexed hereto as Exhibit A agreeing to be bound by the terms of this Protective Order; (b) the deponent, potential witness, or other party authorized to have access to Classified Information solely under this subparagraph shall not retain copies of any Classified Information; and (c) the designating party discloses the name and identi[t]y of the potential or actual witness to all counsel in writing at least 7 days before disclosing any Classified Information to such potential or actual witness[.]

Def.'s PPO § 2(a)(iv). Haulla argues that given that West Connections' claims are centered on pricing information and customer identification data, it is highly anticipated, if not known, that witnesses will be required to testify as to such materials. Joint Mot. at 5. Without this provision, Haulla continues, the parties could not prepare a witness for, or use AEO information at depositions, hearings, or trial. *Id.* at 4.

West Connections responds that the parties are competitors in the waste disposal industry because as a broker, Haulla's business model is to steer customers under contract with an existing waste hauler to another hauler in Haulla's network. *Id.* at 6. It states that some of the most important criteria for a customer selecting a waste disposal service are pricing and other terms of service, which merit AEO designation. *Id.* Yet, under Haulla's proposed protective order, West Connections explains, this sensitive information could be viewed by Haulla's personnel and any other person Haulla "intends[, in good faith,] to call as a witness in any deposition, hearing, or at trial," for example, additional competitors. *Id.* (quoting Def.'s PPO § 2(a)(iv)). Such disclosure, West Connections argues, would potentially damage its business, defeating the purpose behind AEO designation. *Id.* Accordingly, Waste Connections states, the risk that sensitive business data is misused by a competitor greatly outweighs any perceived litigation accommodation suggested by Haulla. *Id.* at 7.

Moreover, West Connections adds that to the extent that a party has a good faith basis to claim that a specific AEO designated document is critical for witness preparation, the party may later seek the Court's permission to share such document with a specifically named witness, and the opposing party may object. *Id.* at 7 n.3. At least in this fashion, West Connections continues, the Court will be able to make a determination based on specific facts, i.e., identification of document(s) and witness(es), rather than in the abstract as Haulla proposes. *Id.*

For several reasons, the Court thinks West Connections has the better argument. First, for "actual or potential independent experts or consultants," the SPO's definition of "Qualified Persons" for AEO information excludes "the current employees, officers, members, or agents of parties or affiliates of parties," L.R. App. H-2 § 2(a)(ii), but there is no such exclusion in Haulla's proposed § 2(a)(iv) in providing access to AEO information for potential and actual

witnesses. Consequently, under Haulla's proposal, AEO information can be disclosed to any employees of either party.

Second, West Connections' chief allegations are that Haulla, through its network of foreign and domestic agents, illegally obtained West Connections' "pricing data, . . . customer names, and contact information" from its customer web portal, Compl. at ¶ 36, and Haulla used that information to contact West Connections' customers and steer them to Haulla's designated waste haulers—causing West Connections to lose customers and damaging its reputation and relationship to its customers, *id.* at ¶ 21. The parties do not dispute that such information qualifies as AEO information. *See* L.R. App. H-2 § 3(b) (AEO information "includes, but is not limited to, product formula information, design information, nonpublic financial information, pricing information, customer identification data, and certain study methodologies."); *see also* Joint Mot. at 5. Therefore, based on West Connections' allegations (which are accepted as true at this stage of the litigation), allowing Haulla's employees, who may be designated as potential or actual witnesses, access to such information—without any particularized and specific demonstration of facts as to the potential witnesses and Haulla's specific necessity for disclosure—carries the risk of further damaging West Connections' business: such allowance would seem to be tantamount to letting the fox guard the henhouse. That risk can be exponentially greater with over-designation, if any, of "potential" witnesses.

Third, contrary to Haulla's assertions, neither the SPO, nor the parties' PPOs prevent a Qualified Person from testifying at a deposition regarding AEO information, though unauthorized persons may be excluded from the deposition. L.R. App. H-2 §§ 6, 12; Pls.' PPO § 6. The SPO, like the parties' PPOs, leaves it for the Court's later determination of "[t]he manner of using any [AEO information] at a hearing or trial." L.R. App. H-2 § 12; Pls.' PPO § 12.

Fourth, under the SPO, as under the parties' PPOs, a party such as Haulla may seek the designating party's consent to allow additional persons access to AEO information, Pls.' PPO § 10 ("Nothing in this order shall prevent disclosure beyond the terms of this order if each party designating the information as [AEO] consents to such disclosure."), and upon failing to obtain consent, may move for the Court's permission for such persons' access to AEO information, *id.* § 2(c) (defining "Qualified Persons" as including "[s]uch other person as this court may designate after notice and an opportunity to be heard").

The Court therefore concludes that Haulla's definition of "Qualified Persons" for AEO information to include potential or actual witnesses is improvident, lacking good cause for its inclusion in an umbrella protective order for this case. That conclusion is bolstered by the sole case that Haulla cites in support of its arguments and definition. Joint Mot. at 4–5 (citing *E3 Biofuels, LLC v. Biothan Corp.*, No. 1:12-MC-76, 2013 WL 3778804, at *8–10 (S.D. Ohio July 18, 2013)). In *E3 Biofuels*, the court modified a proposed protective order to permit, as do the parties' PPOs here, disclosure of confidential materials to "actual or potential deponents or witnesses" but did not include the same permission for disclosure of AEO materials. *See E3 Biofuels,* 2013 WL 3778804, at *10–*11.

