UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| EL PASO DISPOSAL, LP et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CAUSE NO. 3:24-CV-97-KC |
| | § | |
| ECUBE LABS CO., | § | |
| | § | |
| *Defendant.* | § | |

---

**STIPULATED ELECTRONIC DISCOVERY PROTOCOL AND ORDER**

---

Plaintiffs El Paso Disposal, LP, Waste Connections of Texas, LLC, and Waste Connections Lone Star, Inc. (collectively, "*Waste Connections*") and Defendant Ecube Labs Co. d/b/a Haulla Service ("*Haulla*"), referred to individually each as a "*Party*" and collectively as the "*Parties*," respectfully file this Stipulated Electronic Discovery Protocol and Order (the "*ESI Protocol*") in the above-captioned action (the "*Action*"). The Parties stipulate to the terms of this ESI Protocol and agree they shall be read in conjunction with the terms of the final Confidentiality and Protective Order (the "*Protective Order*") to be entered by the Court in this Action.[1]

## I.    PURPOSE AND APPLICABILITY

A.    The object and purpose of this ESI Protocol is to define, clarify, and express the processes and procedures the Parties will follow with respect to their discovery obligations under the Federal Rules of Civil Procedure in the Action, and specifically with respect to production of documents and electronically-stored information ("*ESI*"). This ESI Protocol intends to make

---

[1] The Parties agree that any final Protective Order entered by the Court will be incorporated by reference to this ESI Protocol without any further action by the Parties.

discovery of ESI in this Action just, speedy, and inexpensive, and to promote (to the fullest extent possible) the resolution of disputes regarding the discovery of ESI without Court intervention.

B.      The Parties intend for this ESI Protocol to govern the gathering, review, and production of all documents, files, information, and ESI in this Action going forward from the time the Parties' counsel execute this ESI Protocol, including documents and information from subpoenaed nonparties. Nevertheless, the Parties intend for this ESI Protocol to supplement the Federal Rules of Civil Procedure; the Local Rules of the Western District of Texas ("*Civil Local Rules*"); and any other applicable state and federal statutes, orders, and rules. The Parties also recognize the limitations imposed on discovery by the Federal Rules of Civil Procedure, including the proportionality standard set forth under Rule 26(b)(1), still applies to the gathering, review, and production of ESI in this Action. Nothing in this ESI Protocol alters a Party's rights, obligations, or responsibilities under or impose additional burdens beyond those imposed by the applicable Federal Rules of Civil Procedure, Civil Local Rules, or any Court order.

## II.    PRESERVATION AND GATHERING OF ESI

A.      **Preservation Agreement.** As of the date of the execution of this ESI Protocol, but without waiving any rights, claims, or defenses regarding the Parties' conduct prior to execution of this ESI Protocol, the Parties agree to use reasonable steps to preserve potentially relevant materials and ESI ("PRM") including metadata identified in Section V(A)(3) in accordance with their obligations under the Federal Rules of Civil Procedure and other applicable laws.

B.      As used in this ESI Protocol, "reasonable steps" include i) identifying and agreeing on individuals reasonably likely to possess or control PRM; ii) notifying such individuals of their duties to preserve PRM under the terms of this Order; iii) identifying non-custodial sources of PRM; and iv) monitoring compliance with the preservation requirements of this ESI Protocol. The

Parties have and will continue to meet and confer regarding this ESI Protocol and the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this Action.  The Parties agree that by preserving documents or providing information about the Parties' preservation efforts, they are not conceding that such PRM is discoverable or relevant. The Parties specifically agree, without waiving any rights, claims, or defenses regarding the Parties' conduct prior to execution of this ESI Protocol, that as of the date of the execution of this ESI Protocol, PRM created or received on or after September 1, 2022, related to sales activities in Texas and New Mexico will be preserved.

C. **No obligation to preserve certain ESI.** The Parties agree the following data sources shall be deemed inaccessible and therefore not discoverable. No Party has any obligation to preserve the following data sources:

- Backup and archive data substantially duplicative of data more accessible elsewhere;

- Data remaining from systems no longer in use that is unintelligible on the systems in use and where there is no reasonable way to convert the data to a universal format such as CSV, XLSX, TXT, SQL, XML, etc.

