UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| EL PASO DISPOSAL, LP, WASTE CONNECTIONS OF TEXAS, LLC, *and* WASTE CONNECTIONS LONE STAR, INC.,| § § § § § | |
| *Plaintiffs*, | § | EP-24-CV-00097-KC |
| v. | § § | |
| ECUBE LABS CO. d/b/a HAULLA SERVICES, | § § § | |
| *Defendant*. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Presently before the Court is Plaintiffs' "Motion to Compel" (ECF No. 44). Therein, Plaintiffs move for an order compelling Defendant to answer certain interrogatories and produce documents responsive to certain requests for production. The Honorable District Judge Kathleen Cardone (the referring court) referred the instant motion to the undersigned Magistrate Judge.[1] For the reasons that follow, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

Plaintiffs El Paso Disposal, LP, Waste Connections of Texas, LLC, and Waste Connections Lone Star, Inc. (collectively, Waste Connections) are related companies;[2] they

---

[1] *See* 28 U.S.C. § 636(b)(1)(A) ("[A] judge may designate a magistrate judge to hear and determine any *pretrial matter* pending before the court, except [certain listed motions.]" (emphasis added)); Fed. R. Civ. P. 72(a) ("When a *pretrial matter not dispositive* of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must . . . , when appropriate, issue a written order stating the decision." (emphasis added)); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016–18 (5th Cir. Unit A 1981) ("[D]iscovery issues are by definition pretrial matters," and a magistrate judge has "the authority under 28 U.S.C. § 636(b)(1)(A) to enter non-dispositive discovery orders."); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) ("Matters concerning discovery generally are considered 'nondispositive' of the litigation.").

[2] Pls.' Disclosure Statement, ECF No. 7.

provide waste collection (or hauling), recycling, and disposal services to their customers.[3] According to Waste Connections, Defendant Ecube Labs Co. d/b/a/ Haulla Services (Haulla) is a "waste broker" in that it acts as a middleman between a customer and a Haulla-designated waste hauler, *i.e.*, waste collection company.[4]

On March 27, 2024, Waste Connections brought this lawsuit against Haulla. Waste Connections alleges that Haulla, through a network of foreign and domestic agents, illegally accessed Waste Connections' web-based customer portal, by creating fake profiles and impersonating its customers, and thereby, obtained Waste Connections' confidential customer information, such as "pricing data, frequency of service, invoice numbers, customer names, and contact information."[5] Using the so-obtained information, Waste Connections avers, Haulla contacted Waste Connections' customers, offered them prices below what they were paying for waste collection to Waste Connections, and induced them to breach their contracts with Waste Connections and to sign contracts with Haulla instead.[6]

West Connections asserts several federal and Texas state law claims: to wit, claims for violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq*.; the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.001 *et seq*.; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.; Title II of the Electronic Communications Privacy Act of 1986, popularly known as the Stored Communications Act, 18 U.S.C. § 2701 *et*

---

[3] Compl. at ¶¶ 10, 12, ECF No. 1.

[4] *Id.* at ¶ 12.

[5] *Id*. at ¶¶ 1, 16, 36–38, 47.

[6] *Id.* at ¶¶ 14, 20, 40.

*seq.*; the Texas Harmful Access by Computer Act, Tex. Civ. Prac. & Rem. Code § 143.001 *et seq.*; tortious interference with contract; and fraud.

On June 24, 2024, Waste Connections served its first set of interrogatories and requests for production; at the time, the discovery deadline was set for December 30, 2024. On July 24, 2024, Haulla served its objections, answers, and responses to Waste Connections' first set of discovery.[7] Over the course of the next month, counsel for the parties participated in three meet-and-confer calls to resolve their discovery disputes.[8] During their most recent meet-and-confer call, which took place on August 20, 2024, the parties reached agreement on some of their disputes, and Haulla agreed to amend its objections to reflect the agreements reached.[9] On August 28, 2024, Haulla served its first amended objections, answers, and responses to Waste Connections' discovery requests.[10] The parties' counsel met and conferred again on September 18, 2024, and Haulla agreed to amend certain objections in light of the parties' Stipulated Electronic Discovery Protocol and Order (ECF No. 36) and Agreed Confidentiality and Protective Order (ECF No. 37), which the Court entered on September 6, 2024.[11]

On September 19, 2024, Haulla served its second amended objections, answers, and responses to Waste Connections' discovery requests,[12] which, Waste Connections claims, remain

---

[7] Glatstein Aff. at ¶ 2, ECF No. 45-1; Pls.' Exs. A, B, ECF Nos. 44-2, 44-3.

[8] Glatstein Aff. at ¶ 3; Samuels Decl. at ¶ 2, ECF No. 44-1.

[9] Glatstein Aff. at ¶ 4; Pls.' Ex. I at 8–9, ECF No. 44-10. All pin citations to Plaintiffs' Exhibit I refer to the page number imprinted thereon by the Court's Case Management and Electronic Case Filing (CM/ECF) system.

