UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

EL PASO DISPOSAL, LP, WASTE          §
CONNECTIONS OF TEXAS, LLC,           §
WASTE CONNECTIONS LONE STAR,         §
INC., *and* WASTE CONNECTIONS US,    §
INC.,                                §
                                     §          EP-24-CV-00097-KC
            *Plaintiffs*,            §
v.                                   §
                                     §
ECUBE LABS CO. d/b/a HAULLA          §
SERVICES,                            §
                                     §
            *Defendant*.             §

## MEMORANDUM ORDER

Presently before the Court is Plaintiffs El Paso Disposal, LP, Waste Connections of

Texas, LLC, Waste Connections Lone Star, Inc., and Waste Connections US, Inc.'s (collectively,

Waste Connections) "Motion to Compel" (ECF No. 102) discovery from Defendant Ecube Labs

Co. d/b/a/ Haulla Services (Haulla).  For the reasons that follow, the motion is DENIED AS

WITHDRAWN IN PART and DENIED IN PART.[1]

### I.    DISCUSSION

Previously, in November 2024, this Court ruled on Waste Connections' prior motion to

compel (ECF No. 44); to avoid any confusion, the Court will refer to the prior motion as the first

motion to compel.  At issue in that motion were certain interrogatories (ROGs) and requests for

productions (RFPs) in Waste Connections' First Set of Interrogatories (ECF No. 44-8) and First

Set of Requests for Production (ECF No. 44-9) which were served in June 2024.  *See* Mem. Op.

& Order at 7 (listing ROG Nos. 1, 4, 5, 11, and 12, and RFP Nos. 2, 3, 10-12, 13, 15-16, 17, 19,

---

[1] Waste Connections also filed a sealed counterpart to the motion without any redaction (ECF No. 104).  The Court's ruling on the motion to compel (ECF No. 102) equally applies to the sealed motion.

25, and 27-30 as being in dispute), ECF No. 51, *published as El Paso Disposal, LP v. Ecube Labs Co.*, No. EP-24-CV-00097-KC, 2024 WL 4806498 (W.D. Tex. Nov. 15, 2024).  Then, the parties primarily disputed the scope of the ROGs and RFPs at issue.

This time, on the instant motion to compel, which was filed on April 30, 2025, Waste Connections disputes whether Haulla produced any or all documents that are responsive to RFP Nos. 1, 4, 7, 10, 11, 13, 17, 19, 21, 22, and 23 (most of these were at issue in the first motion to compel) in Waste Connections' First Set of Requests for Production and RFP Nos. 33 and 34 in its Second Set of Requests for Production, which, it seems, Waste Connections served sometime after the Court decided the first motion to compel.  Pls.' Mot. to Compel at i [hereinafter Pls.' MTC], ECF No. 102; *see also id.*, Ex. Q, ECF No. 102-18.

On this motion, based on certain documents produced by Haulla thus far, Waste Connections argues that Haulla failed to produce certain categories of documents that Waste Connections claims are responsive to one or more RFPs at issue in this motion.  They are: (1) Haulla's agreements with its international sales personnel; (2) Noh and Oh documents; (3) Discord communications; and (4) HubSpot documents.  After the parties' briefing was completed, with Haulla filing a sur-reply on May 19, 2025,[2] the Court ordered the parties to meet and confer on the motion and submit a joint statement.  Interim Order at 6, ECF No. 122.  The parties met and conferred on June 5 and 9, and they filed their joint statement (ECF No. 124) on June 13, 2025.

As reflected in the joint statement, the parties resolved most, though not all, of their disputes.  Below, the Court addresses each category of documents.  But first, the Court addresses

---

[2] *See* Def.'s Resp. to Pls.' MTC [hereinafter, Def.'s Resp.], ECF No. 106; Pls.' First Am. Reply in Supp. of MTC [hereinafter, Pls.' Reply], ECF No. 111; Def.'s Sur-Reply to Pls.' MTC [hereinafter, Def.'s Sur-Reply] (on May 19, 2025, Haulla filed a motion for leave to file the sur-reply, and the Court granted leave on May 28, 2025), ECF No. 120.

