**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **EL PASO DISPOSAL, LP,** | § | |
| **WASTE CONNECTIONS OF** | § | |
| **TEXAS, LLC, WASTE** | § | |
| **CONNECTIONS LONE STAR,** | § | |
| **INC., and WASTE** | § | |
| **CONNECTIONS US, INC.,** | § | **CAUSE NO. EP-24-CV-97-KC** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ECUBE LABS CO. d/b/a HAULLA** | § | |
| **SERVICES and ECUBE LABS CO.,** | § | |
| **LTD.** | § | |
| | § | |
| **Defendants.** | | |

## SECOND AMENDED COMPLAINT

Plaintiffs El Paso Disposal, LP, Waste Connections of Texas, LLC, Waste Connections Lone Star, Inc., and Waste Connections US, Inc. (jointly, "**Waste Connections**")[1] bring this action against Defendants Ecube Labs Co. d/b/a Haulla Services ("**Haulla**") and Ecube Labs Co., Ltd. ("**Limited**") (collectively, "**Defendants**") and state as follows:

### I.    NATURE OF THE CASE

1.    Waste Connections files this second amended complaint to add Limited as a Defendant based on information recently learned in depositions from two high-level Haulla representatives whose testimony reveals that Limited conspired with Haulla to misappropriate Waste Connections' trade secrets, hack into Waste Connections' customer portal, tortiously interfere with Waste Connections' contracts with its customers, commit fraud and negligent

---

[1] To be clear, "Waste Connections" refers to all Plaintiffs, even if this second amended complaint refers to "Waste Connections" in the singular.

misrepresentation, and falsely advertise Haulla's services to Waste Connections' customers. Limited's conspiracy and liability stem from, among other things, supplying funding and resources to Haulla to carry out the misappropriation, participating and knowing of the frauds and deceptions alleged in this second amended complaint, and profiting from the scheme. At every step of the fraudulent scheme, Limited and Haulla have been linked and working in lockstep. Limited, as Haulla's parent company, is liable for the Waste Connections' claims coextensively with Haulla. Limited must be enjoined from further violations of law as alleged herein on its own and as an instrumentality of and working together with Haulla.

2.      The parties in this case are competitors in the waste collection business. This case concerns Defendants' malicious and illegal conspiracy to, among other things, tortiously interfere with and steal Waste Connections' customers through a network of international and domestic agents, employing corporate espionage, misrepresentations, fraud, and unauthorized access of a web-based customer portal containing Waste Connections' confidential and proprietary information.

3.      Waste Connections brings this lawsuit to recover damages caused by Defendants' conduct and to prevent such conduct from occurring in the future.

## II.      THE PARTIES, JURISDICTION AND VENUE

4.      Plaintiff El Paso Disposal, LP is a Texas limited partnership.

5.      Plaintiff Waste Connections of Texas, LLC is a Delaware limited liability company.

6.      Plaintiff Waste Connections Lone Star, Inc. is a Texas corporation.

7.      Plaintiff Waste Connections US, Inc. is Delaware corporation.

8.      Upon information and belief, Haulla is a Delaware corporation with its principal place of business at 2550 W. Main Street, Suite 202, Alhambra, California 91801. It is registered

to do business in Texas, with its registered agent at Registered Agent Solutions, Inc., Corporate

Center One, 5301 Southwest Parkway, Suite 400, Austin, Texas 78735.

9.      Upon information and belief, Limited is a company founded in South Korea and

operating in the United States, including through Haulla.

10.      This Court has jurisdiction under 28 U.S.C. § 1331 because this action presents

federal questions under the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836 *et seq*.), the

Computer Fraud and Abuse Act of 1986 (18 U.S.C. § 1030), and the Lanham Act (15 U.S.C. §

1051, *et seq*.) as set forth herein. Under 28 U.S.C. § 1367, this Court also has supplemental

jurisdiction over the Texas state law claims because the state law claims are so related to the federal

question claims that they form part of the same case and controversy.

11.      This Court has personal jurisdiction over Haulla under Texas's long-arm statute,

TEX. CIV. PRAC. & REM. CODE § 17.042(2), because Haulla is registered and conducts regular

business in Texas, and further, has committed and continues to commit torts in whole or in part in

Texas. Haulla has intentionally availed itself of the Texas market and the laws of Texas.

12.      This Court has personal jurisdiction over Limited under Texas's long-arm statute,

TEX. CIV. PRAC. & REM. CODE § 17.042(2), because Limited, including but not limited through

Haulla, conducts regular business in the United States, including California, Maryland, and Texas,

and further, has committed and continues to commit torts in whole or in part in the United States

and Texas. Limited has intentionally availed itself of markets in the United States and Texas and

the laws of the United States and Texas.

13.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial

portion of the misconduct giving rise to the claims alleged herein occurred in this judicial district.

Specifically, Defendants have tortiously interfered with Waste Connections' contracts with

customers located in, and which transact business in, the Western District of Texas, in particular in and around El Paso, Texas, and hundreds of the more than 2,500 fake customer profiles created by Haulla have impacted Waste Connections' customers located in, and which transact business in, the Western District of Texas, in particular in and around El Paso, Texas.

### III.    FACTS RELEVANT TO ALL COUNTS

### A.    <u>SUMMARY OF HAULLA'S MALICIOUS AND ILLEGAL SCHEME</u>

14.    Through substantial investment of money and time, the use of technology and binding service agreements with customers, and the use of confidential and proprietary information stored on its electronic portal, Waste Connections provides waste collection, recycling, and disposal services to thousands of customers in Texas and other states. For example:

a.    Plaintiff El Paso Disposal serves customers in Texas and New Mexico,[2] including more than 600 customers in New Mexico.

b.    Plaintiff Waste Connections Lone Star serves customers in Texas and Oklahoma,[3] including more than a dozen customers in Oklahoma.

c.    Plaintiff Waste Connections of Texas is registered to do business in Texas and Oklahoma.[4] Waste Connections of Texas is also the General Partner of Plaintiff El Paso Disposal.

d.    Plaintiff Waste Connections US, Inc. provides administrative support services to customers in Texas, New Mexico, Oklahoma, and other states through the websites wasteconnections.com and myaccount.wcicustomer.com.

---

[2] *See* https://www.elpasodisposal.com/service-area/ (last visited Mar. 5, 2025).
[3] *See* https://www.sos.ok.gov/corp/corpInquiryFind.aspx (last visited Mar. 5, 2025).
[4] *See* https://www.sos.ok.gov/corp/corpInquiryFind.aspx (last visited Mar. 5, 2025).

15.    As part of its business operations, Waste Connections utilizes proprietary, confidential information and data in contracting with and servicing its customers. In a shameless plot to unfairly compete with Waste Connections, Defendants are perpetrating an illegal scheme involving fraudulently obtaining Waste Connections' proprietary data, including by illegally accessing this data on Waste Connections' web-based customer portal, and impersonating Waste Connections' customers on phone calls and in electronic communications.

16.    Limited is a South Korean company that touts itself as a provider of "waste management solutions."[5] Its website notes that it has offices in Los Angeles and Baltimore. *Id*. Upon information and belief, Limited began as a company to design and distribute technology used in the waste collection industry. Then, around 2016, Limited decided to enter the U.S. market. To do so, Limited set up Haulla. Shortly after entry into the U.S. market, Defendants started brokering waste collection services in addition to selling Limited's products. Defendants began brokering waste collection services through Haulla in various states, including Texas and New Mexico.

17.    Haulla is primarily a waste broker, meaning it acts as an intermediary between a consumer and its designated waste hauler. That is, Haulla does not own any trucks or waste bins and does not physically collect or haul away waste. Instead, it primarily acts as a middleman between a customer and waste collection companies (such as Rio Grande Waste and Frontier Waste in Texas), taking a percentage of its customers' service contract fees for itself.