In sum, the Court **DECLINES TO ADOPT** Haulla's proposed § 2(a)(iv) and § 11(b)(ii), which relates to the proposed § 2(a)(iv). However, it **APPROVES** Haulla's proposed modifications to § 7(b) regarding access to AEO information by a party's in-house counsel.

A.  **The Court's Modifications to the PPO**

For clarity, certain provisions require modifications for purposes of finalizing the parties' agreed protective order. For example, although the Court approves Haulla's proposed modifications to § 7(b), it observes that Haulla's rendition of § 7(b) incorrectly cross-references

"subparagraph 2(a)(i)," instead of "subparagraph 2(a)(ii)," in the modified language addressing access by in-house counsel, which should be corrected in the final agreed protective order. Def.'s PPO § 7(b); *see also* Joint Mot. at 7–8 (discussing Haulla's modifications to § 7(b) as it relates to § 2(a)(ii)).  Likewise, in the first sentence of the Haulla's rendition of § 7(b), the cross-reference to "subparagraph § 2(a)(ii)" in addressing access by experts should be substituted with "subparagraph § 2(a)(iii)."

Clarifications are also needed as to designation, where required, of a Qualified Person; by when, an objection to such a designation must be made; and whether, during the period for objection, disclosure to the designated person should not be made.  Two provisions in West Connections' PPO require designation of a Qualified Person: § 2(a)(iii) (regarding access to AEO information by experts or consultants) and § 2(b)(vi) (regarding access to Confidential information by potential and actual witnesses).  However, § 2(a)(ii) (regarding access to AEO information by in-house counsel) includes no designation requirement, and, the Court believes, it should.  Moreover, whereas § 2(b)(vi) requires that written designation of witnesses be made "at least 7 days before disclosing any Confidential information," no such period of non-disclosure is present in § 2(a)(iii).  Relatedly, while § 11(b) (i.e., § 11(b)(i)) in West Connections' PPO, which tracks the language of the SPO's § 11(b), permits any party who "in good faith disagrees with the designation of a person as a Qualified Person" to object to the person, it is silent as to when such an objection must be made and whether, during the period for objection, disclosure to the designated person should not be made.

To avoid ambiguity and harmonize these provisions, below, the Court modifies §§ 2(a)(ii), 2(b)(vi), and 11(b) of West Connections' PPO.  Section 2(a)(ii) is modified as follows

(strikethroughs indicate deletions, underlines indicate additions, and brackets indicate the Court's comments):

>    ii.   up to two (2) persons for each party that is serving as in-house counsel for the parties provided such counsel:
>    - serves predominantly in a legal and not business capacity for the party;
>    - is not a competitive decision maker for the party or any of the party's affiliates; [footnote 1 inclusive]
>    - is actively involved in managing this litigation;
>    - files a notice of appearance in the litigation thus subjecting such counsel to the jurisdiction of this Court; ~~and,~~
>    - is admitted to the bar of the State of Texas, or is in good standing, or admitted in good standing to the bar of any state in the United States and applies for pro hac vice admission in Texas; <u>and</u>
>    - <u>has been designated in writing by notice to all counsel;</u>

Section 2(b)(vi) is modified as follows:

>    vi.   any person whom a named party intends, in good faith, to call as a witness in any deposition, hearing, or at trial in this case, and that person's ~~attorneys~~ <u>attorney</u> to the extent reasonably necessary to prepare for and provide his or her testimony; provided that (a) such person, and that person's attorney, if any, have signed the acknowledgement form annexed hereto as Exhibit A agreeing to be bound by the terms of this Protective Order; (b) the deponent, potential witness, or other party authorized to have access to Confidential Information solely under this subparagraph shall not retain copies of any Confidential Information; and (c) the designating party discloses the name and ~~identify~~ <u>identity</u> of the potential or actual witness to all counsel in writing ~~at least 7 days before disclosing any Confidential information~~; and,

Section 11(b) is modified as follows:

> *Qualified Persons*: In the event that any party in good faith disagrees with the designation of a person as a Qualified Person or the disclosure of particular Classified Information to such person, the parties shall first try to resolve the dispute in good faith on an informal basis. <u>A party shall have 7 days from the date of the designation of a person as a Qualified Person to object to the person in writing.</u> If the dispute cannot be resolved, the objecting party shall have 21 days from the date of the designation or, in the event particular Classified Information is requested subsequent to the designation of the Qualified Person, 21 days from service of the request to move the court for an order denying the disputed person

(a) status as a Qualified Person; or (b) access to particular Classified Information. The objecting party shall demonstrate that disclosure to the disputed person would expose the objecting party to a substantial risk of harm. <u>Unless the parties mutually agree otherwise, no disclosure of Classified Information shall be made to a person designated as a Qualified Person for 7 days from the date of the designation. Upon a timely objection, no disclosure of Classified Information shall be made to the disputed person for 21 days from the date of the designation.</u> Upon the timely filing of ~~such~~ a motion <u>described in this subparagraph</u>, no disclosure of Classified Information shall be made to the disputed person unless the court enters an order preserving the designation.

The Court **APPROVES** West Connections' PPO but with the above Court-supplied modifications and with § 7(b) of Haulla's PPO (as further modified to correct the cross-referencing errors therein) in place of § 7(b) of West Connections' PPO.

### III.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the parties' Joint Motion for a Protective Order (ECF No. 28) is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that <u>**within seven days**</u> of this Memorandum Opinion and Order, the parties **SHALL JOINTLY FILE** their agreed confidentiality and protective order that is consistent with Part II.A of this Order.

**So ORDERED and SIGNED this  30th  day of August 2024.**

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**