- Data from personal information management applications (e.g., Microsoft Outlook or Google Mail email, calendars, contacts, and notes) sent to or from mobile or smartphone devices (e.g., iPhone, Android, Blackberry) and tablets (e.g., iPads, Surface Tablets, Galaxy Tablets, etc.)., provided that a copy of all such electronic data is saved elsewhere and accessible (such as on a server, laptop, desktop computer, or "cloud" storage).

D. **Safe Harbor.** The Parties agree to be bound by the "safe harbor" provision of Federal Rule of Civil Procedure 37(e) and the Advisory Committee Notes thereto. Consistent with such authorities, a Party shall not be in violation of this Order if, despite the Party's good faith and reasonable efforts to preserve ESI, such ESI is altered, lost, overwritten, or destroyed as a result of the Party's routine, good-faith, operation of its information or computer system(s). This includes i) good faith upgrading, loading, reprogramming, customizing, or migrating of software or

hardware; and (b) good faith inputting, accessing, updating, or modifying data in an accounting or other business databases maintained on an individual transaction, invoice, or purchase order basis in an accounting or other business database, provided the preservation requirements above are satisfied.

E.    **Gathering Noncustodial and Custodial ESI.** "*Noncustodial ESI*" includes information, files, and documents stored in locations not regarded or easily identifiable as belonging to any specific employee or individual, such as structured systems, databases, and shared storage locations (e.g., network/public folders and servers). "*Custodial ESI*" includes information, files, and documents belonging to or being controlled by a specific employee or individual, such as emails or documents/files stored in folders, drives, or computers controlled or possessed by the specific employee or individual. ESI that a Party knows is responsive and easily retrievable shall be gathered, reviewed, and produced without the application of search terms or other culling methodologies. The parties will meet and confer regarding the appropriateness of using search terms for culling Noncustodial ESI, including, for example, determining whether production of particular ESI or types of documents without the use of search terms is more appropriate than culling such documents with search terms.

## III.   REVIEWING ESI

A.    The Parties recognize each producing Party is best situated to preserve, search, and produce its own ESI. The Parties agree to upload the ESI they collect into an industry-standard e-discovery document review platform to review and identify responsive ESI prior to production in accordance with the following:

B.    **Search terms**. In an effort to minimize discovery disputes and efficiently proceed through discovery, and subject to the limitations imposed under Federal Rule of Civil

Procedure 26, the Parties agree to meet and confer about the search terms each producing Party intends to use to i) search its own ESI to identify PRM for production; and ii) filter out ESI that is not relevant or otherwise subject to production. A search term may consist of a word; consecutive string of characters; phrase; and/or combinations of words, characters, or phrases connected by simple Boolean Operators. Searches will not be case-sensitive. Subject to objections and the procedure for disputes outlined in section IX below, unless otherwise agreed in writing by the Parties, they agree each producing Party shall produce responsive, nonprivileged custodial ESI within 30 days from the producing Party's receipt of the search terms list. To the extent a producing Party wants to add additional, disputed search terms, the dispute resolution process set forth outlined in section IX applies. If search terms cannot be used to locate and retrieve certain ESI likely to contain discoverable information, the parties shall meet and confer to discuss the methodology to locate such ESI.

      1.    Search term result sheet. The Parties agree they may request, and the producing Party shall provide within 7 days of such request, a "*Search Term Result Sheet*." The Search Term Result Sheet is an automatically generated document identifying a) the total number of documents that contain a particular search term; b) the total number of documents, including those documents' families, that contain a particular search term; c)  the total number of unique hits per term (terms hitting on this particular term only.)

      C.    **Technology Assisted Review ("*TAR*").** As provided in this section IV, the Parties may rely upon industry-accepted TAR methods to prioritize and/or expedite the review and to identify PRM containing information that is privileged, subject to redaction, or designated as confidential under the Protective Order entered by the Court in this Action. However, a Party may not use TAR to remove documents from attorney review or otherwise withhold them from

production without prior written agreement of the other Party. Relying on such TAR methods shall not provide any basis for asserting any waiver of privilege to which the producing Party would otherwise be entitled. The Parties shall cooperate in the development of appropriate search methodology and criteria if a Party wishes to use TAR to make responsiveness and/or privilege determinations or otherwise cull ESI based on TAR results.