[10] Glatstein Aff. at ¶ 4. Pls.' Exs. C, D, ECF Nos. 44-4, 44-5.

[11] Glatstein Aff. at ¶¶ 7–8; Samuels Decl. at ¶ 4.

[12] Pls.' Exs. E, F, ECF Nos. 44-6, 44-7.

deficient.[13]  On September 24, 2024, Waste Connections filed the instant motion to compel,[14]

and on the following day, the referring court referred the motion to the undersigned.  On October

2, 2024, Haulla filed its response to the motion,[15] and Waste Connections followed by filing a

reply on October 9, 2024.[16]  At the parties' urging, the referring court recently amended the

scheduling order, which sets the discovery deadline as April 29, 2025.[17]

## II.  STANDARD

Federal Rule of Civil Procedure 26(b) sets out the scope of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  "'[A] request for discovery should be considered relevant if there is any

possibility that the information sought may be relevant to the claim or defense of any party.'"

*Merrill v. Waffle House, Inc*., 227 F.R.D. 467, 470 (N.D. Tex. 2005) (quoting *Sheldon v.

Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001)).  Although broad, Rule 26(b) is not "a license to

engage in an unwieldy, burdensome, and speculative fishing expedition."  *Murphy v. Deloitte &

Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (5th Cir. 2010).  Information discoverable within

the scope of Rule 26(b) "need not be admissible in evidence."  Fed. R. Civ. P. 26(b)(1); *see also*

Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment ("The former provision for

---

[13] Samuels Decl. at ¶ 5.

[14] Pls.' Mot. to Compel, ECF No. 44.

[15] Def.'s Resp. to Pls.' Mot. to Compel [hereinafter Def.'s Resp.], ECF No. 45.

[16] Pls.' Reply in Supp. of Mot. to Compel [hereinafter, Pls.' Reply], ECF No. 46.

[17] First Am. Scheduling Order at 2, ECF No, 48.

discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' is also deleted.'").

A party seeking discovery may move to compel discovery if the responding party fails to answer an interrogatory submitted under Rule 33 or fails to produce documents requested under Rule 34.  Fed. R. Civ. P. 37(a)(3)(B).[18]  The court may decline to compel, and at its option, may limit the extent of discovery if the requested discovery is outside the scope permitted by Rule 26(b)(1).  Fed. R. Civ. P. 26(b)(2)(C)(iii); *Crosswhite v. Lexington Ins.*, 321 F. App'x 365, 368 (5th Cir. 2009); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly.").

On a motion to compel, unless the relevancy of a discovery request is facially clear, *see Josephs v. Harris Corp.*, 677 F.2d 985, 991–92 (3d Cir. 1982) (observing that "the information requested was patently relevant to the issue[s]" in that case), *cited with approval in McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990), the movant (*i.e.*, the party seeking discovery) must specifically articulate why the request is relevant to the claims or defenses in the case, *see Haas Outdoors, Inc. v. Dryshod Int'l, LLC*, No. 1:18-CV-596-RP, 2019 WL 13159727, at *1 (W.D. Tex. Sept. 17, 2019) ("[T]he burden lies with the moving party to show clearly that the information sought is relevant to the case.").  The non-movant (*i.e.*, the party resisting discovery), on the other hand, "'must show specifically how each [request] is not relevant or how each [request] is overly broad, burdensome or oppressive.'"  *Quarles*, 894 F.2d at 1485 (cleaned up) (quoting *Josephs*, 677 F.2d at 992).  Conclusory objections such as

---

[18] *See also* Fed. R. Civ. P. 33(a) (A party may serve on any other party written interrogatories which "may relate to any matter that may be inquired into under Rule 26(b)."); *id.* 34(a)(1)(A) (A party may serve on any other party "a request within the scope of Rule 26(b) . . . to produce . . . any designated documents or electronically stored information" in the other party's "possession, custody, or control.").

"overly broad, burdensome, oppressive, and irrelevant" are not adequate to lodge a valid

objection. *Id.*

## III. DISCUSSION

Before addressing the parties' specific disputes, the Court makes the following

observations. First, as mentioned, the Court approved and entered an agreed confidentiality

order, which governs discovery of "trade secrets, confidential or proprietary financial

information, operational data, business plans, and competitive analyses, personnel files, personal

information that is protected by law, and other sensitive information." Agreed Confidentiality &

Protective Order at 4, ECF No. 37; *see also* Mem. Op. & Order Regarding Agreed Protective

Order, ECF No. 31. Second, the Court approved and entered a stipulated electronic discovery

order, which, *inter alia*, calls for the parties to confer and agree on search terms to minimize the

cost of discovery of electronically stored information (ESI), *see* Stipulated E-Disc. Protocol &

Order at 4-5, ECF No. 36, and it appears that they did so, *see* Def.'s Resp. at 1 n.2. Third, during

their August 20, 2024 meet-and-confer call, the parties agreed to narrow the definitions of certain

terms used in Waste Connections' discovery requests, such as the phrase "current and former

customers," and further agreed to narrow the scope of certain discovery requests. Pls.' Ex. I at

8–9. In ruling on the parties' disputes presented in this motion, the Court intends to give effect

to those agreements. Fourth, Waste Connections defines the phrase "Relevant Time Period,"

which appears in multiple discovery requests, as the period between January 1, 2023, and the

present. *Id.* at 8.