Waste Connections' arguments about the geographical limitation of certain discovery requests which it raised, for the first time, in its reply brief.

## A.  Geographical Limitations

In its reply brief, Waste Connections argued that Haulla incorrectly contends that the parties agreed, or the Court ordered, that the geographical scope of "all" discovery is limited to Texas and New Mexico.  Pls.' Reply at 5 (citing Def.'s Resp. at 2–3, 8); *cf.* Def.'s Sur-reply at 3 ("Plaintiffs argue for the first time—apparently teeing up a future discovery fight not at issue in their Motion or Defendant's Response—that they are entitled to relief for discovery related to customers outside of Texas and New Mexico."); J.S. at 8 ("Haulla did not limit the geographical scope of *all* of its discovery efforts." (emphasis in original) (statement by Haulla)), ECF No. 124.

In the joint statement, Haulla maintains that the geographical scope of "customer-related" discovery is limited to Texas and New Mexico, and that the relevant RFPs at issue in the instant motion to compel are RFP Nos. 7, 21, and 22, which, according to Haulla, seek customer-related information.  J.S. at 7.  Waste Connections states that the parties agree that this limitation applies to customer-related information and does not apply to discovery requests that relate to Haulla's business generally, such as its sales training, sales metrics, and instructions to alleged independent contractors/employees.  *Id.* at 1.  With this understanding, Waste Connections continues, the issues raised in the motion to compel relating to geographic scope can be considered moot.  *Id.* at 1–2.  Haulla, though, says that it did not limit the geographical scope of all of its discovery efforts, but only those concerning the customer-related discovery requests; it adds that it collected, reviewed and produced materials concerning its sales training, sales metrics, and instructions to independent contractors without any geographical scope limitations. *Id.* at 8.

The Court leaves the parties' agreement on this supposed dispute to their own devices. However, below, the Court remarks about two potential suggestions (perhaps innuendos) from Waste Connections.

A recap of the Court's prior order is helpful.  In ruling on Waste Connections' first motion to compel, which was issued more than seven months ago, the Court limited the geographical scope of ROG Nos. 4 and 5, and RFP Nos. 13, 16, 17, 19, and 27 to Texas and New Mexico.  Mem. Op & Order at 13, 15, 17.  The Court did so based upon two statements that Waste Connections' counsel made in her email to Haulla's counsel on August 22, 2024, memorializing the parties' meet-and-confer efforts.  The first statement was: "With regards to Haulla's repeated definitional objections, the parties *agree* as follows: . . . Plaintiffs' 'current or former customers' are current and former customers of Plaintiffs that are or were[] . . . in Texas or New Mexico."  Pls.' First Mot. to Compel [hereinafter, Pls.' First MTC], Ex. I at 8[3] (emphasis added), ECF No. 44-10.  And in its prior order, the Court noted that "the parties agreed to narrow the definition[] of . . . the phrase 'current and former customers'" and stated that it intended to give effect to that agreement. Mem. Op & Order at 6.  The second was Waste Connections' representation that "based on a diligent investigation, Plaintiffs' customers are located in Texas and New Mexico only."  Pls.' First MTC, Ex. I at 8; *see also* Mem. Op & Order at 13 (relying on the representation); *id.* at 15 (same).

Back to the two potential suggestions.  First, to the extent that Waste Connections now argues that the parties did not agree on the definition of "current or former customers" as set forth in the August 22 email, the Court disagrees.  *Compare* Pls.' First MTC, Ex. I at 7 ("I have

_____

[3] All pin citations to this and other exhibits refer to the page numbers imprinted thereon by the Court's Case Management and Electronic Case Filing system.

reviewed *items 1-9*, and I believe that is as agreed, except" for the definition of "Customer Portal" in one respect.  (emphasis added) (email dated Aug. 24, 2024, from Haulla's counsel to Waste Connections' counsel)), *with id.* at 8 (stating in Item 1, "With regards to Haulla's repeated definitional objections, the parties agree as follows: . . ." and then listing the definitions of, among other terms and phrases, Plaintiffs' "current or former customers" (email dated Aug. 22, 2024, from Waste Connections' counsel  to Haulla's counsel)).