18.    Limited, as Haulla's parent company, provides a multitude of resources to Haulla that Haulla uses to operate in the United States as a waste broker and engage in the unlawful conduct outlined herein. For example, Limited provides:

---

[5] *See* https://www.ecubelabs.com/about (last visited Sept. 8, 2025).

a. financing and capital to Haulla that is used by Haulla to conduct its operations;

b. sales leads to Haulla, including leads to the very customers that form the basis of this Complaint;

c. employees that Haulla uses to conduct its operations, including in the Philippines;

d. a human resources department to Haulla;

e. training to employees working for Haulla;

f. company tools, such as the use of Discord and other technologies;

g. general advice and consulting services to Haulla for use in its operations.

Haulla, in return, reports to Limited on the progress of its operations and distributes proceeds from its operations in the United States to Limited.

19. Haulla's business model is specifically designed to disrupt relationships between commercial customers and waste collection companies with which they contract. Even a simple online job posting for a Haulla sales representative role in the Philippines underscores its "cold calling" poaching approach, seeking "[g]o-getters who likes [sic] to find and win customers." It touts that "[w]e are very excited to introduce a new waste brokerage business (Haulla) in North America" and "[a]s a Sales Representative, you will be calling small business owners in US cities such as Baltimore, Houston, or Dallas. You will be introducing our company and services to potential customers with the end goal of signing a contract with them."

20. In fact, armed with Waste Connections' confidential and proprietary customer-related information that it steals from Waste Connections, Haulla induces Waste Connections' customers to breach their contracts and sign contracts with Haulla instead. Haulla does so to generate profits for Defendants at Waste Connections' expense, and even at the expense of

customers, disregarding the potential liability it foists on those customers for breaching their contracts with Waste Connections. Although Haulla claims it will pay liquidated damages owed by a customer who terminates its existing contract, Haulla's actual customer contract provides that it "***may***" pay such damages, and it reserves the right to decline to do so or to increase a customer's monthly rate to reflect an increase in cost resulting from paying liquidated damages.

21.     Defendants perpetrate their illegal scheme with the aim of tortiously interfering with and financially damaging Waste Connections' business, reputation, and customer relationships, while unfairly profiting at Waste Connections' expense and potentially harming thousands of customers in the process.

22.     Defendants' fraudulent scheme is multi-faceted. First, Limited employs agents, including in the Philippines and elsewhere, to ostensibly sell Haulla's services. As set forth above, Limited also provides resources to Haulla for use in Haulla's operations, including money, training, leads, and technology. All of this is provided to Haulla to further Haulla's brokering business.

23.     Next, through the agents employed by Limited, Defendants surreptitiously gain access to the online customer portal containing Waste Connections' confidential and proprietary information and creates "fake" customer profiles. For example, Defendants' agents pose as Waste Connections' customers, or as authorized agents acting on behalf of Waste Connections' customers, in online chats, emails, and phone calls to Waste Connections' offices, where they request customer-related information such as invoices, which are then often used to access the portal. With access to the portal, Haulla is able to learn Waste Connections' proprietary and confidential pricing information and other terms of service it provides to its customers.

24.     In other instances, Defendants' agents request Waste Connections' invoices directly from Waste Connections' customers and use information on the invoices to gain access to the portal. And in other instances of Defendants' multi-faceted and constantly evolving fraudulent scheme, Defendants' agents surreptitiously gain access to—that is, to hack—the portal to steal Waste Connections proprietary and confidential customer-related information.

25.     Demonstrating Defendants' audaciousness, Waste Connections uncovered more than 2,500 instances where Defendants unlawfully accessed the portal and created fake customer profiles using fraudulent IDs and email addresses.

26.     After fraudulently and illegally gaining access to Waste Connections' proprietary and confidential customer-related information, Defendants, through agents who identify themselves as Haulla employees, contact Waste Connections' customers, often telling them exactly how much they are paying for waste collection, and offering to undercut Waste Connections' prices if customers breach their contracts with Waste Connections and enter into contracts with Haulla. In other words, Defendants unlawfully misappropriate Waste Connections' proprietary data (including pricing information), use that data to unfairly compete with Waste Connections, and then steal Waste Connections' customers.

27.     Defendants also steal Waste Connections' customers through false statements. Waste Connections has discovered that Defendants, through Haulla employees, solicit Waste Connections' customers through false claims about, among other things, being local to customers' communities.

28.     Waste Connections uncovered Defendants' illegal, fraudulent scheme after conducting a wide-ranging investigation, including through third-party expert forensic analysis. The results of the investigation point directly to Haulla and its web of agents supplied by Limited,

including in the Philippines, and several waste hauling companies acting as Haulla's designees, such as Rio Grande Waste and Frontier Waste. While the full extent of Defendants' fraudulent activity is not yet known, and will require discovery through this lawsuit, the facts and evidence uncovered to date unequivocally demonstrate that Defendants have and continue to engage in a brazen, illegal scheme to harm Waste Connections and their customers that must be stopped. In particular, the full extent of the covert relationship between Limited and Haulla in the context of the fraud alleged herein can be fully known only after discovery.

29.    Waste Connections' investigation to date shows that, in numerous cases where a fake customer profile was created, or where an imposter contacted Waste Connections posing as a customer, it was *only* Defendants that had solicited those customers to induce them to breach their contracts with Waste Connections, and it was *only* Defendants that had knowledge of pricing data and other terms of service relating to those customers.

30.    Defendants' actions erode Waste Connections' reputation and customer relationships, especially where customers learn that Haulla possesses Waste Connections' confidential data, in some cases resulting in complete loss of customer relationships. Even in those instances where a customer relationship is not lost, the customer's trust in Waste Connections is compromised. Furthermore, Defendants' actions damage Waste Connections by increasing the cost of trying to retain a customer who is illegally poached and manipulated by Defendants' fraudulent scheme, including by renegotiating and reducing customers' rates.

31.    Defendants' illegal activity also causes additional economic damage sustained as a result of Waste Connections' efforts to investigate and identify specific instances of unauthorized access to the portal and other fraudulent conduct, block Haulla's access to customer accounts,

implement additional layers of security, and otherwise respond as necessary to protect the security of Waste Connections' confidential and proprietary information.

32.     Waste Connections, therefore, seeks relief from this Court to protect its proprietary and confidential customer-related information, as well as to protect its business, goodwill, and reputation, and to ensure that Waste Connections' customer relationships remain secure and free from unlawful interference by Defendants.

33.     Among the damages Waste Connections seeks to recover are lost profits, the loss of goodwill and harm to its reputation as a result of Defendants' fraud, deceit, and misrepresentations, exemplary damages, the cost of its investigation, and the recovery of attorneys' fees. Waste Connections also seeks an order to prevent Defendants' tortious conduct from occurring in the future.

**B.     <u>WASTE CONNECTIONS' PRIVATE CUSTOMER PORTAL</u>**

34.     Waste Connections conducts business through a website which allows customers online access to view and pay bills and review service, pricing, and other information through a private customer portal called the "MyAccount Portal" (the "Portal"), accessible at https://myaccount.wcicustomer.com/:



35.     Waste Connections US, Inc. hosts the Portal on its computer system for Waste Connections' benefit. Waste Connections uses the Portal on a daily basis to provide and store information relating to customers in multiple states.

36.     Prior to in or about 2024, from the Portal home page, shown above, customers could log into their account with a User ID and Password. Alternatively, a customer could create an account by selecting "Register Now." This brought the customer to a separate page, where they could register their account by inputting the Account Number and Invoice Number:



37.     If customers did not have this information, which was not publicly available, they could select the "Need Help" option. They were then directed to another page, where they could look up their account by using the associated Address or Account Number:

11



38.    Prior to January 2024, customers could also access their respective accounts by verifying their identities through a series of personalized security questions:



39.    In January 2024, Waste Connections disabled the personalized security questions option for commercial customers, and enabled other security features, after discovering Haulla's unauthorized access to the Portal.