D.    **Presumptive privilege.** The Parties may identify privileged information and documents by conducting a privilege review, which may include a search for the names of attorneys or law firms.  By the earlier of 30 days before the close of discovery or within 30 days of substantial completion of a Party's production, a producing Party shall produce a privilege log identifying withheld ESI. Nothing shall preclude or limit a Party's ability or obligation to serve supplemental privilege logs if such Party supplements its production pursuant to Rule 26(e) and withholds additional documents due to privilege. If any privileged materials are not identified through the presumptively privileged searches, the production of such materials shall not constitute a waiver of, or estoppel as to, any claim of privilege as set out more fully in section VII herein.

## IV.    PRODUCTION FORMAT

A.    **General agreement for document productions.**

1.    The parties agree to meet and confer to agree upon a production schedule by the latter of a) 15 days after receipt of requests for production of documents; or b) 15 days after execution of this ESI Protocol.

2.    <u>Production format</u>. The Parties agree any and all of their respective productions will contain a cross-reference load file with a formatted metadata load file (.DAT) and an image formatted load file (.OPT). Productions of images in the load file will be produced using

single page Group IV TIFF black and white images (or JPG for color images), with at least 300 dots per inch (dpi).

3.　　Production delivery method. The Parties agree the preferred means of producing documents is via secure FTP or secure file share (e.g., Citrix Sharefile), with credential simultaneously provided to access the documents shared therein. However, documents may also be produced via encrypted flash drive, encrypted hard drive, or encrypted CD or DVD. In the event a Party needs to produce documents on physical media which cannot be protected before production, the Parties agree to negotiation in good faith as to the most secure way to effectuate such a production. Where and to the extent possible, and regardless of how a Party serves its production, the files produced should be combined into a compressed .zip file. The compressed file should be named so as to indicate the name of the producing Party, the date of the production, and the sequence of the production (e.g., "WC 20240101-001," "Haulla 20240101-001"). If the production is made using physical media, the media should be labeled to include: (a) text referencing that it was produced in the Action; and b) the Bates Numbers of the materials contained on the media.

4.　　Native format. At present, the Parties anticipate certain types of ESI either cannot or may not be readily converted to TIFF files, including a) Excel or other spreadsheet formats; b) computer slide presentations (e.g., Powerpoint); and c) non-trivial photographic or graphics images, video, or audio files (e.g., .jpg, .jpeg, .raw, .png, .dwg, .mp3, .mpeg, .avi, .dvi Files), source code, website artifacts, etc.. When native files are produced in lieu of a TIFF image, the producing Party shall produce a) a slip sheet with bearing a single identifying bates number and, if applicable, and confidentiality designation under the Protective Order; b) the document's metadata (including extracted text); and c) the file itself in native format. To the extent that a native

spreadsheet must be redacted, the Producing Party must redact the Native File or, if such redaction is not practicable, produce TIFF images with burned-in redactions in lieu of a Native File and TIFF placeholder image, provided the TIFF images are reasonably usable.  If redacting TIFF images, the Producing Party should make reasonable efforts to cause such images to legibly present all information in the spreadsheet. To the extent the redacted spreadsheet is not reasonably usable, the Receiving Party may request that it be produced as a redacted Native File by overwriting the data contained in a particular cell, row, column or tab with the word "REDACTED." These documents will be identified as redacted within the "REDACTED" field in the .DAT.

To the extent necessary and if good cause exists as discovery progresses, the Parties agree to meet and confer in good faith regarding additional files or file types that may need to be produced in native format or for which special accommodations for production need to be made.