Finally, the Court observes that for certain interrogatories and requests for production,

Haulla initially objected on multiple grounds when it served its responses to Waste Connections'

discovery requests. Pls.' Ex. E (Haulla's second amended objections and answers to Waste

Connections' first set of ROGs); *id.* Ex. F (Haulla's second amended objections and responses to

Waste Connections' first set of RFPs). However, in its response to Waste Connections' motion

to compel, Haulla does not assert some of those grounds that it initially asserted. The Court

therefore deems as abandoned or waived those ground(s) initially asserted but not asserted on

this motion. *See Duran v. Cnty. of Riverside*, No. 5:23-CV-00106-AB (JDE), 2024 WL

3468758, at *2 (C.D. Cal. July 3, 2024) ("Objections asserted in discovery responses but not

defended on a discovery motion may be deemed waived."); *Cotracom Commodity Trading Co. v.

Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999) ("When ruling upon a motion to compel,

the court . . . deems objections initially raised but not relied upon in response to the motion as

abandoned."); *accord Dolquist v. Heartland Presbytery*, 221 F.R.D. 564, 568 n.16 (D. Kan.

2004).[19]

## A.  The Court's Rulings on Specific Discovery Requests

At disputes are Waste Connections' Interrogatory (ROG) Nos. 1, 4, 5, 11, and 12, and

Request for Production (RFP) Nos. 2, 3, 10-12, 13, 15-16, 17, 19, 25, and 27-30. These ROGs

and RFPs seek information and documents generally relating to: (1) Haulla's corporate structures

and shareholders (RFPs 2, 3, and 12); (2) Haulla's employees and agents (ROG 1; RFPs 10 and

11, and 13); (3) Haulla's customers (ROGs 4, 5; RFPs 15 and 16); (4) Haulla's business

strategies and activities (RFPs 17 and 19); (5) Haulla's customer solicitation methods (RFPs 25

and 27-30); and (6) Haulla's document retention policies (ROGs 11 and 12). Further, when

---

[19] *See also, e.g.*, *Greer v. Cnty. of San Diego*, 634 F. Supp. 3d 911, 922 (S.D. Cal. 2022) (noting that the defendant's privilege logs list certain grounds for objecting to the requested documents but that the defendant, in its brief opposing the plaintiff's motion to compel, does not make argument supporting any of these grounds, and ruling "[t]hese objections, therefore, are moot and/or waived"); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 583 (N.D. Tex. 2018) ("Once responses, answers, and objections have been served subject to Rule 26(g), the party who has objected to a discovery request then must, in response to a Rule 37(a) motion to compel . . . , urge and argue in support of its objection to an interrogatory or request, and, if it does not, it waives the objection.").

Waste Connections filed the motion to compel, the parties disputed two other RFPs, namely, RFPs 7 and 22, but, as the parties' subsequent briefs indicate, in most respects, these two requests are no longer in dispute.  *Compare* Def.'s Resp. at 9, *with* Pls.' Reply at 5 n.1.  Below, the Court addresses the parties' disputes as to these ROGs and RFPs.[20]

### 1.  *Haulla's Corporate Structures and Shareholders (RFPs 2, 3, and 12)*

The following Requests seek documents generally relating to Haulla's corporate structure.

> RFP 2: All documents reflecting Your current corporate structure including, without limitation, all parents, subsidiaries and/or affiliates of Haulla, both in the United States and abroad.

> RFP 3: All documents identifying the shareholders and/or owners of Ecube Labs Co. and Haulla Services, including ownership interest for each.

> RFP 12: Documents (e.g., employee directories) that identify the names and personal and work phone numbers associated with every Haulla employee and/or agent working on behalf of Haulla.

Pls.' Ex. F at 4–5, 10.

Waste Connections argues that these Requests relate to Haulla's corporate structure and are typical background discovery.  Pls.' Mot. to Compel at 6 (citing *Burke v. Ability Ins*., 291 F.R.D. 343, 353 (D.S.D. 2013) (compelling production of documents relating to defendants' business or corporate structure such as articles of incorporation, corporate charters, by-laws, etc.)).  Waste Connections adds that this background discovery is critical here, given the lengths Haulla has gone to hide its misconduct by, for example, using fake names and foreign agents.  *Id*.