Second, insofar as Waste Connections suggests that because of its new allegations in its amended complaint, J.S. at 5 (citing First Am. Compl. at ¶ 11, ECF No. 68), the Court should revisit its prior order or Waste Connections should not be held to its prior agreed-upon definition or representation—a reply brief, much less a supplemental brief that the Court ordered for limited purposes, is not the proper vehicle for raising such issues, *see Veasey v. Abbott*, 830 F.3d 216, 258 n.55 (5th Cir. 2016) (en banc) ("We generally do not consider arguments raised for the first time in a reply brief.").  Nor is a motion to compel, for that matter.  *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03MDL1570GBDSN, 2023 WL 1797629, at *12 (S.D.N.Y. Feb. 7, 2023) (A party may not "use [a] motion to compel as a vehicle for relitigating old issues and for otherwise taking a [second] bite at the apple." (internal quotes omitted)).

## B.  Agreements with International Sales Personnel

Waste Connections argues that these documents relate to RFP Nos. 10 and 11, which the Court modified previously.  Specifically, RFP No. 11, as modified, seeks for each employee and/or agent working on behalf of Haulla in the Philippines, South Africa, or Mexico identified in RFP No. 10, documents and communications *sufficient to show* that individual's job duties and responsibilities with Haulla.  Mem. Op. & Order at 12.  Moreover, the Court ruled that to the extent that multiple Haulla employees' and/or agents' job duties and responsibilities are the same

(for example, for employees in Haulla's sales or marketing department), Haulla need only produce responsive documents for one of those employees/agents, and for the remaining employees/agents, must indicate that their job duties and responsibilities are the same as the one for whom the production is made. *Id.*

During the parties' meet-and-confer call in February 2025, Waste Connections asked for any "employment agreements" between Haulla and certain sales personnel in the Philippines as referenced in a produced document (with bates number HAULLA_00043551). Pls.' MTC, Ex. A at 7, ECF No. 102-2. In a follow-up email dated March 23, 2025, Haulla's counsel disagreed that any agreements with independent contractors like those referenced in HAULLA_00043551 are responsive to any discovery request but agreed to produce all independent-contractor agreements that Haulla has for the custodians in this case. *Id.* at 5–6.

In its motion to compel, Waste Connections argued that while Haulla agreed to produce the "employment agreements" for at least its custodians, it had not produced any such documents. Pls.' MTC at 8. The record reflects, and Haulla pointed out in its response brief, that earlier on the same day on which Waste Connections filed the motion (that is, on April 30, 2025), Haulla's counsel emailed Waste Connections' counsel, stating that "[w]e've been working diligently to gather [any agreements Haulla has with relevant independent contractors] . . . and expect those to be produced later this week or early next week at the latest." Def.'s Resp., Ex. 7 at 1, ECF No. 106-7.[4] Haulla produced these agreements on May 5, 2025, as Waste Connection acknowledged in its reply brief. Def.'s Resp. at 9; Pls.' Reply at 2 n.1.

---

[4] Haulla's counsel sent the email on April 30, 2025, at 12:21 PM CDT, and Waste Connections filed the motion on the same day at 8:19 PM CDT—eight hours later. *Compare* Def.'s Resp., Ex. 7 at 1, *with* Notice of Electronic Filing, Pls.' Mot. for Leave to File Sealed Doc, ECF No. 101.

The Court finds that Waste Connections' request to compel Haulla to produce the agreements was premature.  The Court **DENIES** Waste Connections' motion to compel as to these agreements.