40.    After completing account registration steps, presumed customers are directed to a final page where they can create a new User ID and Password to access the customer account though the Portal.

41.    Importantly, before a new profile can be created, users check a box to explicitly agree to Waste Connections' Terms of Use, which are conspicuously linked adjacent to the box that must be checked and conspicuously linked at the bottom of every page on the Portal and on Waste Connections' main website, wasteconnections.com:



42.    Access to a customer account through the Portal provides the user with access to Waste Connections' confidential information and confidential compilations of information relating to the customer, including customer identity, contact information, container locations, container sizes, service frequency, service pricing, payment histories, account balances, and contract terms, among other information.

43.     For Waste Connections' and its customers' benefit, Waste Connections US, Inc. has invested and continues investing substantial time and resources into developing and maintaining the Portal, including its privately-owned computer system with supporting servers, routers, networks, bandwidth, computer capacity, and firewalls.

44.     Because the Portal contains confidential and proprietary information compiled by Waste Connections, it is critical to Waste Connections and its business that the Portal is used only by customers. Waste Connections protects the security of the Portal through the Terms of Use, password protection, personalized security questions, and two-step authorization, among other measures.

45.     The Terms of Use limit Portal access to authorized users **only** who have provided "true, accurate, current, and complete information about yourself as prompted by the Site's enrollment form."[6] The Terms of Use expressly provide that "[t]hird parties (e.g. brokers, agents, competitors, etc.) are not authorized to use the Site for any purpose" without Waste Connections' express written consent. The section entitled "Authorization" specifically states that unauthorized access may constitute a violation of federal statutes such as the Computer Fraud and Abuse Act, among other federal and state laws.

**2. Authorization**

WCI customers and their respective employees (each, an "Authorized User") are authorized to use the Site solely for purposes relating to their own respective account(s). WCI customers and their respective employees are not authorized to use or access any portion of the Site that relates to another customer's account. Third parties (e.g. brokers, agents, competitors, etc.) are not authorized to use the Site for any purpose, including without limitation accessing or changing any customer information (e.g. billing information, etc.), unless the third party first obtains WCI's express written consent. Third parties may not acquire any authorization to use the Site (including for billing purposes) from a customer via letters of authority or otherwise. Any such letters of authority or similar attempts to grant authority to a third party shall be void.

Unauthorized commercial use, access, or attempts to change information on the Site are strictly prohibited and subject to prosecution under all applicable state and federal laws, including but not limited to, the Computer Fraud and Abuse Act of 1986, 18 U.S.C. § 1030, the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701 et seq., and Chapter 143 of the Texas Civil Practice and Remedies Code.

---

[6]    ECF No. 1-2, Waste Connections Terms of Use, § 5 (available at: https://myaccount.wcicustomer.com/) (last updated: July 24, 2023).

46.     The Terms of Use further forbid users from, among other things, "impersonating any other person," "harvesting . . . any information concerning other users of the Site," or using the Portal for any purpose other than "purposes relating to [the user's] own respective account."[7]

## C.    DISCOVERY OF DEFENDANTS' UNLAWFUL ACCESS AND ILLEGAL USE OF THE PORTAL

47.     Beginning in 2023, Waste Connections began noticing suspicious and coordinated activity involving customer accounts in the Portal, particularly with Texas-based customers. New or duplicate customer profiles were being created on behalf of long-standing customers, sometimes using usernames similar to the customer's existing username, and other times repeatedly using similar or identical "boilerplate" usernames across multiple, unrelated accounts. Further, customer phone numbers or email addresses in the new profiles were not those of the actual customer. Instead, they were replaced by an email address or phone number containing one varied letter or digit from that used by the customer in its original profile. As with the usernames, some of the replacement email addresses were similar to existing email addresses associated with the account; others were boilerplate email addresses used across multiple unrelated accounts.

48.     In fact, Waste Connections' information technology personnel identified the creation of ***more than 2,500 fake profiles*** on the Portal. Many of these accounts were deleted within hours (and often within minutes) of their creation once Defendants had successfully extracted the targeted customer-related information from the Portal.

49.     Waste Connections' investigation revealed that Defendants' agents were accessing the accounts and creating new fake profiles on the Portal while downloading and/or expropriating

---

[7] *Id.* §§ 2, 4.

Waste Connections' confidential and proprietary information, such as pricing data, frequency of service, invoice numbers, customer names, and contact information, before deleting the profiles.

50.     Waste Connections' investigation revealed that Defendants' agents gained access to protected customer-related information via the Portal in four primary ways. In one tactic, Defendants' agents repeatedly guessed answers to personalized security questions in the Portal during online sessions often lasting over an hour. Upon guessing the correct answers, the agents created fake profiles associated with customer accounts, and then stole Waste Connections' confidential customer-related information.

51.     In a second tactic, Defendants' agents communicated with Waste Connections via an online chat feature on Waste Connections' website, through emails, and in telephone calls to Waste Connections' offices, with the agents posing as existing customers and requesting account numbers or copies of invoices. With such information in hand, they were able to illegally access the Portal and gain access to Waste Connections' confidential customer data. Waste Connections' investigation revealed that the creation of the fake profiles coincided with an uptick in communications sent to Waste Connections seeking customer-related information.

52.     In many cases where contact was made via email, requests were made for invoices to be sent to an "updated" email address for the customer. Waste Connections' investigation revealed that many of these "updated" email addresses were designed to appear related to the customer, despite the fact they were not. Waste Connections' investigation also revealed that, in other cases, the email addresses were boilerplate and used interchangeably to request invoices for scores of unrelated customers.

53.     On multiple occasions in response to telephonic requests for customer data made to Waste Connections, customer service representatives ("CSR") placed the caller on hold and

contacted the customer using the phone number provided when the customer initially signed up for service. Without exception, the real customers confirmed they did not contact Waste Connections or authorize anyone else to contact Waste Connections. Moreover, the real customers also confirmed that *only* individuals claiming to work for Haulla had recently solicited their business and sought to induce them to breach their existing contracts with Waste Connections.

54.    In a third tactic, Defendants' agents contact Waste Connections' customers and request certain information, including Waste Connections invoices. The agents then use the information to create fake accounts or new profiles for the actual customer on the Portal to obtain additional data about Waste Connections' services for that customer. Using the data, the agents then again contact the customer offering services at lower rates than those offered by Waste Connections, based on information discovered in the Portal.

55.    In a fourth tactic, often used in conjunction with the third tactic, Defendants' agents communicate with Waste Connections' customers and claim in those communications to be a "local pickup company" or a "local collection company," among other claims. Based on Waste Connections' investigation, those claims are false because Haulla operates out of South Korea or the Philippines or elsewhere outside of Texas or other states in the United States where Waste Connections operates. In addition, Haulla is not a "collection" or garbage "pickup" company; it is a broker for these services.

56.    After discovery of the fake accounts, new profiles, and increased frequency of purported Portal users requesting account numbers and invoices, Waste Connections implemented additional security measures to prevent unauthorized access to the Portal, including notification to existing customers when a new profile is created. Nonetheless, Defendants kept adapting their tactics to keep pace with Waste Connections' security measures. In numerous instances where new

profiles were created, customers alerted Waste Connections that they had not created the profile. These customers also informed Waste Connections that they had been solicited only by individuals identifying themselves as Haulla employees, and in many instances the agents knew specific details of the terms of service relating to those customers, such as price, frequency and container size, and other proprietary and confidential information known only to Waste Connections and its customers.