5.     Metadata. Whether produced as TIFF files or in native format, the Parties agree that, to the extent available, the Parties agree they shall produce the following metadata for all documents and ESI: Nonetheless, nothing in this ESI Protocol shall require any Party to create or produce metadata that does not exist or is not reasonably or technically accessible. Metadata fields for documents that are partially redacted for privilege that do not contain privileged information should still be produced.

| Field Name | Field Description |
|---|---|
| **ALL RECORDS** | |
| Bates Start | Starting Bates of a record |
| Bates End | Ending Bates of a record |
| BegAttach | Bates of the first parent |
| EndAttach | Bates of the last attachment |
| Family Range | Bates of the first page of the parent to the last page of the last attachment |
| Producing Party | Company submitting documents |

| Field Name | Field Description |
|---|---|
| Custodian | Custodian(s)/Source(s) of the documents |
| AllCustodian | All custodians who were in possession of a de-duplicated document besides the individual identified in the Custodian field |
| Time Zone | Time zone from where document was collected |
| Page Count | Number of pages, if not a slipsheet for a native file |
| Doc Type | Email, Attach, Loose, Hard Copy |
| Confidentiality Status | As endorsed on document |
| Paper | Document scanned from hard copy in connection with the collection and production of documents in this matter |
| HasRedaction | Document includes partial or complete redactions |
| ProdVol | |
| **EMAILS** | |
| From | Author of the email or calendar item |
| To | Recipients of the email or calendar item |
| Cc | Names of individuals who were copied on email/calendar item |
| Bcc | Names of individuals who were blind copied on email/calendar item |
| Subject | Email or calendar subject |
| Date/Time Sent | Date/time email/calendar item was sent |
| Date/Time Received | Date/time email/calendar item was received |
| Folder Path | Email folder path (sample: Inbox\active) |
| **NATIVE FILES (LOOSE DOCS AND EMAIL ATTACHMENTS)** | |
| MD5 Hash | Hash value of native file (used for deduplication and file validation) |
| Date/Time Created | Date/time native file was created |
| Date/Time Modified | Date/time native file was last modified |
| Title | The text in the "Title" field of a native file |

| Field Name | Field Description |
|---|---|
| Created by | Author value extracted from metadata of a native file |
| Last Author | Last Saved by field value extracted from metadata of a native file |
| Original Filename | File name of the native file |
| Original Filepath | File path to native file as it existed in original environment |
| Native Link | Path to produced native file (XLS,XLSX) |
| File Size | File size in bytes |
| File Extension | File extension of original native file |
| Application | Application used to create the native file (Excel, Word, etc) |

Prior to the first production, the Parties will confirm the naming conventions for the metadata fields of their respective database systems to ensure all relevant metadata is in the desired format and field name variations are accounted for the in the respective databases. The Parties agree to continue to meet and confer about the production formats as necessary.

6.    Unique IDs/Bates labels. Each document, whether a TIFF image or native file, shall have i) a legible and unique page identifier (a "*Bates Number*") electronically stamped onto the image; and ii) a filename corresponding to the Bates number of that page.

a.    *Confidentiality stamp.* There shall be no other legend or stamp placed on the document image unless a document qualifies for Confidential or Attorneys' Eyes Only treatment pursuant to the terms of the Protective Order or has been redacted in accordance with applicable law or court order. In the case of confidential materials—as defined by the Protective Order, applicable law, or court order—the producing Party may electronically stamp onto the document's image.

b.    *Skipped or omitted Bates Numbers.* If a Bates Number or set of Bates Numbers is skipped in a production, the producing Party will provide written notice with such production identifying the omitted Bates range either at the time of production or as soon as practicable thereafter.

c. *Native files*. For ESI produced in its native format, the producing Party shall name the filename to correspond to the Bates Number of the slip sheet produced in such document or files place (as contemplated by section V(A)(2)), with the .OPT load file identifying the original name of the native document.

7. <u>OCR</u>. A commercially acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard copy documents. OCR text shall be provided as a single text file for each document, and the filename itself should match its respective image filename.

8. <u>Color</u>. Any documents containing color elements that are integral to better understanding a document (i.e., charts, graphs, photographs, diagrams, drawings, etc.) shall be scanned in color; all other documents need not be produced initially in color. However, if a requesting Party, in good faith, believes a document should be produced in color to understand the meaning, content, or context of such document request, upon receipt of a written request identifying the document(s) by Bates numbers, the producing Party shall produce such document in its original colors in the format set forth in section V(A)(1).