Haulla does not specifically address RFP 2 but mentions it only in a list of RFPs and ROGs for which it asks the Court to sustain its objections.  Def.'s Resp. at 4, 6.  The most the

---

[20] The Court has carefully considered all arguments raised by the parties in their motion briefs, even if some of those arguments are not expressly mentioned in this Memorandum Opinion and Order.

Court can decipher is that Haulla takes issue with the Request asking for "all" documents regarding Haulla's corporate structure in the U.S. and abroad (including Mexico, South Africa, and the Philippines). *See id*. at 4. According to Waste Connections' Complaint, Haulla was founded, and operates, in South Korea; and in the U.S., it is incorporated in Delaware and is registered to do business in Texas. Compl. at ¶ 6.

Regarding RFP 3, Haulla points out that as a corporation, its shareholders and owners are shielded from potential liability absent a theory or claim to pierce the corporate veil and Waste Connections' Complaint pleads no such theory or claim. *Id.* It contends that RFP 3 would require Haulla to examine all documents in its possession, custody, and control to determine if it contained information identifying any of Haulla's investors, drastically increasing the cost of discovery. *Id.*

The Court finds it appropriate to modify RFP 2 as: Documents <u>sufficient to</u> show Your current corporate structure including, without limitation, all parents, subsidiaries and/or affiliates of Haulla, both in the United States and abroad. It **GRANTS IN PART** West Connections' motion to compel as to RFP 2 as modified. *See Ecojet, Inc. v. Luraco, Inc*., No. SACV1600487AGKESX, 2016 WL 9000043, at *7–8 (C.D. Cal. Oct. 12, 2016) (compelling production of "DOCUMENTS sufficient to show your organizational structure and corporate structure, including parent corporations, subsidiaries, and affiliates").[21] The Court **DENIES** the motion as to RFPs 3 and 12 because they are not "proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1).

---

[21] *See also Galaxy Am., Inc. v. EZ Inflatables, Inc*., No. 2:19-CV-855-JES-MRM, 2021 WL 12092683, at *4 (M.D. Fla. Aug. 27, 2021) (rejecting the argument that the phrases "sufficient to show" and "sufficient to identify" as used in discovery requests are "ambiguous or problematic," reasoning that the court "has itself reformulated discovery requests in the past to require documents 'sufficient to show' or 'sufficient to identify' certain information in an effort to make the discovery request proportional and to reduce the burden of compliance").

## 2. *Haulla's Employees and Agents (ROG 1; RFPs 10, 11, and 12)*

The following ROG and RFPs seek information and documents generally relating to Haulla's employees, agents, representatives, and/or independent contractors in the Philippines, Mexico, and South Africa.

> ROG 1: Identify the names and addresses of any and all of Your agents and/or representatives in the Philippines, Mexico, or South Africa, during the Relevant Time Period.
>
> RFP 10: Documents (e.g., employee directories) that identify all Haulla employees and/or agents working on behalf of Haulla, located in the Philippines, South Africa, or Mexico, including full names, e-mail addresses, telephone numbers, position, and city of residence.
>
> RFP 11: For each employee and/or agent working on behalf of Haulla in the Philippines, South Africa, or Mexico identified above, all documents and communications relating to that individual's job duties and responsibilities with Haulla.

Pls.' Ex. E at 4; Pls.' Ex. F at 8–9.

Haulla argues that these requests are facially overbroad because nothing in West Connections' Complaint alleges any actor in Mexico or South Africa. Def.'s Resp. at 4. However, Haulla is agreeable to these interrogatory and requests if their scope is limited to Haulla's employees, agents, representatives, and/or independent contractors who are located in the Philippines and communicated with West Connections' "current or former customers." *Id*. at 4; Pls.' Ex. I at 3–4. It explains that to date, it has gathered approximately 3 million documents from approximately 175 custodians, but expanding the scope of discovery—from just Haulla's workers in the Philippines that contacted West Connections' customers to all of Haulla's workers in the Philippines, South Africa, and Mexico—would significantly increase the costs of discovery and drain Haulla's resources to gather data from additional 250 potential custodians

whose job duties and locations neither involve communications with West Connections'
customers nor sales-related activities.  Def.'s Resp. at 4; Glatstein Aff. at ¶ 9.

West Connections argues that its allegations cover Haulla's agents and representatives in
South Africa and Mexico because, it points out, its Complaint "describes Haulla's 'multi-faceted
scheme' involving 'a network of [Haulla's] agents, including in the Philippines *and elsewhere*,'"
Pls.' Mot. to Compel at 4 (emphasis in original) (quoting Compl. at ¶ 16), *see id.* at 6.  It argues
that it is entitled to investigate who participated in the scheme in the three countries and need not
rely on Haulla's "self-identification" of who conducted the conduct pleaded.  *Id*. at 4.