## C.  Discord Communications

Discord is a voice, video, and text communication app.  As Haulla explained, it uses Discord for internal conversations among teams of people, and the Discord platform as used by Haulla is grouped into "channels" that are used to discuss different topics or among different groups within Haulla's business.[5]  Pls.' MTC, Ex. A at 2.  According to Haulla, it collected from 156 Discord channels, which yielded 6,106 documents and 10,859 pages of responsive internal chats.  Def.'s Resp. at 7.  Haulla did not collect from approximately 26 channels because it believed collection from these channels would be duplicative and not proportional to the needs of the case.  *Id.* at 8.

The parties' dispute turns on the remaining uncollected channels.  In its motion, Waste Connections argued that Haulla should be ordered to collect, review, and produce responsive documents from "all relevant" Discord channels.  Pls.' MTC at 7; *see also* Pls.' Reply at 4 ("all relevant Discord chat channels").  In the joint statement, however, Waste Connections argues that Haulla should be compelled to collect and search "**all** Discord channels" for responsive materials.  J.S. at 11 (emphasis in original).  Waste Connections thus presents moving goal posts.

---

[5] Discord allows its users to create what is called a "server" for a select number of users to access. *See* https://www.adobe.com/express/learn/blog/how-to-discord#what-is-discord (last visited June 30, 2025).  Servers are the main forums on Discord.  *See* https://www.wired.com/story/how-to-use-discord/ (same).  Each server in turn is usually composed of and organized into multiple text and voice channels, which are dedicated to specific topics.  *See* https://discord.com/safety/360044149331-what-is-discord (same).  In a text channel, users can post messages, upload files, and share images for others to see, and in a voice channel, users can connect through a voice or video call in real time.  *Id.*

After collecting and searching a previously uncollected channel recently (discussed later), Haulla represents in the joint statement that the remaining uncollected channels contain internal discussions about customer service issues with third-party hauling partners outside of Texas and New Mexico.  J.S. at 13 (citing J.S., Ex. 2 (listing 26 channels), ECF No. 124-1).  Given the agreed-upon geographical scope for customer-related information, Haulla contends that the remaining uncollected channels are irrelevant to any of Waste Connections' claims.  *Id.* at 14.

In the joint statement, Haulla also supplies additional information on why collecting and searching the remaining uncollected channels would be unduly burdensome and disproportionate to the needs of the case.  *Id.*  It explains that depending on the size of a channel, Haulla's e-discovery vendor takes between two and ten days to collect the channel and ingest the channel to make it searchable in a document-review platform.  *Id.* at 13–14.  Then, Haulla adds, because of the massive number of search terms—the parties' 100+ agreed-upon search terms and nearly 10,000 customer information-related search terms that Haulla agreed to run—the vendor requires another day to search for potentially relevant data to review.  *Id.* at 14.  Finally, Haulla's attorneys must then review any data resulting from the search.  *Id.*  Thus, Haulla claims, collecting and searching the remaining uncollected channels could require three to eleven full days per channel—times 25 channels.  *Id.*

Haulla's arguments gain more traction in light of its recent collection and search efforts. In its motion, Waste Connections' arguments rested on a produced Discord chat from a collected channel, which includes a snippet of another chat that originated in an uncollected channel.  Pls.' MTC at 7 (referencing HAULLA_00123272); *id.*, Ex. M at 116, ECF No. 104.  Previously, Haulla's counsel described the particular uncollected channel as "a general channel for corporate information[ ]announcements."  Pls.' MTC, Ex. A at 2.  Based on the information in the snippet,

Waste Connections argued that the snippet itself is responsive to RFP Nos. 17 and 22.[6]  Pls.'
MTC at 7.  And so, it insisted that Haulla should be ordered to collect, review, and produce
responsive documents from that uncollected channel.  *Id.*; *see also* Pls.' Reply at 4.