57.    On many occasions, customers expressed surprise and concern that these agents were able to intrude on their business relationships with Waste Connections and questioned Waste Connections' ability to securely maintain customer-related information about its business. These concerns have and will continue to negatively impact Waste Connections' goodwill and reputation with its customers.

58.    The creation of fake profiles and increase in requests seeking customer-related information also coincided with an unusual increase in contract cancellations by Waste Connections' customers. In fact, of more than 2,500 fake profiles identified, hundreds are associated with customer accounts that were later terminated, suspended, or are in collections. In many instances, customers who terminated their contracts later signed contracts with Haulla. Even where Waste Connections was able to retain customers, it did so in many instances only after negotiations and reductions in rates, further damaging Waste Connections.

**D.    PORTAL ACTIVITY TRACED TO DEFENDANTS' AGENTS IN THE PHILIPPINES.**

59.    Waste Connections' investigation did not end at the discovery of the creation of fake customer profiles. The investigation traced many of the IP addresses used to unlawfully access the Portal to the Philippines, where Defendants (and upon information and belief no other waste service provider or broker) have a base of operations.

60.    For example, hundreds of unrelated customer accounts were accessed via the Portal by actors utilizing the following User IDs:

    ALK1
    Asdfg23@
    Asdfg213
    Asdfg233
    Asdfg23232
    Asdfg1231

The User ID Asdfg1231 is similarly associated with the email address hralex247@gmail.com, which was used hundreds of times across unrelated customer accounts. The geolocation on the IP addresses used to create fake User IDs and email addresses was traced to the Philippines and was associated with a Filipino telecommunications provider.

61.    Defendants' agents operate in the Philippines. In fact, Defendants actively recruit sales representatives and other employees in the Philippines specifically for the unlawful scheme described herein. More than 80 LinkedIn profiles connect Defendants' agents to operations in the Philippines, and Haulla's own LinkedIn page (copied below) confirms its presence in the Philippines and connection to a large number of workers there.



62.     Below is a sampling of Defendants' interference with Waste Connections' business relationships with its customers, and instances where Defendants' agents have impersonated Waste Connections' customers, including examples that trace to the Philippines. These are just a handful of examples of heightened activity concerning fraudulent requests for customer-related information or other fraudulent communications, and Portal access and creation of fake profiles by Defendants, amid other fraudulent conduct.

**i.   Examples of Defendants' Agents Impersonating Existing Customers on Telephone Calls.**

63.     In early May 2023, a CSR received a call from a person claiming to be "Michele," the owner of a customer under contract with Plaintiff Waste Connections Lone Star, Inc. The caller requested information concerning the account, including copies of recent invoices, and requested that a copy be emailed to avriellepedroza@gmail.com. When the CSR refused to send the invoice

to an email address that was not on file, the fake "Michele" was transferred to a manager. The manager then placed the fake "Michele" on hold and on a separate line called the business owner (i.e., the "real" Michele) using the phone number on file. The "real" Michele advised that she had not contacted customer service and that the "fake" Michele was not calling on the customer's behalf. Moreover, the customer advised that she had recently been contacted by an individual representing themselves as an agent of Haulla who attempted to induce her to breach her existing contract and sign a new contract, with a claimed savings of 20% off her current rate.

64.    Waste Connections' forensic investigators identified the email address avriellepedroza@gmail.com as being associated with Defendants and their unlawful scheme described herein. Specifically, Waste Connections' investigation identified advertising by "Haulla" looking to hire sales representatives in the Philippines. ECF No. 1-3.[8] The job description shows that "Haulla" was looking for contract employees for "cold calling . . . small business owners in US cities such as Baltimore, Houston or Dallas. You will be introducing our company and services to potential customers with the end goal of signing a contract with them." The Desired Candidate Profile preferred experience with HubSpot, a free Customer Relationship Management ("CRM") software platform. Waste Connections' forensic investigators searched open-source channels and identified information related to a HubSpot CRM portal, where a person named Domingo Jose De Guzman had uploaded a large number of email addresses to the platform. ECF No. 1-4. Significantly, one of the email addresses that Mr. Guzman uploaded was avriellepedroza@gmail.com. The investigators also identified Mr. Guzman as a recruiter of "talented virtual assistants" located in the Philippines. ECF No. 1-5.

---

[8] Note the reference in ECF No. 1-3 to the compensation offer designated in PHP, which is the abbreviation for the Philippine peso.

65.    The "fake" Michele's call to the CSR described above, using the email address avriellepedroza@gmail.com, was a direct outgrowth of Defendants' recruiting activities in the Philippines.

66.    In another example, an agent claiming to be calling on behalf of Haulla contacted a CSR claiming to be "Ron," an assistant to the owner of an existing customer of Plaintiff Waste Connections Lone Star, Inc. The caller sought to cancel its waste services contract. When the CSR contacted the real account owner to confirm this information, the owner stated that he did not have an assistant, or any other employee named "Ron." The call to the CSR coincided with "Haulla" contacting the customer to solicit his business and induce him to breach his existing contract.

**ii. Examples of Defendants Contacting Customers with Knowledge of Confidential and Proprietary Information after Accessing the Customer Portal.**

67.    Waste Connections also received numerous calls and e-mails from customers describing instances where Defendants' agents solicited their business already knowing how much the customer was paying for waste services, despite the customer never having provided that information to the agent. Defendants obtained that information after unlawfully accessing the Portal.

68.    For example, in September 2023, an existing customer of Plaintiff El Paso Disposal, LP contacted a CSR to report that he had received a call from a representative of Rio Grande Waste, a Haulla designated waste collection company, who knew what he was paying per month for waste disposal services and the length of time he had been paying that amount. A month later, the same representative contacted the customer again to say that he was aware that El Paso Disposal had not reduced his monthly rate.

69.    The foregoing solicitation coincided with the creation of a fake customer profile in September 2023, with the user changing both the username and password. The fake profile was

used to view the customer's account information multiple times in September, October and December 2023. The IP address associated with these activities was traced by Waste Connections to the Philippines. In view of this activity all tracing back to Defendants, Waste Connections' investigation concluded that Defendants exported Waste Connections' confidential and proprietary information about this customer after it unlawfully gained access to the customer's account via the Portal and used that information to attempt to steal this customer's business.

70.     Similarly, in December 2023, a representative claiming to be calling on behalf of "Haulla" contacted another customer of Plaintiff El Paso Disposal. The caller urged the customer to breach its existing contract with a promise of a lower rate if the customer signed a contract with Haulla. The caller was aware of how much the customer was paying per month and the size of the container it was using. The representative emailed the customer again on February 14, 2024, with the same offer.

71.     This activity coincided with a fake profile created for this customer on the Portal on or about November 19, 2023, with the user changing the username and password.

72.     On February 13, 2024, Waste Connections discovered the fake customer profile as a result of its investigation and intentionally changed the account password. One day later, on February 14, 2024, the user attempted to again access the customer's account, but was denied access because Waste Connections had changed the password. One minute later, a representative claiming to be from "Haulla" emailed the customer with the above-described offer. The IP address used to access the account traces back to the same long distance carrier information associated with hundreds of instances where fake customer profiles were created, and to multiple instances of unauthorized access to the Portal. Geolocation information for the IP address confirms that the country of origin was the Philippines.

73.     Even as recently as March 2024, Waste Connections received customer complaints regarding "Haulla" employees soliciting their business in improper ways. In one example, a customer of Plaintiff El Paso Disposal complained that Haulla sent her an email on March 13, 2024, soliciting her business and referencing her El Paso Disposal billing rates - information she had never shared with Haulla. Upon further investigation, Waste Connections discovered that a fake profile was created on this customer's account back on September 29, 2023, and the account was accessed twice that day. The customer's email address was changed by adding one digit to the actual email address. Using the fake profile, the user logged into the account again on February 27, 2024. The user again logged into the account on March 13, 2024, just *three minutes* before the customer received the email from Haulla containing her actual billing rates. This was no mere coincidence and demonstrates Defendants' fraudulent scheme in action.