9. <u>Redactions</u>. To the extent any document is produced in redacted form, redactions shall be clearly indicated on the face of the produced document.  The Parties shall meet and confer when additional metadata is requested for a redacted document. And for the avoidance of doubt, nothing in section V limits i) the Parties' respective rights and ability to assert and maintain any privilege or protection for withholding or redacting information; or ii) the Producing Party's obligation, if any, to properly document and substantiate the assertion of privilege or protection on a privilege log.

B. **Production of documents originating as paper.** All physical-source (i.e., paper) document not previously maintained electronically shall be scanned and produced by each responding Party as described in section V(A), with production files showing all text and images

that would be visible to a user of the hard copy documents. Scanned documents should be physically unitized by the producing Party. Document unitization involves the assembly of individually scanned pages into documents. Physical Unitization utilizes actual objects—e.g., staples, paper clips, tabs, and folders—to determine what pages belong together as documents for archival and retrieval purposes. The Parties shall undertake reasonable efforts to ensure that, in scanning paper documents, a) multiple distinct documents are not merged into a single record; and b) single documents are not split into multiple records. For example, with a binder, folder, box, or similar container containing several separate documents behind numbered tabs, each physically-unitized document (whether behind a tab, separately stapled or secured, or otherwise separated from other papers in the container) should be scanned separately; however, the relationship among the unitized documents produced (if any) should be reflected in the proper coding of the beginning and ending document and attachment fields.

C. **Production of ESI.**

1. <u>Format</u>. ESI that can be readily converted to TIFF files (e.g., emails, Word, PDF, etc.) shall be produced in accordance with section V(A)(1). All other ESI shall be produced in native format as provided in section V(A)(2). After initial production in image file format is complete, a Party must demonstrate particularized need for production of ESI in its native format.

2. <u>De-Duplication and Threading</u>. A Party is only required to produce a single copy of a responsive document. Parties will globally de-duplicate stand-alone documents or entire document families using hash value matching (such as MD5 or SHA-1 values). Paper documents shall not be eliminated as duplicates of responsive ESI. Standalone documents will not be deduplicated against email attachments. The Parties reserve the right to use email threading to reduce the overall amount of ESI and documents produced and use email thread suppression to

avoid the review and production of information contained within an existing email thread in another document being reviewed and produced. Participants in lesser-included emails that otherwise would have been subject to review shall be listed in the most-inclusive email's "All Custodians" field included in the data load file. Where a prior email contains a unique attachment, that email and attachment shall be treated as a separate thread.

       3.    <u>Parent-Child Relationships</u>. Parent-child relationships (meaning the association between emails and attachments) will be preserved, and attachments to emails will not be eliminated from the parent email. Email attachments will be consecutively produced with the parent email, and families will be associated using attachment range metadata. Hyperlinked documents and modern attachments will not be treated as conventional attachments for the purpose of preserving a family relationship for production. The producing Party will consider reasonable requests, made in good faith, for the production of any such hyperlinked documents on a case-by-case basis and to the extent technically feasible and proportionate under Federal Rule of Civil Procedure 26(b).

       4.    <u>Foreign Language</u>**.** Foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the document's original language.

       5.    <u>Date and Time Format</u>. All ESI shall be produced using UTC time. If a time is not available, such as the estimated date for a coded document, then 12:00 am or 00:00 should be assigned (i.e., 12/21/1999 00:00). Date formats and delimiters (such as slashes and colons) must be consistent within any and across all fields. Notwithstanding the foregoing, no Party will be required to re-process any ESI gathered and subsequently ingested and uploaded to such Party's e-discovery document review platform prior to the date of this ESI Protocol to comply with section V(C)(5).

6.     <u>Replacement Productions</u>. If a Party produces a replacement copy of document(s), it shall promptly provide written notice to the opposing identifying, by Bates Number, the document(s) replaced.