The Court observes that the Complaint alleges that West Connections retained
investigators who are experts in forensic analysis.  Compl. ¶ 19.  It alleges that these
investigators investigated email addresses, such as avriellepedroza@gmail.com (which appears
to be a personal as opposed to a business email address), obtained from phone calls to West
Connections' customer service from individuals impersonating West Connections' customers
and also investigated IP addresses used to create fake customer profiles at Waste Connections'
web-based customer portal.  *Id*. at ¶¶ 48–58.  Their investigations led them to Haulla's agents or
employees in the Philippines.  *Id*.

Given the surreptitious nature of these alleged activities, the Court is of the view that
West Connections should be allowed to investigate whether any actor in Mexico or South Africa
participated in the complained-of activities on behalf of Haulla.  Still, however, in some respects,
these RFPs are not proportional to the needs of the case, and therefore, the Court narrows their
scope.  For example, ROG 1 asks for "addresses" of Haulla's agents/representatives.  But it is
not clear if the interrogatory asks for their home or work addresses, and to be sure, the disclosure
of home addresses implicates their privacy interests.  More, it is not clear how home or work

addresses can assist West Connections' investigation.  Noteworthy, RFP 10 asks for "city of residence," not address.  The Court thinks ROG 1 should be limited to Haulla agents/representatives' city of residence and city of employment, *i.e.*, the city where they work on behalf of Haulla.  As for RFP 11, to the extent that multiple Haulla employees' and/or agents' job duties and responsibilities are the same (for example, for employees in Haulla's sales or marketing department), Haulla need only produce responsive documents and communications for one of those employees/agents, and for the remaining employees/agents, must indicate that their job duties and responsibilities are the same as the one for whom the production is made.

The Court therefore **GRANTS IN PART** West Connections' motion to compel as to ROG 1 and RFPs 10-11 with the following modifications.

> ROG 1: Identify the name, city of residence, and city of employment of any and all of Your agents and/or representatives in the Philippines, Mexico, or South Africa, during the Relevant Time Period.

> RFP 10: Documents (e.g., employee directories) <u>sufficient to</u> identify all Haulla employees and/or agents working on behalf of Haulla, located in the Philippines, South Africa, or Mexico, including full names, e-mail addresses, telephone numbers, position, and city of residence.

> RFP 11: For each employee and/or agent working on behalf of Haulla in the Philippines, South Africa, or Mexico identified above, documents and communications <u>sufficient to show</u> that individual's job duties and responsibilities with Haulla.  As discussed above, for multiple employees and/or agents with the same job duties and responsibilities, Haulla need only produce documents and communications for one of them.

### 3. *Haulla's Customers (ROGs 4 and 5; RFPs 13, 15, and 16)*

The following ROGs and RFPs seek information and documents generally relating to Haulla's customers.

> ROG 4: Identify all new customers of Haulla during the Relevant Time Period.

> ROG 5: Identify the revenue You derived from the customers identified in the preceding Interrogatory.

> RFP 13: All documents and communications of any kind, whether internal (between Your employees, agents and/or representatives) or external with a third party, regarding or reflecting new customer agreements with Haulla during the Relevant Time Period.
>
> RFP 15: A list of all current Haulla customers located in Texas.
>
> RFP 16: A list of customers who signed a contract for services with Haulla during the Relevant Time Period.

Pls.' Ex. E at 6–7; Pls.' Ex. F at 10–13.

West Connections argues that these ROGs and RFPs seek information and documents that are relevant to determine which Waste Connections customers Haulla solicited and to ascertain Waste Connections' damages. Pls.' Mot. to Compel at 4, 7.

Haulla asks that the terms "customers," "new customers" and "new customer agreements" be limited to Haulla's customers in Texas and New Mexico, where Waste Connections operates. Def.'s Resp. at 4–5. During the August 20, 2024 meet-and-confer call, Waste Connections confirmed that its "customers are located in Texas and New Mexico *only*." Pls.' Ex. I at 8 (emphasis added). The intent of these discovery requests is for West Connections to determine which of its current or former customers Haulla solicited. However, elsewhere in its brief, Haulla states that it cannot swear it knows all of West Connections' former and current customers. Resp. at 5 n.4. So, the Court finds it appropriate to limit the phrases "customers," "new customers" and "new customer agreements" as used in ROGs 4 and 5 and RFPs 13 and 16 to Haulla's customers and new customers in Texas and New Mexico during the Relevant Time Period.

Regarding RFP 13, Haulla seems to also request that the phrase "Your employees, agents and/or representatives" be limited to Haulla's employees, agents and/or representatives who are located in the Philippines and communicated with West Connections' "current or former

customers." *Id*. at 4.   The Court declines that request in part because RFP 13 is otherwise

narrowed to instances where a "new customer agreement" was in fact materialized.  It is worth

noting that RFP 22, discussed *infra*, also uses the same phrase, and Haulla agreed to produce

documents responsive to that Request.

      The Court *sua sponte* modifies RFP 15 as: A list of all current Haulla customers located

in Texas <u>during the Relevant Time Period</u>.

      With these limitations and modifications, the Court **GRANTS IN PART** West

Connections' motion as to ROGs 4 and 5 and RFPs 13, 15, and 16.