After the Court ordered the parties to meet and confer on this motion, Haulla *sua sponte*
instructed its e-discovery vendor to collect and search the complained-of Discord channel, and
those efforts led to four documents, which Haulla produced on June 11, 2025.  J.S. at 12–13.
Haulla explains that it took its vendor two days to collect the channel and one day to search the
channel.  *Id.* at 12.  It adds that during the search of that channel, the snippet that Waste
Connections so much argued was relevant did not hit on any of the over 100 agreed-upon search
terms or the nearly 10,000 customer related search terms.  *Id.* at 13.  The Court has carefully
reviewed the four documents, J.S., Ex. 1, ECF No. 125-1, and finds that they are not relevant to
Waste Connections' claims.

In view of Haulla's recent collection and search efforts and its representation that the
remaining uncollected channels concern third-party hauling partners outside of Texas and New
Mexico, the Court finds that collection, review, or production from the remaining uncollected

---

[6] RFP No. 17, as originally drafted, provides: "[a]ll documents and communications of any kind,
whether internal (between Your employees, agents and/or representatives) or external with a third party,
regarding Haulla's business model, strategies, or plans.  Specifically, this request seeks documents and
communications relating to Haulla's targeted customer base, business development and service strategies,
and hiring practices."  Mem. Op. & Order at 14.  Previously, the Court narrowed the scope of RFP No. 17
to "documents and communications relating to Haulla's targeted customer base, business development
and service strategies, and hiring practices in Texas and New Mexico."  *Id.* at 15.

RFP No. 22, as originally drafted, provides: "All documents and communications of any kind,
whether internal (between Your employees, agents and/or representatives) or external with a third party,
which discloses or utilizes any Waste Connections information, including but not limited to, customer
name, rate, service, or other proprietary information."  *Id.* at 19.  Previously, the Court narrowed the
scope of RFP No. 22 to documents and communications that disclose or utilize Waste Connections'
"customer names, rates, services, or information known by Haulla as Plaintiffs' proprietary information."
*Id.* at 21.

channels would not be, at a minimum, "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Court therefore **DENIES** Waste Connections' motion to compel as to the Discord communications.

## D. HubSpot Documents

In its motion, Waste Connections argued that although Haulla produced some communications from HubSpot (it is a customer relationship management software platform[7]), Haulla did not produce "numerous" HubSpot chats that Waste Connections identified to Haulla. Pls.' MTC at 6. As example, Waste Connections submitted Exhibits H, I, and K with its motion: These exhibits are automated email notifications generated by and sent from HubSpot; their subject lines state "new comment" about certain named companies, which, according to Waste Connections, are its current or former customers; and they include, as attachments or embedded messages, excerpts of the corresponding comments (or chats) made on HubSpot. *E.g.*, Pls.' MTC, Ex. I, ECF No. 104. Waste Connections argued that Haulla did not produce the underlying HubSpot "chat messages and related information."[8] Pls.' MTC at 6–7.

In the joint statement, Haulla explains that after Waste Connections provided the exhibits by way of the motion, its e-discovery vendor realized that there had been a gap in its HubSpot collection efforts, and the gap was inadvertent. J.S. at 10. So, Haulla's vendor re-collected all

---

[7] *See* Mem. Op. & Order at 19–20.

[8] The RFP that specifically covers HubSpot documents is RFP No. 7, which seeks "[a]ll documents and communications relating to [Haulla's] use of HubSpot for Customer Relationship Management for *current or former Waste Connections customers* during the Relevant Time Period." Mem. Op. & Order at 19 (emphasis added). As mentioned earlier, in ruling on Waste Connections' first motion to compel, this Court observed that the parties agreed that the term "current or former Waste Connections customers" means Waste Connections' current or former customers in Texas or New Mexico—though on that motion, the parties did not dispute this term as used in RFP No. 7. Instead, the parties disputed the scope of the phrase "use of HubSpot," and on that dispute, the Court limited RFP No. 7 to "documents and communications Haulla *stores* in its Customer Relationship Management software HubSpot." *Id.* at 20 (emphasis in original).