### iii. Examples of Defendants Contacting Customers to Obtain Information to Access the Customer Portal.

74.     In October 2023, a customer of Plaintiff El Paso Disposal received an email from "Haulla" requesting that the customer send an invoice from El Paso Disposal. The customer sent an invoice to Haulla on October 19, 2023. Within hours, the invoice number on that invoice was used to create a new profile on the customer's Portal account with a deceptively similar user ID to the customer's. The next day, on October 20, 2023, the customer had signed a service agreement with Haulla in breach of its agreement with El Paso Disposal. El Paso Disposal ultimately won back the customer's business from Haulla, but only after offering a significant rollback on its original prices. The invoice requested by Haulla was surreptitiously obtained so the invoice number could be used to unlawfully create a profile on that customer's account in the Portal, allowing Defendants to view all of Waste Connections' information about that customer on the Portal.

75.     More recently, in January 2024, a customer of Plaintiff Waste Connections of Texas, LLC received an email from Haulla requesting that the customer send Haulla an invoice from Waste Connections of Texas, LLC. The customer sent an invoice to Haulla on January 11, 2024. Within hours, the invoice number on that invoice was used to create a new profile on the customer's Portal account with a deceptively similar user ID to the customer's. The profile was then deleted mere minutes after it was created. A few months later, the customer informed Waste Connections of Texas, LLC that it was using the services of a new "broker." The invoice requested by Haulla was surreptitiously obtained so the invoice number could be used to unlawfully create a profile on that customer's account in the Portal, allowing Defendants to view all of Waste Connections' information about that customer on the Portal.

### iv. Additional Examples of Defendants Interfering with Waste Connections' Customers.

76.     Defendants also use deceit and misrepresentations in other ways to interfere with Waste Connections' relationships with its customers. For example, in January 2025, a customer contacted Waste Connections of Texas, LLC informing it of repeated attempts by Haulla over multiple years to solicit the customer and obtain Waste Connections of Texas, LLC invoices from the customer. The customer forwarded example emails from Haulla, in which Haulla represented itself as a "local pickup company" or a "local collection company," among other representations. These representations are false because Haulla, through Limited, operates out of South Korea or the Philippines, is not based in Texas where the customer was located, and is not a garbage "pickup" or "collection" company.

77.     In another instance, in December 2023, a customer of Plaintiff El Paso Disposal contacted a CSR to report that he received an email purportedly from "El Paso Disposal" stating that his account had been closed due to a rejected payment. This was false. El Paso Disposal had

never sent the customer such an email. Furthermore, this incident coincided with illegal access of this customer's online account on the Portal and the creation of a fake profile with the user changing the billing email address for the account. The "new" email address was B.Covey24@welch.com, a "boilerplate" address used for new customer profiles across multiple unrelated accounts. Upon further investigation, Waste Connections discovered that the customer profiles associated with B.Covey24@welch.com had been accessed by IP addresses based in the Philippines.

78.     In another instance, Plaintiff Waste Connections of Texas, LLC received a customer contract termination notice via a power of attorney executed by Haulla, purportedly on behalf of a customer. Haulla also paid the liquidated damages associated with the termination, as required by the contract. Upon contacting the affected customer, Waste Connections of Texas, LLC learned that the customer had not given Haulla power of attorney and had not authorized Haulla to pay liquidated damages on its behalf.

## E.     DESPITE PROTECTIVE MEASURES BY WASTE CONNECTIONS, DEFENDANTS' ILLEGAL INTERFERENCES ADAPT AND CONTINUE

79.     Defendants know exactly what they are doing and why their conduct is illegal. The Terms of Use on Waste Connections' website and customer Portal make clear that third party brokers (like Haulla) are *not* authorized to use the site to access customer-related information without Waste Connections' written consent. The Terms of Use also state that unauthorized commercial use or access is strictly prohibited under applicable state and federal laws including, *inter alia*, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and Chapter 143 of the Texas Civil Practice and Remedies Code.

80.     Defendants know their access to the Portal and related extraction of Waste Connections' confidential and proprietary customer-related information is improper and not

authorized by Waste Connections, but Defendants' unlawful and unauthorized actions continue. In response, Waste Connections has taken measures to assure that the Portal can only be accessed by customers, in order to prevent further unauthorized access. Despite these efforts, dozens of customers have notified Waste Connections of attempts to create unauthorized customer profiles via the Portal or otherwise surreptitiously obtain Waste Connections' proprietary and confidential customer-related information.

81.     Likewise, Waste Connections continues to receive numerous communications via their online chat features, and in emails and phone calls, from Defendants' agents impersonating existing customers requesting that invoices and other account information be sent to "updated" email addresses.

82.     In addition to undertaking a detailed investigation into Defendants' unlawful activity and bolstering its security measures to prevent unauthorized use of its Portal, Waste Connections has spent hundreds of hours communicating with customers, assuring them that information about their accounts is secure, and negotiating new rates, often at substantial losses, to retain customers and re-establish goodwill.

## IV. CAUSES OF ACTION

### COUNT 1: VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016
### (18 U.S.C. § 1836, *et seq.*)[9]
### (Alleged against all Defendants)

83.     Waste Connections realleges and incorporates by reference the allegations set forth above.

---

[9] Defendants are jointly and severally liable for each of Waste Connections' claims, both as detailed in Waste Connections' conspiracy claim (Count 10) and independently from that claim.

84.    Waste Connections is entitled to damages under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq*., based on Defendants' misappropriation of trade secrets.

85.    Waste Connections owns its confidential and proprietary information, including customer identity, contact information, container locations, container sizes, service frequency, service pricing, payment histories, account balances, and contract terms, among other information. This information is securely stored in the Portal and constitutes "trade secrets" per 18 U.S.C. § 1839(3).

86.    The Portal and related products and services are available on Waste Connections US, Inc.'s websites, including wasteconnections.com and myaccount.wcicustomer.com, which are accessed by customers in multiple states. The products and services associated with the Portal are used in, or intended for use in, interstate commerce per 18 U.S.C. § 1836(b).

87.    Defendants' creation and use of fake accounts and profiles to access the Portal and other improper means to acquire Waste Connections' proprietary and confidential information violate Waste Connections' Terms of Use. Defendants know or have reason to know that they are using improper means to acquire Waste Connections' information, or that they have acquired information that was improperly acquired from Waste Connections. *See* 18 U.S.C. § 1839(5).

88.    Waste Connections has taken reasonable measures to keep its information secret. Specifically, Waste Connections and Waste Connections US, Inc. maintain the secrecy of the Portal and its contents, including Waste Connections' information about its customers, through the Terms of Use, password protection, and two-step authorization, among other measures. Because Defendants are not customers, Defendants had to use improper means to access Waste Connections' information. *See* 18 U.S.C. § 1839(6).

89.    Defendants misappropriate the Portal and Waste Connections' proprietary and confidential trade secrets it contains. For example, Defendants access Waste Connections' trade secrets by impersonating Waste Connections' customers and illegally accessing the Portal. Defendants illicitly obtain information unique to each customer and use this information to access customer accounts containing Waste Connections' proprietary and confidential information. In doing so, Defendants' agents misrepresent their identity and violate Waste Connections' Terms of Use.

90.    Further, the Terms of Use governing the Portal make clear that third party brokers (like Haulla) are ***not*** authorized to use the site to access customer-related information without Waste Connections' express written consent. The Terms of Use also state that unauthorized commercial use or access to the Portal is strictly prohibited under applicable state and federal laws.