7.     <u>Other ESI production agreements</u>.

a.     Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced even if part of families.

b.     The Parties will transmit all productions via secure file transfer (e.g., Citrix Sharefile, Kiteworks). All productions will be encrypted for transmittal.

c.     The Parties may identify as exception files those documents that contain little or no relevant content, and may exclude such files from processing and production (e.g., v-cards and calendar appointments).

d.     The Parties will make reasonable efforts to identify as exception files those documents that cannot be produced or imaged due to technical difficulties (such as corruption, unknown-password protection, digital rights management, proprietary software associated to the file, etc.).

e.     The Parties will ensure that documents produced in native form are decrypted (or that passwords are supplied).

D.     While this ESI Protocol is intended to address the majority of documents and data sources handled in this matter, there may be situations where the Parties come into contact with additional data sources—such as ESI from social media; collaboration tools (e.g., Slack, Microsoft Teams), mobile device apps; and modern cloud sources—not specifically addressed herein.  The Parties agree to meet and confer regarding any subsequently discovered data sources and the relevant production formats for such ESI.

**V.     THIRD PARTY DOCUMENTS**

A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and state that the Parties to the Action have requested that third-parties

produce documents in accordance with the specifications set forth herein.  The Issuing Party shall promptly notify the other Parties when it receives non-party productions and shall provide copies of such productions to the other parties in the format in which they were received from the third party within five days. In the event that the format of a third-party production does not conform with the specifications set forth herein, the Parties shall meet and confer regarding the format of production to the Receiving Parties. Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

## VI.    DISCOVERY DISPUTES

This section governs disputes concerning ESI sources, collections, searches, and production. This section is not intended to envision all possible disputes under this ESI Protocol. For disputes not discussed below, the Federal Rules of Civil Procedure and the Local Civil Rules govern. Regardless, all disputes concerning the scope and extent of discovery under this ESI Protocol, the Federal Rules of Civil Procedure, or the Local Civil Rules shall be heard and decided by the Court.

A.    Prior to presenting a discovery related dispute to the Court, the Parties shall make a reasonable and good faith attempt at an informal resolution of each issue intended to be presented to the Court. The Parties therefore agree to meet and confer before filing any discovery motion to satisfy any applicable meet and confer requirements.

B.    Subject to the Federal Rules of Civil Procedure, the Local Civil Rules, and all other applicable rules or court order, the Parties reserve the right to seek ESI from noncustodial and custodial ESI sources from which the opposing Party did not collect ESI (including those sources identified in section II(C)) upon showing a particularized need. If such a dispute arises and the

Parties cannot reach an agreement, the Party seeking discovery will bear the burden to file a motion to compel with the Court in accordance with the Federal Rules of Civil Procedure, the Local Civil Rules, and the governing Scheduling Order.

C.     The Parties reserve the right to challenge the scope of ESI collected from noncustodial and custodial ESI sources by the opposing Party, subject to the Federal Rules of Civil Procedure and all other applicable rules. If such a dispute arises and the Parties cannot reach an agreement, the Party seeking discovery will possess the burden to file a motion to compel with the Court in accordance with the Federal Rules of Civil Procedure, the Local Rules for the Western District of Texas, and the governing Scheduling Order.

D.     If a Party objects to a search term, then it must identify the objectionable term to the opposing Party within 21 days of receipt of the objectionable term. If the Parties cannot work out a reasonable limitation or solution to the objection, then the objectionable term shall be excluded from the production until the Court rules on the objection. The Party challenging the objection will possess the burden to file a motion to compel with the Court in accordance with the Federal Rules of Civil Procedure, the Local Civil Rules, and the governing Scheduling Order. This objection period does not constitute a waiver of a Party's right to object to the production of Custodial ESI at a later date for undue burden or another basis under the Federal Rules of Civil Procedure, the Local Civil Rules, or common law.

## VII.    DOCUMENTS PROTECTED FROM DISCOVERY

A.     **Non-waiver of privilege.** Nothing in this ESI Protocol shall serve as a waiver of a Party's right to any protection or privilege, including the attorney-client privilege, the work-product doctrine, and any other privilege or immunity that may be applicable. The Parties do not waive, and specifically reserve, any defenses or objections relating to any discovery or its use at

trial on any grounds, including *inter alia* those objections relating to production, discoverability, relevance, authenticity, admissibility, or confidentiality.