### 4.  Haulla's Business Strategies and Activities (RFPs 17 and 19)

      The following RFPs seek documents generally relating to Haulla's business strategies

and activities.

> RFP 17: All documents and communications of any kind, whether internal
> (between Your employees, agents and/or representatives) or external with a third
> party, regarding Haulla's business model, strategies, or plans.  Specifically, this
> request seeks documents and communications relating to Haulla's targeted
> customer base, business development and service strategies, and hiring practices.

> RFP 19: All documents and communications of any kind, whether internal
> (between Your employees, agents and/or representatives) or external with a third
> party, regarding Haulla's payment of liquidated damages for a customer who signs
> a contract with Haulla.

Pls.' Ex. F at 12–13.

      West Connections points out that these RFPs seek documents that directly correspond to

its allegations in the Complaint.  Pls.' Mot. to Compel at 8 (citing Compl. at ¶¶ 13, 14, 49, 55).

The Complaint alleges, among others, that Haulla's business model is designed to disrupt

relationships between commercial customers and waste collection companies with which they

contract and that Haulla uses "cold calling" and offers to pay "liquidated damages" to induce

such customers, including West Connections' customers, to breach their contracts with their existing waste collection service providers.  Compl. ¶¶ 13, 14, 49, 55.

Haulla is agreeable to RFP 17 if it is limited to documents and communications relating to Haulla's targeted customer base and business development and service strategies "to compete against Plaintiffs or compete in the Texas and New Mexico markets."  Pls.' Ex. I at 4.  However, in its response to the motion, Haulla seems to further narrow the scope as, "to compete against Plaintiffs in Texas."  Def.'s Resp. at 7.  Given that West Connections' customers are in Texas and New Mexico only, the Court modifies the scope of RFP 17 to: documents and communications relating to Haulla's targeted customer base, business development and service strategies, and hiring practices in Texas and New Mexico.  The Court **GRANTS IN PART** West Connections' motion to compel as to RFP 17 as modified.

Haulla seems to argue that RFP 19's phrase "a customer who signs a contract with Haulla" be limited to Haulla's customers in Texas and New Mexico, where West Connections operates.  Def.'s Resp. at 4–5.  The Court agrees.  The Court **GRANTS IN PART** West Connections' motion to compel as to RFP 19 as limited.

### 5.  *Haulla's Customer Solicitation Methods (RFPs 25 and 27-30)*

West Connections argues that the following RFPs seek documents about Haulla's methods for soliciting customers.  Pls.' Mot. to Compel at 8.

> RFP 25: All documents sufficient to identify all email addresses, cell phone numbers, Apps, and social media accounts You have used to communicate with employees or agents regarding Waste Connections.

> RFP 27: Phone records—including but not limited to call logs that identify the originator, receiver, phone numbers, and duration of call—relating to Your employees' and/or agents' solicitation of customers during the Relevant Time Period.

RFP 28: All contracts and/or agreements with telecommunication providers used by You.

RFP 29: All documents and communications relating to Your solicitation of business from "Michele," a customer of Plaintiff Waste Connections Lone Star, Inc., in May 2023, including all communications purportedly made on her behalf to Waste Connections representatives.

RFP 30: All documents and communications relating to Your solicitation of business from "Ron," a customer of Plaintiff Waste Connections Lone Star, Inc., during the Relevant Time Period, including all communications purportedly made on his behalf to Waste Connections representatives.

Pls.' Ex. F at 16–18.

The Court **GRANTS** West Connections' motion to compel as to RFP 25. *See All Web Leads, Inc. v. D'Amico*, No. 18-80571, 2018 WL 6522167, at *4 (S.D. Fla. Nov. 9, 2018) (ordering defendant to produce "all documents referring or relating to solicitation of [p]laintiff's past, current, or prospective customers").

Regarding RFP 27, Haulla points out that while West Connections argues that this RFP seeks documents about Haulla's methods for soliciting customers, it requests nothing of the sort. Def.'s Resp. at 8. Haulla appears to also argue that RFP 27 is cumulative of RFP 22 (discussed *infra*) which seeks communications regarding Plaintiffs' customer names, rates, and services and Haulla already agrees to produce them. *Id.* at 8–9. West Connections replies that Haulla admits that it contacted more than 3,000 of Waste Connections' customers and does not dispute the relevance of phone records relating to those contacts. Pls.' Reply at 4. It appears that the intent of this Request is to discover which Waste Connections' customers Haulla solicited by phone (as that may be revealed by such customers' phone numbers)—regardless of whether Haulla utilized, in such solicitations, "any Waste Connections information, including but not limited to, customer name, rate, service, or other proprietary information" as recited in RFP 22. Pls.' Ex. F at 15.