HubSpot documents, and as of the parties' filing of the joint statement, Haulla was actively

reviewing all such HubSpot documents. *Id.*; Def.'s Resp. at 9; Glatstein Decl. at ¶ 10, ECF No.

106-10.  Haulla agreed to produce all such responsive documents by June 24, 2025.  J.S. at 10.

Waste Connections says that the Court does not need to compel the production of the HubSpot

documents at this time, though it reserves its right to compel should Haulla fail to produce

responsive documents on June 24, 2025.  *Id*. at 8.  Accordingly, the Court **DENIES AS**

**WITHDRAWN** Waste Connections' motion to compel as to HubSpot documents.

  But there is more.  Waste Connections re-urges its request for attorney's fees relating to

this particular issue—i.e., Haulla's pre-motion nonproduction of responsive HubSpot chat

messages and related information.  J.S. at 8; *see also* Pls.' MTC at 9 (requesting expenses,

including attorney's fees, in connection with the motion pursuant to Rule 37(a)(5)(A)).

Specifically, Waste Connections points out that in February 2025, it identified two documents

with bates numbers HAULLA_00001805 and HAULLA_00071287 (these too are email

notifications regarding new HubSpot comments) and asked Haulla to investigate the latter's data

extraction process from HubSpot.  *Id.* at 9.  Waste Connections doubts that Haulla was not aware

of the gap in its document production until after this motion to compel was filed.  *Id.*  Waste

Connections asserts that either Haulla ignored its obligation to investigate, did not investigate the

omissions seriously, or deliberately did not investigate.  *Id.* at 9–10.

  Based on the record, the Court does not share Waste Connections' doubts.  For example,

back in March 2025, Haulla investigated why any HubSpot chats or documents relating to the

two identified email notifications were not produced.[9]  At the time, Haulla's counsel declares,

_____

[9] Pls.' MTC, Ex. A at 4 ("[W]e agreed to investigate why you could not find this ticket in the produced data." (email from Haulla's counsel)); *see also id.* at 5 ("We are working to produce the documents from James Oh referenced in HAULLA_00001805 and HAULLA_00071287.").

Haulla's e-discovery vendor confirmed that all potentially relevant and accessible data from HubSpot was collected, reviewed, and if responsive and non-privileged, produced.  Glatstein Decl. at ¶ 9; *see also id.* at ¶ 7.  As such, counsel explains, Haulla had no reason to doubt the sufficiency of its production from HubSpot.  *Id.* at ¶ 9.  Counsel also declares that after Waste Connections filed the exhibits with the motion, Haulla began working with its discovery vendors to re-collect from HubSpot to identify any potential data missing from the original collection.  *Id.* at ¶ 10.

A court must not award expenses if "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(iii); *cf. also Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 241 (3d Cir. 2007) (In determining whether "other circumstances make an award of expenses unjust" under Rule 26(f), courts may consider factors such as "the nature of the failure to produce," whether the failure was "intentional, negligent, or inadvertent," and as relevant to any prejudice, the "timing of the eventual production of the documents" to rectify the failure). Such circumstances exist here.

The Court accepts Haulla's representation that its nonproduction of any responsive HubSpot chat messages or related information was inadvertent.  After being presented with the exhibits by way of the motion, Haulla took prompt actions to rectify the gap in its collection efforts, including engaging an additional discovery vendor that specializes in HubSpot collection.  *See* Glatstein Decl. at ¶ 9; J.S. at 10.  Shortly after Waste Connections filed the motion, the parties moved for continuation of the scheduling order, and the discovery deadline has been moved by three months to November 20, 2025; so, any prejudice to Waste Connections caused by Haulla's delayed production has been addressed.  Third Am. Scheduling Order at 1, ECF No. 117.