91.    The information misappropriated by Defendants derives independent economic value from not being generally known or readily ascertainable through proper means, and Defendants obtained economic value from the unauthorized access to and use of the information.

92.    As a waste broker, Haulla competes for customers with Waste Connections. Defendants improperly use the misappropriated trade secrets to induce existing customers to breach their contracts with Waste Connections and instead sign contracts with Haulla.

93.    Defendants have used and disclosed, and continue using and disclosing, Waste Connections' trade secrets without Waste Connections' express or implied consent.

94.    Waste Connections is entitled to an award of damages for actual loss caused by the misappropriation of trade secrets, damages for any unjust enrichment derived from the misappropriation of trade secrets, costs associated with Waste Connections' response to Defendants' unlawful access and collection of data, exemplary damages, injunctive relief, and

other equitable relief, as a result of Defendants' misappropriation of trade secrets under 18 U.S.C. § 1836, *et seq*.

## COUNT 2: VIOLATION OF TEXAS UNIFORM TRADE SECRETS ACT
### (Alleged against all Defendants)

95.     Waste Connections realleges and incorporates by reference the allegations set forth above.

96.     Waste Connections is the owner of trade secrets as that term is defined in TEX. CIV. PRAC. & REM. CODE § 134A.002(6), including confidential information and confidential compilations of information including customer identity, contact information, container locations, container sizes, service frequency, service pricing, payment histories, account balances, and contract terms.

97.     Waste Connections has taken reasonable measures under the circumstances to keep the information secret per TEX. CIV. PRAC. & REM. CODE § 134A.002(6)(A), and Defendants used improper means to acquire the information. For example, the Portal containing Waste Connections' trade secrets could only be accessed with non-public information specific to each customer, which Defendants obtained through improper means.

98.     Among the improper means Defendants utilized to gain unauthorized access to the Portal and thereby obtain Waste Connections' trade secrets are impersonation of Waste Connections' customers and theft, fraud, and misrepresentations as described herein.

99.     Further, the Terms of Use governing the Portal make clear that third party brokers (like Haulla) are *not* authorized to use the site to access customer-related information without written consent. The Terms of Use also state that unauthorized commercial use or access is strictly prohibited under applicable state and federal laws.

100.    The information illegally accessed by Defendants derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. TEX. CIV. PRAC. & REM. CODE § 134A.002(6)(B). Defendants derive value from this information by using it to induce Waste Connections' customers to breach their contracts, terminate services with Waste Connections, and switch their business to Haulla.

101.    Defendants' actions constitute misappropriation because they used Waste Connections' trade secrets without Waste Connections' express or implied consent and in violation of the applicable Terms of Use.

102.    Defendants acquired these trade secrets through improper means under TEX. CIV. PRAC. & REM. CODE § 134A.002(3)(B)(i).

103.    Waste Connections is entitled to recover damages for misappropriation, including actual loss caused by the misappropriation, unjust enrichment derived from the misappropriation, and exemplary damages because Defendants' misappropriation was and is willful and malicious. TEX. CIV. PRAC. & REM. CODE § 134A.004. Further, Waste Connections is entitled to reasonable attorneys' fees, interest, and costs based on the existence of willful and malicious misappropriation. *See* TEX. CIV. PRAC. & REM. CODE § 134A.005(3). Waste Connections is also entitled to injunctive relief and other equitable relief as a result of Defendants' misappropriation of trade secrets. *See* TEX. CIV. PRAC. & REM. CODE § 134A.003.

### COUNT 3: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### (18 U.S.C. § 1030, *et seq.*)
### (Alleged against all Defendants)

104.    Waste Connections realleges and incorporates by reference the allegations set forth above.

105.    Waste Connections' and Waste Connections US, Inc.'s computers and servers supporting their websites and the Portal, including devices connected to the Internet, are used in or affect interstate commerce and communication, and are therefore protected computers under 18 U.S.C. § 1030(e)(2).

106.    Defendants intentionally accessed and continue accessing these protected computers or servers without authorization, including as defined by the Terms of Use, and Defendants obtained and continue obtaining information from protected computers or servers in violation of 18 U.S.C. § 1030(a)(2)(C).

107.    Defendants knowingly and with intent to defraud accessed these protected computers or servers without authorization, and by means of this unauthorized access furthered the intended fraud and obtained valuable information from the Portal in violation of 18 U.S.C. § 1030(a)(4).

108.    Waste Connections' proprietary and confidential customer-related information that is the subject of this lawsuit is not publicly available, is valuable, and is only accessible by answering personalized security questions, using a customer's user ID and password, or using a customer's account number and invoice number. Waste Connections' proprietary and confidential customer-related information is known only to Waste Connections.

109.    Defendants, through their employees or other agents operating in the Philippines or elsewhere, on numerous occasions starting in at least 2023 and continuing today, improperly obtained account numbers, invoice numbers, and other information to access the Portal from Waste Connections or Waste Connections' customers, often through deceptive means. Once the information was obtained, Haulla would use it to create a fake account or profile on the Portal, or

to answer Portal security questions, to steal Waste Connections' confidential and proprietary information about the customer.

110.    Defendants' scheme increases the burden and costs to run and maintain the Portal, and to otherwise maintain Waste Connections' business and relationships with its customers.

111.    Waste Connections incurred and continues incurring damages as a result of these violations, including expenses incurred from being forced to investigate Defendants' unauthorized access and abuse of their computers and servers, with other losses and damages in an amount to be proven at trial, but well in excess of the minimum statutory damages of $5,000 aggregated over a one-year period for each improperly accessed computer and/or server. Further, Waste Connections is entitled to compensatory damages, injunctive relief, and other equitable relief as a result of Haulla's unauthorized access under 18 U.S.C. § 1030(g).

## COUNT 4: VIOLATION OF TEXAS HARMFUL ACCESS BY COMPUTER ACT
### (Alleged against all Defendants)

112.    Waste Connections realleges and incorporates by reference the allegations set forth above.

113.    TEXAS PENAL CODE § 33.02 provides that a person commits an offense if the person "knowingly accesses a computer, computer network, or computer system without the effective consent of the owner." A "computer" is defined to include "all input, output, processing, storage, or communication facilities that are connected or related to the device." *Id*. § 33.01(4). A person additionally commits an offense under this subsection if, with the intent to defraud or harm another, the person knowingly accesses a computer that is owned by a business in violation of a clear and conspicuous prohibition by the owner of the computer. *Id*. § 33.02(b-1)(2).

114.    In turn, TEX. CIV. PRAC. & REM. CODE § 143.001 provides that "[a] person who is injured . . . as a result of a violation under Chapter 33, Penal Code, has a civil cause of action if

the conduct constituting the violation was committed knowingly or intentionally." Such person is entitled to actual damages and reasonable attorney's fees and costs. *Id*. § 143.002.

115.    Defendants have violated TEXAS PENAL CODE § 33.02. Among other things, Waste Connections' Terms of Use (i) prohibit third party brokers from accessing the website and Portal without Waste Connections' consent, (ii) prohibit users from impersonating any other person or harvesting customer-related information, and (iii) require users to provide true, accurate, current, and complete information to create a Profile.

116.    Defendants knowingly and intentionally accessed the Portal without consent, seeking to extract Waste Connections' proprietary and confidential customer-related information. Defendants did so with the intent to use Waste Connections' proprietary and confidential information to harm and defraud Waste Connections. Defendants' access of this proprietary and confidential information is a clear violation of Waste Connections' prohibition against access by non-customers.

117.    As stated, Defendants have on numerous occasions since 2023 obtained account numbers, invoice numbers, or other information from Waste Connections or Waste Connections' customers, often through deceptive means, or made repeated attempts to guess the information, to access the Portal. Once the information was obtained, Defendants used it to create fake accounts or profiles on the Portal to steal Waste Connections' confidential and proprietary data about customers.