B.    **Privileged information.** For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations under the Protective Order entered into by and between the Parties in this Action.  If there is any inconsistency between this ESI Protocol and the Protective Order, the terms of the Protective Order shall govern. Consistent with the final entered Protective Order, this Order shall be interpreted to provide the maximum protection allowed by Federal Rules of Evidence 502(d) and 502(e).

C.    **Privilege Log.**

1.    The Producing Party will produce a privilege log identifying withheld documents by the earlier of i) 30 days after substantial completion of production of documents; or b) 30 days before the close of discovery. Nothing shall preclude or limit a Party's ability or obligation to serve supplemental privilege logs if such Party supplements its production pursuant to Rule 26(e) and withholds additional documents due to privilege.  The Parties will meet and confer in a good faith effort to establish a format for privilege logs and redaction consistent with the Federal Rules of Civil Procedure, which should include date, from/author(s), to/recipient(s), subject/title, file type, number of attachments, the contents of such a log, and consideration of whether the nature and volume of the privileged documents warrants category-by-category privilege logs, metadata log, or some combination of these approaches.

2.    The following documents presumptively need not be included on a privilege log:

a.    Communications exclusively between a Party and its outside counsel regarding this Action;

b.    Work product created by outside counsel, or by an agent of outside counsel other than a Party, testifying expert, or third-party vendor,

regarding this Action.

3.  Unless the privilege or protection is contained in redacted fields, redacted emails need not be logged so long as the objective metadata is not redacted, and the reason for the redaction, including the nature of the privilege asserted, is noted on the face of the document. For redacted documents where the subject matter is not decipherable because of the redactions, a description of the contents that is sufficient to understand the subject matter of the document may be requested. Non-email documents need not be logged if the reason for the redaction is noted on the face of the document in the redacted area.

D.  **Clawback Agreement.** Pursuant to Federal Rule of Evidence 502(d), the Parties agree, and this Court orders, that production of a document otherwise subject to a legally-recognized claim of privilege (the "*Protected Information*") shall not result in the waiver of any privilege, evidentiary protection, or other protection associated with such Protected Information as to the receiving Party or any third parties and shall not result in any waiver, including subject-matter waiver, of any kind in this Action and in any state or federal proceeding. For the avoidance of doubt, the parties wish to protect against the waiver of applicable privileges and work product protections to the fullest extent possible pursuant to the Federal Rule of Evidence 502(d). In the event any prior order or agreement between the parties and/or between the parties and a non-party concerning the disclosure of privileged and/or work product protected materials conflicts with any of the provisions of this Order, the provisions of this section 8 shall control. Nevertheless, nothing contained within this Clawback Agreement shall be deemed to waive any objection that any Party may wish to assert under applicable state or federal law.

If any Party discloses or produces Protected Information, the following shall apply:

1.  If, at any time prior to the trial of this action, a Party discovers that it has disclosed Protected Information, it shall, as soon as practicable after learning that such information

was produced, notify the receiving Party in writing of the disclosure and identify all such Protected Information.

2.      Upon notice of a claim of disclosure, the receiving Party shall not use, disclose, or disseminate such information in any way (including, but not limited to, using the information at depositions or trial), and must take reasonable steps to retrieve the Protected Information if it was disseminated by the receiving party prior to such notification. Within 14 days, the receiving Party shall return, destroy, sequester, or delete all copies of the Protected Information and provide a certification of counsel in writing that all such information has been returned, destroyed, sequestered, or deleted as follows:

a.      Locate each recall document in the document review/production database and return, sequester, or destroy the record from the database;

b.      If there is a native file link to the recalled document, return, sequester, or destroy the native file from the network path;

c.      If the database has an image load file, locate the document and, where possible, any additional copies' image(s) loaded into the viewing software and return, sequester, or destroy the image file(s) corresponding to the recalled documents and its additional copies and remove the line(s) corresponding to the document image(s) from the image load file;

d.      Locate and return, sequester, or destroy all other copies of the document, whether in electronic or hardcopy form. To the extent that copies of the document are contained on write-protected media, such as CDs or DVDs, these media shall be returned, sequestered, or destroyed and rendered unusable, with the exception of production media received from the recalling party, which shall be treated as described herein;

e.   If the document was produced in a write-protected format, the party seeking to recall the document shall, at its election, either i) provide a replacement copy of the relevant production from which the document has been removed, in which case the receiving party shall destroy and render unusable the original production media; or ii) allow the receiving party to retain the original production media, in which case the receiving party shall take steps to ensure that the recalled document will not be used; and

f.   Confirm that the recall of Protected Information under this procedure is complete in writing to the Party seeking to recall Protected Information.