- 16 -

The Court finds it appropriate to modify RFP 27's "solicitation of customers" to "solicitation of current or former West Connections customers," and in so modifying, the Court adopts the parties' agreed-upon meaning of the phrase "current or former West Connections customers." Specifically, during their August 20, 2024 meet-and-confer call, the parties agreed that the phrase "current or former West Connections customers" means: current and former customers of West Connections that are or were: (i) known to Haulla at any point in time and (ii) in Texas or New Mexico," provided that "former customers" do not include customers who contracted with a third party after contracting with Waste Connections and before contracting with Haulla. Pls.' Ex. I at 3. With this modification, the Court **GRANTS IN PART** West Connections' motion as to RFP 27.

The Court **DENIES** the motion as to RFP 28 because it is not satisfied with West Connections' explanations about why and how Haulla's contracts and agreements with telecommunication providers are relevant to claims and defenses in this case. *See* Pls.' Reply at 4–5.

Regarding RFPs 29 and 30, West Connections explains that the RFPs seek documents and communications about Haulla's solicitation of West Connections' customers named "Michele" and "Ron." Pls.' Reply at 5. According to the Complaint, West Connections has/had customers by those names, and Haulla's agents contacted them to solicit their business and further contacted, by impersonating them, West Connections' customer service to obtain information about them. Compl. at ¶¶ 48–51. As Haulla points out, during the parties' meet-and-confer call, West Connections agreed to provide "more specific identification of the customers," Pls.' Ex. I at 9, but West Connections has since refused to provide it, Glatstein Aff. at ¶ 13. Haulla argues that without additional identifying information, these RFPs are facially

overbroad because responding to them would require Haulla to review every document with a "Michele" or "Ron" and to investigate whether that "Ron" or "Michele" is/was West Connections' current or former customer. Def.'s Resp. at 8. Haulla asks for their "full name, customer name, or telephone number." *Id.* The Court finds that Haulla's request is reasonable. Therefore, the Court **GRANTS IN PART** West Connections' motion as to RFPs 29 and 30, provided that West Connections must promptly provide to Haulla the full name, customer name, or telephone number for "Michele" and "Ron."

### 6. *Haulla's Document Retention Policies (ROGs 11 and 12)*

The following ROGs seek documents generally relating to Haulla's document retention policies.

> ROG 11: Describe how you keep and maintain Your customer information and data and employee information, including Your data retention policy, the software and hardware used to facilitate transmission and storage of the information, and the location of Your servers.

> ROG 12: Describe with particularity Your efforts to preserve evidence relating to this Lawsuit, including what actions were taken, when they were taken, and what individuals were involved in the effort.

Pls.' Ex. E at 9–10.

Haulla's objects that ROGs 11 and 12 are premature without any evidence of spoliation or failure to preserve evidence. Pls.' Ex. I at 4; *see also* Def.'s Resp. at 7–8 (arguing that there has been no allegation that Haulla failed to satisfy their discovery obligations). West Connections cites authority that says, "'[d]iscovery of document retention and disposition policies is not contingent upon a claim of spoliation or proof of discovery abuses.'" *Edwards v. McDermott Int'l, Inc.*, No. 4:18-CV-04330, 2021 WL 12296466, at *2 (S.D. Tex. Dec. 22, 2021) (quoting *Burd v. Ford Motor Co.*, No. 3:13-CV-20976, 2015 WL 4137915, at *9 (S.D.W. Va. July 8, 2015)). That view is shared by "the majority of courts across the country." *Id.*

(collecting illustrative cases). And in *McDermott*, the Court concluded that "discovery of ESI retention and disposition policies is fair game, especially when, as here, the burden . . . to produce such policies is minimal." *Id.* The Court agrees with this view and therefore, **GRANTS** West Connections' motion to compel as to ROGs 11 and 12.

### 7.   The Remaining Requests (RFPs 7 and 22)

As mentioned previously, the parties' briefs filed subsequent to Waste Connections' filing of its motion to compel suggest that in most respects, RFPs 7 and 22 are no longer in dispute, but there appear to be some loose ends.

> RFP 7: All documents and communications relating to Your use of HubSpot for Customer Relationship Management for current or former Waste Connections customers during the Relevant Time Period.

> RFP 22: All documents and communications of any kind, whether internal (between Your employees, agents and/or representatives) or external with a third party, which discloses or utilizes any Waste Connections information, including but not limited to, customer name, rate, service, or other proprietary information.

Pls.' Ex. F at 7, 15.

Regarding RFP 7, West Connections argues that the Request is relevant to Haulla's solicitation of its customers and to Waste Connections' damages. Pls.' Mot. to Compel at 6–7. The parties seem to dispute only about the scope of the phrase "use of HubSpot." They have not provided the Court with any technical background about "HubSpot." According to West Connections' allegations, "HubSpot" is "a free Customer Relationship Management ('CRM') software platform." Compl. at ¶ 49. Haulla explains:

> In Haulla's customer relationship management database, HubSpot, Haulla's representatives are trained to note the incumbent service provider and collects copies of their invoices from prospective clients. Haulla also trains its workers to use GoogleMaps to locate a prospective customer's dumpsters to identify incumbent providers, which they often (but are not required) to input in HubSpot.