Finally, the Court is of the view that before moving to compel production of the HubSpot documents, Waste Connections should have presented Exhibits H, I, and K to Haulla and thereby, should have afforded Haulla an opportunity to respond—particularly because by the time Waste Connections filed the motion, a month had passed since the parties last communicated about the potential HubSpot production deficiencies.[10]  Instead, Waste Connections ran to the courthouse.  That haste to the courthouse is further exemplified by Waste Connections' move to compel Haulla's independent contractor agreements despite receiving an email from Haulla's counsel advising Waste Connections about its impending production of the agreements (discussed above).

Waste Connections' fee request is **DENIED**.  *See Radiologix, Inc. v. Radiology & Nuclear Med., LLC*, No. 15-4927-DDC-KGS, 2019 WL 354972, at *6–7 (D. Kan. Jan. 29, 2019) (finding that award of expenses under Rule 37(b) would be unjust where a party's failure to produce responsive documents with its original production was due to an inadvertent error which "amounted to a technical oversight when producing documents from an electronic document management database," "once the error was discovered, [the party] quickly worked to determine what had caused the production 'gaps,'" the court allowed additional time for discovery, and the party "produced more discovery . . . during the additional discovery period to cure the original oversight").

---

[10] *See* Interim Order at 1–2 (ordering the parties to meet and confer on the motion explaining that "almost a month had passed between March 28, 2025, when they last met and conferred, and April 30, 2025, when Plaintiffs filed the instant motion" and reasoning that "[i]n the meantime, Defendant made additional productions; new disputes emerged insofar as Defendant repeatedly states that Plaintiffs had never complained about certain matters until they did so in the motion; and new proposals for resolving some of the disputes have been made by both parties" (footnotes omitted)).

### E.  Noh and Oh Communications

At issue are the emails, and HubSpot and Discord communications sent by James Noh, Haulla's Chief Financial and Operating Officer, and James Oh, an employee of Haulla's parent company.  In its motion, Waste Connections argued that Haulla produced only one email where Noh is listed as sender and the remaining emails produced are 40 automated emails sent from his email account.  Pls.' MTC at 4–5.  Further, it argued, no communications from Oh were produced.  *Id.* at 69.

In response, Haulla explained that its discovery vendor collected and searched both Noh's and Oh's email inboxes, using the agreed search terms between the Parties and all the customer names produced by Plaintiffs or Haulla.  Def.'s Resp. at 5–6 (citing Glatstein Decl. at ¶¶ 5, 7).  In the case of Noh, responsive and non-privileged documents were produced, and in the case of Oh, no responsive documents were found.  Glatstein Decl. at ¶¶ 5, 8.  Haulla also explained that all collected Discord channels and HubSpot documents were searched in the same manner, and any responsive and non-privileged documents were produced regardless of whether they were connected to Noh, Oh, or any other person from Haulla.  *Id.* at ¶ 7; Def.'s Resp. at 5.

In reply, Waste Connections suggested that Haulla (i) provide hit reports from Noh's and Oh's custodial files specifically showing the universe of potentially responsive documents and (ii) run additional search terms, if necessary, to encompass the materials sought herein.  Pls.' Reply at 4.  In the joint statement, the parties represent that Haulla agreed to do as Waste Connections suggested, but without waiving any objection to future similar requests for search terms and hit reports.  J.S. at 14.  As a result, Waste Connections states that no further action is needed from the Court on this issue at this time.

The Court **DENIES AS WITHDRAWN** Waste Connections' motion to compel as to the Noh and Oh communications.

## II.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiffs' Motion to Compel (ECF No. 102) is **DENIED AS WITHDRAWN IN PART and DENIED IN PART**.  Specifically, the motion is **DENIED AS WITHDRAWN** as to Plaintiffs' request to compel Defendant to produce the above-discussed HubSpot documents and Noh's and Oh's communications, and the motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel (ECF No. 104), which is a sealed counterpart to Plaintiffs' Motion to Compel (ECF No. 102), is **LIKEWISE DENIED AS WITHDRAWN IN PART and DENIED IN PART**.

**So ORDERED and SIGNED this  30th day of June 2025.**

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**