118.    Waste Connections has suffered, and continues to suffer, damages resulting from Defendants' acts, including but not limited to loss of existing and future business, damage to goodwill, and the costs of Waste Connections' investigation. Waste Connections is entitled to

actual damages, as well as reasonable attorney's fees and costs and injunctive or other equitable relief. *See* Tex. Civ. Prac. & Rem. Code §§ 143.001, 143.002.

## COUNT 5: TORTIOUS INTERFERENCE WITH CONTRACT
### (Alleged against all Defendants)

119.    Waste Connections realleges and incorporates by reference the allegations set forth above.

120.    Defendants interfered, and continue to interfere, with Waste Connections' existing customer contracts. This interference has directly caused the premature termination of Waste Connections' customer contracts, and otherwise hindered, precluded, lessened the benefits, or increased the burdens of Waste Connections' maintaining such contracts, all without legal justification or excuse.

121.    Waste Connections' interference includes but is not limited to: (1) the improper use and access of Waste Connections' confidential and proprietary information for the purpose of inducing customers to breach their contracts and otherwise terminate business relationships with Waste Connections; (2) misrepresentations made by Defendants to existing customers regarding Waste Connections' business for the purpose of inducing customers to breach their contracts and otherwise terminate business relationships with Waste Connections; and (3) Defendants' agents posing as existing customers in emails and phone calls to obtain Waste Connections' confidential customer-related information and to terminate contracts.

122.    This conduct demonstrates an intent on the part of Defendants to induce customers to breach their contracts with Waste Connections.

123.    Waste Connections is entitled to an award of damages for actual loss caused by defendants' tortious interference, together with exemplary damages, interest, and costs. Waste

Connections is further entitled to injunctive relief and other equitable relief against Defendants' tortious interference.

## COUNT 6: FRAUD
### (Alleged against all Defendants)

124.    Waste Connections realleges and incorporates by reference the allegations set forth above.

125.    As stated, Defendants have on numerous occasions since 2023 obtained account numbers, invoice numbers, or other information from Waste Connections or Waste Connections' customers, often through deceptive means, or made repeated attempts to guess the information, to access the Portal. For example, its agents contacted Waste Connections' CSRs falsely representing themselves to be Waste Connections' customers or acting on behalf of Waste Connections' customers, all in effort to illegally obtain Waste Connections' proprietary and confidential customer-related information. Defendants then used and continue to use that information to gain unauthorized access to the Portal, unfairly compete with Waste Connections to steal its customers, and otherwise interfere with Waste Connections' business relationships with its customers.

126.    Defendants and their agents knowingly misrepresent their true identities for the express purpose of gaining access to the Portal, thus allowing them to obtain Waste Connections' proprietary and confidential information.

127.    Waste Connections has reasonably relied on Defendants' false representations, to their detriment.

128.    Defendants' material misrepresentations are the catalyst for all of Defendants' subsequent unlawful conduct, and thus have proximately caused harm to Waste Connections.

129.    Waste Connections brings this action to recover actual as well as exemplary damages resulting from Defendants' fraudulent misrepresentations, together with interest and

costs. Waste Connections is further entitled to injunctive relief and other equitable relief against Defendants' fraudulent misrepresentations.

## COUNT 7: NEGLIGENT MISREPRESENTATION
### (Alleged against all Defendants)

130.    Waste Connections realleges and incorporates by reference the allegations set forth above.

131.    Defendants misrepresented in emails and phone calls to Waste Connections that it was an existing Waste Connections customer or was authorized to contact Waste Connections by an existing Waste Connections customer, when in fact it was not.

132.    Defendants' misrepresentations included representations by Haulla in the course of its business as a waste broker seeking to solicit customers from Waste Connections for its own pecuniary interest.

133.    Defendants' misrepresentations supplied false information to misguide Waste Connections, who is engaged in the same industry as Haulla.

134.    Defendants did not exercise reasonable care or competence in obtaining information from Waste Connections or communicating information to Waste Connections relating to its misrepresentations.

135.    Waste Connections suffered damages by justifiably relying on Defendants' misrepresentations. Relying on Defendants' representations of being a customer or acting with a customer's authorization, Waste Connections supplied Defendants' agents with information that enabled Defendants to access Waste Connections' confidential and proprietary information and steal Waste Connections' customers through use of the information.

136.    Waste Connections is entitled to an award of damages for actual loss caused by Defendants negligent misrepresentations, together with exemplary damages, interest, and costs.

Waste Connections is further entitled to injunctive relief and other equitable relief against Defendants' negligent misrepresentations.

### COUNT 8: FALSE ADVERTISING
### (15 U.S.C. § 1051, *et seq.*)
### (Alleged against all Defendants)

137.    Waste Connections realleges and incorporates by reference the allegations set forth above.

138.    Defendants, through Haulla, made and are making false or misleading statements of fact about their products and services to Waste Connections' customers in order to solicit them. For example, Haulla made and is making false or misleading statements about, among other things, being local to customers' communities.

139.    Haulla's statements are false or misleading because, among other reasons, Haulla operates out of South Korea or the Philippines or elsewhere outside of Texas or other states in the United States where Waste Connections operates. In addition, Haulla is a waste broker, not a "local pickup company" or a "local collection company."

140.    Haulla's statements either deceived or had the capacity to deceive a substantial segment of Waste Connections' existing or potential customers.

141.    Haulla's deception was material, in that it was and is likely to influence existing and potential customers' decisions about whether to use Waste Connections' or Haulla's waste hauling products and services.

142.    Waste Connections' and Haulla's products and services are in interstate commerce as they are provided in multiple states in the United States and through the Internet.

143.    Waste Connections has been and is likely to be injured as a result of Defendants' false or misleading statements.

38

144.    Waste Connections is entitled to an award of actual damages caused by Defendants' false or misleading statements, as well as exemplary damages, interest, and costs. Waste Connections is further entitled to injunctive relief and other equitable relief against Defendants' false or misleading statements.

## COUNT 9: FALSE ADVERTISING
### (Texas Common Law)
### (Alleged against all Defendants)

145.    Waste Connections realleges and incorporates by reference the allegations set forth above.

146.    Defendants, through Haulla, made and are making false or misleading statements of fact about their products and services to Waste Connections' customers in order to solicit them. For example, Haulla made and is making false or misleading statements about, among other things, being local to customers' communities.

147.    Haulla's statements are false or misleading because, among other reasons, Haulla operates out of South Korea or the Philippines or elsewhere outside of Texas or other states in the United States where Waste Connections operates. In addition, Haulla is a waste broker, not a "local pickup company" or a "local collection company."

148.    Haulla's statements either deceived or had the capacity to deceive a substantial segment of Waste Connections' existing or potential customers.

149.    Haulla's deception was material, in that it was and is likely to influence existing and potential customers' decisions about whether to use Waste Connections' or Haulla's waste hauling products and services.

150.    Waste Connections' and Haulla's products and services are in interstate commerce as they are provided in multiple states in the United States and through the Internet.

151.    Waste Connections has been and is likely to be injured as a result of Defendants' false or misleading statements.

152.    Waste Connections is entitled to an award of actual damages caused by Defendants' false or misleading statements, as well as exemplary damages, interest, and costs. Waste Connections is further entitled to injunctive relief and other equitable relief against Defendants' false or misleading statements.