3.   Within 7 days of the notification that such Protected Information has been returned, destroyed, sequestered, or deleted, the disclosing party shall produce a privilege log with respect to the Protected Information. Within 7 days after receiving the disclosing party's privilege log, a receiving Party may notify the disclosing Party in writing of an objection to a claim of privilege with respect to the Protected Information. Within 7 days of receiving such notification, the disclosing Party and the receiving Party shall meet and confer to resolve any disagreement. concerning the disclosing Party's privilege claim. The parties may stipulate to extend the time periods set forth in this paragraph.

4.   If, for any reason, the parties do not resolve their disagreement after conducting the mandatory meet and confer, the receiving party may request a conference with the Court or move the Court for an order compelling the production of the Protected Information; the motion shall not assert as a ground for entering such an order the fact or circumstances of the production, nor shall the Court enter an order compelling the production of the Protected Information based in any way on the fact that the information was produced. The disclosing Party (i.e., the one asserting the privilege claim) bears the burden of establishing the privileged or protected nature of any Protected Information.

## VIII.   MODIFICATION BY AGREEMENT

Any practice or procedure set forth herein may be modified or deviated from only by i) written agreement of the Parties; or ii) upon the motion of any Party or non-party for leave of Court for good cause shown, subject to approval by the Court.  Any person or entity—whether added or joined to this Action or a party to other actions subsequently consolidated into or coordinated with this Action after the date of this ESI Protocol—that seeks to deviate from the ESI Protocol set forth herein must obtain leave of Court to do so unless all Parties otherwise consent in writing.

**Dated:** September 4, 2024

**STIPULATED TO:**

By: */s/ Valerie R. Auger*

**KEMP SMITH LLP**
Ken Slavin
State Bar No. 18496100
ken.slavin@kempsmith.com
Valerie R. Auger
State Bar No. 24076251
valerie.auger@kempsmith.com
221 N. Kansas, Suite 1700
El Paso, Texas 79901
Telephone: (915) 533-4424
Facsimile: (915) 546-5360

**OF COUNSEL:**

**BAKER & HOSTETLER LLP**
Daniel J. Buzzetta
dbuzzetta@bakerlaw.com
45 Rockefeller Plaza
New York, New York 10111
Phone: (212) 589-4200
Admitted pro hac vice

John P. Hutchins
jhutchins@bakerlaw.com
1170 Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 459-0040
Admitted pro hac vice

Andrew E. Samuels
asamuels@bakerlaw.com
200 Civic Center Dr., Suite 1200
Columbus, Ohio 43215
Phone: (614) 228-1541

Alexandra L. Trujillo
Texas Bar No. 24110452
atrujillo@bakerlaw.com
Aidan K. Slavin
Texas Bar No. 24121129

By: */s/ Casey Minnes Carter*

**MUNSCH HARDT KOPF & HARR, P.C.**
Winston Huff
Texas Bar No. 24068745
whuff@munsch.com
J. Blake Glatstein
Texas Bar No. 24123295
bglatstein@munsch.com
500 North Akard Street, Suite 4000
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

Casey Minnes Carter
Texas Bar No. 24098116
ccarter@munsch.com
700 Milam Street, Suite 800
Houston, Texas 77002
Telephone: (713) 222-1470
Facsimile: (713) 222-1475

**ATTORNEYS FOR DEFENDANT**

aslavin@bakerlaw.com
811 Main Street, Suite 1100
Houston, Texas 77002
Phone: (713) 751-1600

**ATTORNEYS FOR PLAINTIFFS**

**IT IS SO ORDERED**.

**SIGNED this <u>6th</u> day of September 2024.**

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**