Glatstein Aff. at ¶ 10.  Haulla proposes that the phrase "use of HubSpot" be limited such that

RFP 7 calls for the production of "documents and communications Haulla *stores in* its Customer

Relationship Management software HubSpot."  Pls.' Ex. I at 4 (emphasis added); *see also* Def.'s

Resp. at 9.  In other words, under Haulla's proposal, it appears, Haulla need not produce any

responsive documents and communications that relate to Haulla's "use of HubSpot" but are *not*

*stored in* HubSpot.  In a footnote, West Connections opposes this limitation without further

elaboration.  Pls.' Reply at 5 n.1 (arguing "Haulla must [produce] without rewriting the term 'use

of HubSpot'").

It is not clear to the Court the degree of burden associated with the production of

responsive documents and communications that are not stored in HubSpot.  On the other hand,

the fact that West Connections makes its opposing argument in a footnote and dedicates only two

sentences suggests that West Connections does not seriously oppose the limitation proposed by

Haulla and that the limitation is "proportional to the needs of the case."  *See* Fed. R. Civ. P.

26(b)(1); *cf., e.g.*, *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 60 n.17 (1st Cir. 1999)

("We have repeatedly held that arguments raised only in a footnote or in a perfunctory manner

are waived." (collecting cases)); *United Nat. Foods, Inc. v. Nat'l Lab. Rels. Bd.*, 66 F.4th 536,

543 n.9 (5th Cir. 2023) (concluding an argument raised in a footnote but not pressed and

adequately briefed is waived), *judgment vacated on other grounds*, 144 S. Ct. 2708 (2024).[22]

Accordingly, the Court approves Haulla's proposed limitation of the phrase "use of HubSpot"

and therefore, **GRANTS IN PART** West Connections' motion as to RFP 7 with that limitation.

---

[22] *Cf. also Huntsman Petrochemical LLC v. Env't Prot. Agency*, 114 F.4th 727, 735 n.1 (D.C. Cir. 2024) ("We do not consider these arguments because a footnote is no place to make a substantive legal argument on appeal." (cleaned up)).

Regarding RFP 22, Haulla proposes to limit the scope of RFP 22 to documents and communications that disclose or utilize West Connections' "customer names, rates, services, or information known by Haulla as Plaintiffs' proprietary information."  Pls.' Ex. I at 4; *see also* Def.'s Resp. at 9.  As written, RFP 22 asks for "any Waste Connections information, *including but not limited to*, customer name, rate, service, or *other proprietary information*."  Pls.' Ex. I at 15 (emphasis added).  In its reply brief, and again in a footnote, West Connections says only that Haulla must produce all documents "without Haulla's artificial limitations," Pls.' Reply at 5 n.1, but West Connections fails to elaborate on this statement.  The Court **GRANTS IN PART** West Connections' motion as to RFP 22 with the narrowing of its scope as proposed by Haulla.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiffs' Motion to Compel (ECF No. 44) is **GRANTED IN PART and DENIED IN PART**.  The Court's specific ruling as to each of the disputed interrogations and requests for production is set forth above in Part III(A) of this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that by **December 16, 2024**, and consistent with this Memorandum Opinion and Order, Defendant **SHALL ANSWER AND PRODUCE** documents in response to Interrogatory Nos. 1, 4, 5, 11, and 12, and Request for Production Nos. 2, 3, 7, 10-12, 13, 15-16, 17, 19, 22, 25, and 27-30.

**IT IS MOREOVER ORDERED** that by **December 22, 2024**, Plaintiffs **SHALL PROVIDE** to Defendant the full name, customer name, or telephone number for "Michele" and "Ron", and if Plaintiffs fail to do so, RFPs 29 and 30 **SHALL BE DEEMED ABANDONED**.

**IT IS FINALLY ORDERED** that Plaintiffs' request for expenses, including attorney's fees, incurred in connection with this motion is **DENIED**.[23]

**So ORDERED and SIGNED this _15th_ day of November 2024.**

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

---

[23] *See* Fed. R. Civ. P. 37(a)(5)(C) ("If the motion is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."); 8B C. Wright & A. Miller, Fed. Prac. & Proc. § 2288 (3d ed. June 2024 update) ("If the motion is granted in part and denied in part the court is given more discretion under Rule 37(a)(5)."); *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 951 (D.C. Cir. 2017) (finding no abuse of discretion where the lower court refused to award fees for a partially successful motion to compel); *Flores v. Lowes Home Centers, L.L.C.*, No. EP-22-CV-00296-KC, 2023 WL 4409850, at *1 (W.D. Tex. July 7, 2023) ("[P]artial success on a motion to compel does not entitle its movant to . . . expenses and fees the movant incurred in making the motion.").