## COUNT 10: CIVIL CONSPIRACY
### (Alleged against all Defendants)

153.    Waste Connections realleges and incorporates by reference the allegations set forth above.

154.    Defendants, in combination with one another, conspired to: (1) intentionally and unlawfully steal and misappropriate Waste Connections' Confidential Information and trade secrets in violation of federal and state law; (2) violate the Computer Fraud and Abuse Act and Texas Harmful Access by Computer Act based on the actions set forth above, including but not limited to accessing Waste Connections' computers and servers supporting their websites and Portal without authorization and under false pretenses to obtain Waste Connections' confidential and proprietary information stored therein; (3) tortiously interfere with Waste Connections' existing customer contracts; (4) defraud Waste Connections by, among other things, deliberately impersonating Waste Connections' customers or claiming that Defendants had authority to act for customers; (5) negligently misrepresent themselves as a Waste Connections customer to Plaintiffs or that Defendants had authority to act for a customer; and (6) falsely advertised themselves by making false and misleading statements about their products and services.

155.    Defendants had a meeting of the minds and came together to achieve this unlawful purpose through unlawful means.

156.    The overt and unlawful acts of Defendants proximately caused injury to Waste Connections that resulted in damages as alleged herein, for which Defendants should be jointly and severally liable.

## V.    APPLICATION FOR INJUNCTIVE RELIEF

157.    Waste Connections realleges and incorporates by reference the allegations set forth above.

158.    In addition to damages caused by Defendants' past unlawful conduct, Waste Connections is entitled to injunctive relief under Texas Civil Practice & Remedies Code § 134A.003, Federal Rule of Civil Procedure 65, and other applicable law to preliminarily and permanently stop Defendants' continuing and future conduct in seeking to improperly steal their customers by (1) using the Portal (for any reason), (2) impersonating Waste Connections' current or potential customers, (3) contacting Waste Connections' customers in any way that does not clearly communicate Haulla's true identity, (4) accessing, attempting to access, using or otherwise misappropriating Waste Connections' proprietary and confidential customer-related information for any purpose, including to induce or encourage Waste Connections' customers to terminate their contracts with Waste Connections or terminate Waste Connections' services or enter into contracts with Haulla or any of Haulla's designated waste haulers, (5) defaming Waste Connections, or (6) making false statements and/or misrepresentations about Waste Connections.

159.    Waste Connections also seeks injunctive relief: (a) preventing Defendants from directly or indirectly accessing the Portal; (b) requiring Defendants to return or destroy all materials downloaded from the Portal in Defendants possession, custody, or control; (c) preventing Defendants from directly or indirectly making any false or misleading commercial statements about Haulla or Haulla's services, including statements that Haulla is a "local pickup company"

or a "local collection company" and any similar statements; and (d) requiring Defendants to issue corrective advertising, including statements clarifying that: Haulla is *not* a "local pickup company" or a "local collection company" and any similar statements necessary to correct Haulla's false advertising.

160.    As set forth above, Waste Connections has demonstrated a substantial likelihood of success on the merits as to all of their alleged claims because Waste Connections has identified numerous instances where Defendants knowingly and intentionally gained unlawful access to and misappropriated Waste Connections' proprietary and confidential information. Defendants intentionally engaged in its illegal scheme to interfere with Waste Connections' existing relationships and steal their customers, thereby causing actual damages, as well as reputational damage and damage to their goodwill.

161.     Waste Connections is entitled to preliminary and permanent injunctive relief because Defendants' continuing unlawful conduct has caused and will continue to cause Waste Connections to suffer irreparable injury if Defendants are not enjoined as requested.

162.    Regarding Defendants' continuing and future illegal conduct, the remedies available to Waste Connections at law, such as monetary damages, are inadequate to compensate for irreparable injury to Waste Connections' reputation, goodwill, and other business assets.

163.    The equitable remedies of injunctive relief are warranted upon consideration of the balance of hardships between Waste Connections and Defendants, and preventing Defendants from doing what it is not permitted to do in the first instance causes no harm to Defendants.

164.    The injunctive relief being sought would not hurt public interest. In fact, a permanent injunction serves the public interest because it will bolster public confidence in

knowing that businesses' confidential and proprietary information relating to customers, including trade secrets, will remain protected.

## VI.   ATTORNEYS' FEES AND COSTS

165.   Waste Connections realleges and incorporates by reference the allegations set forth above.

166.   Waste Connections is entitled to recover its attorneys' fees and costs in connection with this lawsuit pursuant to, without limitation, TEX. CIV. PRAC. & REM. CODE §§ 143.001, 143.002, and 134A.005(3) and 18 U.S.C. § 2702(c).

167.   Further, expert witness fees are taxable as costs of federal litigation under FED. R. CIV. P. 54 and 28 U.S.C. § 1920.

## VII.   JURY DEMAND

168.   Waste Connections demands a trial by jury on all issues triable to a jury.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Waste Connections respectfully requests this Court enter judgment in its favor and grant the following relief:

a.   Judgment awarding Waste Connections actual and exemplary damages resulting from Defendants' wrongdoing, in an amount to be proven at a trial on the merits;

b.   An injunction to preliminarily and permanently stop Defendants continuing and future conduct in seeking to improperly steal their customers by (1) using the Portal (for any reason), (2) impersonating Waste Connections' current or potential customers, (3) contacting Waste Connections' customers in any way that does not clearly communicate Haulla's true identity, (4) accessing, attempting to access, using or otherwise misappropriating Waste Connections' proprietary and confidential customer-related information for any purpose, including to induce or

encourage Waste Connections' customers to terminate their contracts with Waste Connections or terminate Waste Connections' services or enter into contracts with Haulla or any of Haulla's designated waste haulers, (5) defaming Waste Connections, or (6) making false statements and/or misrepresentations about Waste Connections.

c.    An injunction preliminarily and permanently (a) preventing Defendants from directly or indirectly accessing the Portal (including preventing Haulla from accessing the Portal through Limited); (b) requiring Defendants to return or destroy all materials downloaded from the Portal in Defendants' possession, custody, or control; (c) preventing Defendants from directly or indirectly making any false or misleading commercial statements about Haulla or Haulla's services, including statements that: Haulla is a "local pickup company" or a "local collection company" and any similar statements, and (d) requiring Defendants to issue corrective advertising, including statements clarifying that: Haulla is *not* a "local pickup company" or a "local collection company" and any similar statements necessary to correct Haulla's false advertising.

d.    Judgment awarding Waste Connections disgorgement of Defendants' profits made as a result of its wrongdoing;

e.    Judgment awarding Waste Connections attorneys' fees, expert witness fees, and all other costs associated with this litigation, including costs associated with Waste Connections' investigation;

f.    Pre- and post-judgment interest at the highest rate allowable by law; and

g.     All other relief, legal or equitable, to which Waste Connections may be justly entitled.

Date: September 8, 2025

Respectfully submitted,

**KEMP SMITH LLP**

221 N. Kansas, Suite 1700
El Paso, Texas 79901
Telephone: (915) 533-4424
Facsimile: (915) 546-5360

By: *s/ Andrew E. Samuels*
KEN SLAVIN
Texas Bar No. 18496100
ken.slavin@kempsmith.com
VALERIE R. AUGER
Texas Bar No. 24076251
valerie.auger@kempsmith.com

OF COUNSEL:

**BAKER & HOSTETLER LLP**

Daniel J. Buzzetta (admitted *pro hac vice*)
dbuzzetta@bakerlaw.com
45 Rockefeller Plaza
New York, New York 10111
Phone: (212) 589-4200

Andrew E. Samuels
asamuels@bakerlaw.com
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Phone: (614) 228-1541

Sushant Mohan
Texas Bar No. 24092847
sumohan@bakerlaw.com
Nikki L. Morris
Texas Bar No. 24098143
nmorris@bakerlaw.com

Alexandra L. Trujillo
Texas Bar No. 24110452
atrujillo@bakerlaw.com
811 Main St., Suite 1100
Houston, Texas 77002
Phone: (713) 751-1600

*Counsel for Plaintiffs*